# LIQUIDATION ANALYSIS

## A. Introduction

Section 1129(a)(7) of the Bankruptcy Code requires that the Bankruptcy Court find, as a condition to Confirmation, that each Holder of a Claim or Interest in each Impaired Class: (i) has accepted the Plan; or (ii) will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the amount that such person would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.[1] The first step in meeting this test is to determine the dollar amount that would be generated from a hypothetical liquidation of the Debtors' assets in the context of a chapter 7 liquidation in which a chapter 7 trustee is appointed and charged with reducing to cash any and all assets of the Debtors.

The gross amount of cash available would be the sum of the proceeds from the disposition of the Debtors' assets, including cash held by the Debtors at the time of the commencement of the hypothetical chapter 7 case. Such amount is reduced by the amount of any claims secured by such assets, the costs and expenses of the liquidation, and such additional administrative expenses and priority claims that may result from the termination of the Debtors' business and the use of chapter 7 for purposes of the hypothetical liquidation. Any remaining net cash would be allocated to creditors and stockholders in strict priority in accordance with section 726 of the Bankruptcy Code.

As discussed below in the "Key Assumptions – Corporate and Legal Structure" section, the Debtors have not prepared a liquidation analysis on a Debtor-by-Debtor basis. There are several reasons for this. First, because of the complicated intercompany claims relationships and agreements amongst the Debtors, preparation of a liquidation analysis on a Debtor-by-Debtor basis is impractical and costly. Second, inasmuch as the First Lien Lender Parties hold first priority liens on substantially all of the Debtors' assets and in a liquidation, there would be no recovery for any Creditor other than the First Lien Lenders, a Debtor-by-Debtor liquidation analysis would not have any different outcome than the consolidated liquidation analysis. The Proponents could not conclude with reasonable certainty that any such Debtor-by-Debtor liquidation analysis would be a fair presentation of such a liquidation.

A general summary of the assumptions used in preparing the Liquidation Analysis follows.

---

[1] Unless otherwise stated, any capitalized term used herein shall have the meaning assigned to such term herein or, if no meaning is so assigned, the meaning assigned to such term in the Plan or Disclosure Statement.

**B.  Key Assumptions**

*General Assumptions*

*Timing:*  The Chapter 11 Cases are converted to chapter 7 on September 30, 2009.

*Chapter 7 Trustee:*  One chapter 7 trustee is appointed to oversee the liquidation of the various Debtor estates.  An assumption of multiple chapter 7 trustees could imply longer delays to distribution, lower recoveries and higher administrative costs.

*Corporate and Legal Structure:*  The Liquidation Analysis assumes that the chapter 7 trustee would liquidate the Estates on a consolidated basis.  Absent liquidation on a consolidated basis, it is likely that the creditors of the Debtors' estates would engage in costly and contentious litigation (possibly resulting in the appointment of multiple trustees) thereby increasing costs and reducing recoveries.]

*Going Concern Sale.*  The Liquidation Analysis assumes that a trustee would seek consent of the necessary lienholders to consummate a going concern sale and such sale would produce no more (and potentially less), than the Sale proposed in the Plan and would be on substantially similar terms.  If a going concern sale could not be accomplished by a chapter 7 trustee, a piecemeal liquidation would yield substantially less for creditors.  Among other things, if the Debtors and their non-debtor affiliates were closed down and liquidated, MSK would be liable for up to $30 million in statutory severance liability that, under Korean law, is senior to all other Creditors.  Thus, putting aside the reduced values the Proponents believe would be obtained through a piecemeal liquidation, the values available for Creditors in such a liquidation are certain to be at least $30 million *less* than under the Plan.

**C.  Conclusions**

The Proponents have determined that confirmation of the Plan would provide each Holder of Claims or Interests with a recovery that is not less than such Holder would receive pursuant to a liquidation of the Debtors under chapter 7 of the Bankruptcy Code.

Moreover, the Proponents believe that the value of the distributions from the liquidation proceeds to each Class of Allowed Claims in a chapter 7 case may not occur for a substantial period of time.  In this regard, it is possible that a distribution of the proceeds of the liquidation could be delayed for one year or more after the completion of such liquidation in order to resolve the claims and prepare for distributions.  In the event litigation were necessary to resolve claims asserted in the chapter 7 cases, the delay could be further prolonged and administrative expenses further increased.  THE EFFECTS OF THIS DELAY ON THE VALUE OF DISTRIBUTIONS UNDER THE HYPOTHETICAL LIQUIDATION HAVE NOT BEEN CONSIDERED.

THE PROPONENTS' LIQUIDATION ANALYSIS IS AN ESTIMATE OF THE PROCEEDS THAT MAY BE GENERATED AS A RESULT OF A HYPOTHETICAL CHAPTER 7 LIQUIDATION OF THE ASSETS OF THE DEBTORS.  Underlying the

Liquidation Analysis are a number of estimates and assumptions that are inherently subject to significant economic, competitive and operational uncertainties and contingencies beyond the control of the Debtors or a chapter 7 trustee. Additionally, various liquidation decisions upon which certain assumptions are based are subject to change. Therefore, there can be no assurance that the assumptions and estimates employed in determining the liquidation values of the Debtors' assets will result in the proceeds that would be realized were the Debtors to undergo an actual liquidation. The actual amounts of allowed claims against the Debtors could vary significantly from the Debtors' estimate, depending on the claims asserted during the pendency of the chapter 7 case. This Liquidation Analysis does not include liabilities that may arise as a result of potential litigation, certain new tax assessments or other potential claims. This Liquidation Analysis does not include potential recoveries from avoidance actions. Therefore, the actual liquidation value of the Debtors could vary materially from the estimates provided herein.

# Liquidation Analysis Summary

- The following slide outlines the key considerations comparing a Chapter 7 liquidation and a Chapter 11 sale

- In summary, the proposed economic terms in the Chapter 11 sale represents a more concrete and higher expected recovery value compared to a Chapter 7 liquidation given the following considerations

    - The transaction contemplated by the Business Transfer Agreement represents a negotiated agreement between the First Lien Lenders and a qualified bidder. The consent to this Agreement has a number of conditions, including a condition that no Chapter 7 case is filed

    - The Chapter 11 sale avoids significant complexities and potential impediments associated with executing an Chapter 7 liquidation through a Korean bankruptcy proceeding, which would likely lead to a reduced amount of proceeds

    - Claims against the debtors and their non-debtor affiliates would be significantly higher in a Chapter 7 liquidation

    - The Chapter 11 sale provides recoveries to the claimants over a shorter time period as compared to the Chapter 7 liquidation alternative

- Key assumptions concerning the recovery amounts in the Chapter 7 liquidation and Chapter 11 sale are highlighted below

## Ch. 7 Liquidation Assumptions

- Illustrated proceeds to the Estate represents the highest possible value and do not take into consideration the value of a piecemeal liquidation of the Debtor's assets

- Trustee fees, including the associated legal expenses, reduce the proceeds available for claims

- No disbursement is made to the priority or unsecured claims

- Accrued and unpaid fees and expenses are similar to a Chapter 11 liquidation

- Other considerations which could reduce the recovery amount include the statutory severance claims for Korean based employees, which would be paid before all administrative, secured and unsecured claims pursuant to Korean law

- No assurance that the transaction contemplated by the Business Transfer Agreement could be consummated in a Chapter 7 case

## Ch. 11 Sale Assumptions

- Offering price represents the highest going concern offer for the Company from a qualified bidder
    - The Company was extensively marketed to numerous parties starting in November 2008

- Priority and unsecured claims are provided with a recovery amount from the sale proceeds

1

# Liquidation Analysis

|  | Chapter 7 Liquidation |  | Chapter 11 Sale |  |
|---|---:|---|---:|---|
| Gross Purchase Price | $ 80,000,000 | (1) | $ 80,000,000 | (1) |
| Less: Transaction Fees & Expenses | 9,055,000 |  | 9,055,000 |  |
| Proceeds to the Estate available for distribution | $ 70,945,000 |  | $ 70,945,000 |  |
| Fees and Expenses |  |  |  |  |
| Trustee Fees & Expenses | $ 2,128,350 | (2) | $ - |  |
| Ch. 7 Trustee Legal Expenses | 300,000 | (3) | - |  |
| Accrued and Unpaid Ch. 11 Fees & Expenses | 1,905,515 | (4) | 1,905,515 | (4) |
| Net Proceeds available for Claims | $ 66,611,135 |  | $ 69,039,485 |  |
| Disbursements to Claimants |  |  |  |  |
| Priority Claims | $ - |  | $ 1,000,000 | (5) |
| Secured Claims | 66,611,135 |  | 67,039,485 |  |
| Unsecured Claims | - |  | 1,000,000 | (6) |
| Total Disbursements to Claimants | $ 66,611,135 |  | $ 69,039,485 |  |

|  | Chapter 7 Liquidation | Chapter 11 Sale |
|---|---:|---:|
| Claims |  |  |
| Priority Claims | $ 1,000,000 | $ 1,000,000 |
| Senior Secured Claims | 95,000,000 | 95,000,000 |
| Second Lien Noteholder Claims | 500,000,000 | 500,000,000 |
| Unsecured Noteholder Claims | 250,000,000 | 250,000,000 |
| Other Unsecured Claims | 3,238,000 | 3,238,000 |
| Recovery Amount | Recovery (%) | Recovery (%) |
| Priority Claims | 0.0% | 100.0% |
| Senior Secured Claims | 70.1% | 70.6% |
| Second Lien Noteholder Claims | 0.0% | 0.2% |
| Unsecured Noteholder Claims | 0.0% | 0.0% |
| Other Unsecured Claims | 0.0% | 0.1% |

NOTES:

(1) Assumes no FX adjustment
(2) Estimated at 3% of the proceeds available for distribution by the Estate
(3) Estimated 60 days of Ch. 7 legal counsel expenses
(4) Assumes no Ch. 11 fees and expenses are paid during Chapter 11
(5) Voluntary payments to the priority claims
(6) Voluntary payments to the unsecured claims. Amount is disbursed pro-rata among the Second Lien Noteholders, Unsecured Noteholders and the Other Unsecured Claims. The amount to the Unsecured Noteholders is then provided to the Second Lien Claims.