# Defined Terms

The following definitions shall apply to capitalized terms used in the Committee's Plan:

1. "Accredited Investor" means an accredited investor as defined in Rule 501(a) of Regulation D under the Securities Act, as of the Offering Record Date.

2. "Administrative Expense" means an unpaid administrative expense of the kind described in sections 503(b) and 507(a)(2) of the Bankruptcy Code against any of the Debtors (other than the Superpriority Claims), including, without limitation, (i) the actual, necessary costs and expenses of preserving the Estates of the Debtors, including wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Cases; (ii) compensation and reimbursement of expenses of professionals to the extent allowable under sections 327, 328, 330(a), 331, 503(b) or 1103 of the Bankruptcy Code (including the reasonable fees and expenses of the legal and financial advisors to the Creditors' Committee); and (iii) all fees and charges assessed against the Estates under chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911 –1930, including the fees, if any, due to the United States Trustee.

3. "Agent" means UBS AG, Stamford Branch, in its capacity as administrative agent and collateral agent for the First Lien Lenders under the First Lien Credit Agreement.

4. "Allowed" means, with respect to any Claim, except as otherwise provided herein: (a) a Claim that has been scheduled by any Debtor in its Schedules as other than disputed, contingent, or unliquidated that has not been superseded by a Filed proof of Claim and as to which a Debtor or any other party in interest has not Filed an objection; (b) a Claim that has been allowed by a Final Order; (c) a Claim that is allowed: (i) in any stipulation of amount and nature of Claim executed by a Debtor prior to the Effective Date and approved by the Bankruptcy Court; (ii) in any stipulation of amount and nature of Claim executed by a Reorganized Debtor, as the case may be, on or after the Effective Date and, to the extent necessary, approved by the Bankruptcy Court; or (iii) in any contract, instrument, indenture, or other agreement entered into or assumed by a Debtor in connection with and in accordance with the Committee's Plan; (d) a Claim relating to a rejected executory contract or unexpired lease that either (i) is not a Disputed Claim or (ii) has been allowed by a Final Order, in either case only if a proof of Claim has been Filed by the Bar Date or has otherwise been deemed timely Filed under applicable law; or (e) a Claim that is allowed pursuant to the terms of the Committee's Plan.

5. "Avoidance Claims" means any Right of Action for the recovery of transfers arising under sections 510(c), 542, 543, 544, 547, 548, 549 or 550 of the Bankruptcy Code or applicable state law.

6. "Backstop Approval Order" means that order, in form and substance satisfactory to the Backstop Purchasers, authorizing and approving the Backstop Commitment Agreement.

7. "Backstop Commitment Agreement" means that certain agreement, dated August 21, 2009, among the Debtors and the Backstop Purchaser, annexed hereto as Exhibit A.

8. "Backstop Purchaser" means Avenue Special Situations Fund V, L.P., which has agreed to backstop the Offering pursuant to the terms of the Backstop Commitment Agreement.

9. "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended, as set forth in title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as now in effect or hereafter amended.

10. "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware or such other court of competent jurisdiction as may be administering the Chapter 11 Cases or any party thereof.

11. "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure promulgated pursuant to 28 U.S.C. § 2075, as now in effect or hereinafter amended, together with the local rules of the Bankruptcy Court.

12. "Bar Date" means, July 29, 2009, the date set as the deadline for filing proofs of Claims or Interests (whether or not each and every proof of Claim or Interest is subject to such deadline) pursuant to the *Order (A) Fixing the Procedures and Deadlines to File Proofs of Claim, (B) Approving the Form and Manner of Notice of Bar Dates, and (C) Granting Related Relief* entered on June 25, 2009 by the Bankruptcy Court.

13. "Business Day" means any day, other than a Saturday, a Sunday or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

14. "Cash" means currency of the United States of America and cash equivalents, including, but not limited to, bank deposits, immediately available or cleared checks, drafts, wire transfers and other similar forms of payment.

15. "Chapter 11 Cases" means the cases commenced under chapter 11 of the Bankruptcy Code by each of the Debtors on the Petition Date and pending before the Bankruptcy Court.

16. "Claim" means any claim against the Debtors, or any of them, within the meaning of section 101(5) of the Bankruptcy Code that is not an Administrative Expense or Superpriority Claim, including, without limitation, claims of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

17. "Claims Agent" means Omni Management Group, in its capacity as claims agent for the Debtors.

18. "Class" means each category of Claims or Interests classified in Section IV of the Committee's Plan pursuant to section 1122 of the Bankruptcy Code.

19. "Collateral Trustee" means U.S. Bank, National Association, in its capacity as collateral trustee under the Collateral Trust Agreement dated as of December 23, 2004, by and among the Agent, the Second Lien Noteholder Trustee and the Collateral Trustee.

20. "Committee's Disclosure Statement" means the *Disclosure Statement in Support of Chapter 11 Plan of Reorganization Proposed by the Official Committee of Unsecured Creditors of MagnaChip Semiconductor Finance Company*, as may be amended, modified, or supplemented from time to time in accordance with the terms hereof, submitted pursuant to

section 1125 of the Bankruptcy Code in connection with the solicitation of acceptances of the Committee's Plan.

21. "Committee's Plan" means this Plan of Reorganization for the Debtors.

22. "Confirmation" means the approval by the Bankruptcy Court of the Committee's Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code, as effectuated by the entry of the Confirmation Order.

23. "Confirmation Date" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket in the Chapter 11 Cases.

24. "Confirmation Hearing" means the date or dates established by the Bankruptcy Court for the hearing(s) on confirmation of the Committee's Plan pursuant to section 1129 of the Bankruptcy Code, as it may be adjourned or continued from time to time.

25. "Confirmation Order" means the order entered by the Bankruptcy Court confirming (approving) the Committee's Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code, in form and substance acceptable to the Creditors' Committee and the Backstop Purchaser.

26. "Consummation" means substantial consummation of the Committee's Plan as that term is used in section 1127(b) of the Bankruptcy Code.

27. "Creditor" means any Person who is the Holder of a Claim, Administrative Expense, or Superpriority Claim against any of the Debtors.

28. "Creditors' Committee" means the official committee of unsecured creditors of the Debtors appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code. The Creditors' Committee is comprised of the following entities: Avenue Special Situations Fund V, L.P.; Bank of New York Mellon; and Law Debenture Corporation.

29. "Debtors" means (i) Finco; (ii) LLC; (iii) Holdco; (iv) MSA; (v) Luxco; and (vi) Dutchco; in their corporate capacities, other capacities and, as appropriate, in their capacities as debtors and debtors in possession under chapter 11 of the Bankruptcy Code in their Chapter 11 Cases and, when the context so requires, in their capacities as the Reorganized Debtors.

30. "Deficiency Claims" means, with respect to any Claim secured by a valid Lien on any property of any Debtor having a value of less than the amount of such Claim (after taking into account other Liens of higher priority on such property), the portion of such Claim equal to the difference between (a) the amount of the Claim and (b) the Allowed amount of the secured portion of such Claim (which Allowed secured amount may be set pursuant to the Committee's Plan).

31. "Disallowed" means, with respect to a Claim, Interest, or Administrative Expense, all or a portion thereof that it is determined is not allowed under the Bankruptcy Code either by a Final Order, the Committee's Plan, any Plan Document or under a stipulation or settlement with any of the Debtors entered into after the Effective Date.

32. "Disputed Claim" means (i) a Claim, Interest, or Administrative Expense that is subject to a pending objection or for which the Bankruptcy Court's order allowing or disallowing such Claim, Interest, or Administrative Expense is on appeal; or (ii) until the Objection Deadline,

    a.    a Claim for which a corresponding Claim has not been listed in the Debtors' Schedules or for which the corresponding Claim is listed in the Debtors' Schedules with a differing amount (to the extent of such difference), with a differing classification, or as disputed, contingent, or unliquidated; and

    b.    a Claim that has not been Allowed either by a Final Order, the Committee's Plan, any Plan Document, or under a stipulation or settlement with any of the Debtors entered into' after the Effective Date.

33. "Distributable Cash and Claims" means, as to each Debtor, any Cash, deposit accounts, reserves, and deposits remaining in the Estate of such Debtor as of the Effective Date, together with any Retained Rights of Action of such Debtor (including Intercompany Claims against Non-Debtor Subsidiaries), but excluding other real and personal property of such Debtor.

34. "Dutchco" means MagnaChip Semiconductor B.V., a company incorporated in the Netherlands.

35. "Effective Date" means the first Business Day after the Confirmation Date immediately following the first day upon which all of the conditions to the occurrence of the Effective Date have been satisfied or waived in accordance with the Committee's Plan.

36. "Eligible Holder" means a holder of a Second Lien Noteholder Claim as of the Offering Record Date who is an Accredited Investor.

37. "Entity" and "Entities" mean an entity as defined in section 101(5) of the Bankruptcy Code or more than one thereof.

38. "Estate(s)" means each estate created pursuant to section 541(a) of the Bankruptcy Code upon the commencement of each Chapter 11 Case.

39. "Fee Applications" mean applications of Professional Persons under sections 330, 331 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Chapter 11 Cases.

40. "Fee Claims" means Administrative Expenses for compensation and reimbursement of expenses of professionals to the extent allowable under sections 327, 328, 330(a), 331, 503(b) or 1103 of the Bankruptcy Code.

41. "File" or "Filed" means filed of record and entered on the docket in the Chapter 11 Cases or, in the case of a proof of Claim, delivered to the Claims Agent.

42. "Final Cash Collateral Order" means the *Final Order Pursuant to Sections 105, 361, 362 and 363 of the Bankruptcy Code Authorizing the Use of Cash Collateral Pursuant to*

*the Enforcement Agreement and Granting Adequate Protection to First Lien Lenders and Second Lien Noteholders*, entered by the Bankruptcy Court in the Chapter 11 Cases on July 13, 2009.

43. "Final Order" means a judgment, order, ruling, or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal, which judgment, order, ruling, or other decree has not been reversed, stayed, modified, or amended and as to which (a) the time to appeal or petition for review, rehearing, or certiorari has expired and as to which no appeal or petition for review, rehearing or certiorari is pending; or (b) any appeal or petition for review, rehearing, or certiorari has been finally decided and no further appeal or petition for review, rehearing, or certiorari can be taken or granted.

44. "Final Resolution Date" means the date on which all Disputed Claims of Creditors shall have been resolved by Final Order or otherwise finally determined.

45. "Finco" means MagnaChip Semiconductor Finance Company, a Delaware corporation.

46. "First Lien Credit Agreement" means that Credit Agreement, dated as of December 23, 2004, by and among the First Lien Lender Parties; Luxco and Finco, as borrowers; and the First Lien Guarantors; and any ancillary documents issued in connection therewith or related thereto.

47. "First Lien Guarantors" means LLC; Dutchco; MSK; Holdco; MagnaChip Semiconductor Limited, a company incorporated in the United Kingdom; MagnaChip Semiconductor Holding Company Limited, a British Virgin Islands company; MagnaChip Semiconductor Inc., a company incorporated in Japan; MagnaChip Semiconductor Limited, a company incorporated in Hong Kong SAR; MagnaChip Semiconductor Limited, a company incorporated in Taiwan; and MSA.

48. "First Lien Lender" means a "Lender" under and as defined in the First Lien Credit Agreement.

49. "First Lien Lender Parties" means the Agent, the First Lien Lenders, UBS Securities LLC, as Arranger, Syndication Agent and Documentation Agent, UBS Loan Finance LLC, as Swingline Lender, and Korea Exchange Bank, as Issuing Bank.

50. "First Lien Lender Secured Claims" means the Secured Claims of the First Lien Lender Parties arising under, in connection with or pursuant to the First Lien Credit Agreement and the Final Cash Collateral Order and all other documents, instruments, guarantees and other agreements related to either thereof.

51. "General Unsecured Claim" means a Claim against any of the Debtors other than (a) an Administrative Expense, (b) a Superpriority Claim, (c) a Tax Claim, (d) a Priority Non-Tax Claim, (e) an Other Secured Claim, (f) a First Lien Lender Secured Claim, (g) a Second Lien Noteholder Claim, (h) a Subordinated Note Claim, and (i) an Intercompany Claim. General Unsecured Claims include, without limitation, and any Deficiency Claim of the First Lien Lender Parties.

52. "Holdco" means MagnaChip Semiconductor SA Holdings LLC, a Delaware limited liability company.

53. "Holder" means the beneficial owner of any Claim, Interest, Administrative Expense, or Superpriority Claim.

54. "Impaired" has the meaning set forth in section 1124 of the Bankruptcy Code.

55. "Indenture Trustee Fees and Expenses" means any and all fees, expenses, disbursements and advances of each Indenture Trustee (and its counsel, agents and advisors) that are provided for under the Second Lien Notes Indenture and the Subordinated Note Indenture (including, without limitation, in connection with service on the Creditors' Committee and in connection with distributions under the Committee's Plan), which are incurred at any time prior to or after the Effective Date.

56. "Intercompany Claim" means any Claim or Administrative Claim asserted against a Debtor or Non-Debtor Affiliate by any other Debtor or Non-Debtor Affiliate, including, without limitation, any subrogation claim that has not been waived and any contribution claim.

57. "Intercreditor Agreement" means that certain intercreditor agreement dated as of December 23, 2004, among Luxco, Finco, the First Lien Guarantors, the Agent, the Second Lien Noteholder Trustee, the Second Lien Collateral Agent and the Collateral Trustee.

58. "Interest" means an equity security of any Debtor within the meaning of section 101(16) of the Bankruptcy Code.

59. "Korean Guarantee" means the guarantee by MSK of Luxco's and Finco's obligations under the Second Lien Indenture and the notes executed pursuant to the Second Lien Indenture.

60. "Lenders" means, collectively, the First Lien Lenders and the Second Lien Noteholders.

61. "Lien" means any charge against or security interest in property to secure payment or performance of a Claim, debt, or obligation.

62. "LLC" means MagnaChip Semiconductor LLC, a Delaware limited liability company.

63. "Long-Term Incentive Plan" means an incentive Plan for management, selected employees and directors of the Reorganized Debtors, the terms of which are described in Article VI.G.4 of the Committee' Plan.

64. "Luxco" means MagnaChip Semiconductor S.A., a *société anonyme* and organized under the laws of Luxembourg.

65. "Minimum Allocation" means 67% of the New Common Unit that is issued pursuant to the Offering.

66. "MSA" means MagnaChip Semiconductor, Inc., a California corporation.

67. "MSK" means MagnaChip Semiconductor, Ltd., a Korean limited liability company.

68. "New Term Loan" means the new secured term loan to be issued on the Effective Date in the initial aggregate amount of $95 million, the material terms of which are set forth on Schedule 1 of the Committee's Plan.

69. "New Common Units" means the common units of LLC to be issued on the Effective Date pursuant to the Committee's Plan.

70. "Non-Debtor Subsidiaries" means MSK, MagnaChip Semiconductor Limited (Hong Kong), MagnaChip Semiconductor Inc. (Japan), MagnaChip Semiconductor Limited (Taiwan), MagnaChip Semiconductor Limited (U.K.), MagnaChip Semiconductor Holding Company Limited, a company incorporated under the laws of the British Virgin Islands, and MagnaChip Semiconductor (Shanghai) Company Limited, a Chinese corporation.

71. "Non-Korean Guarantors" means all First Lien Guarantors other than MSK.

72. "Objection Deadline" means the deadline to object to Claims specified in Article IX(A) of the Committee's Plan.

73. "Offering" means the offering of $25 million in aggregate of New Common Units (i) on a pro rata basis to each Eligible Holder of Second Lien Noteholder Claims and (ii) to the extent less than the full Offering Amount is issued to the Eligible Holders of Second Lien Noteholder Claim, to the Backstop Purchaser; provided, however, that the Backstop Purchaser shall receive the Minimum Allocation for an issue price of $16.75 million pursuant to the Offering; provided, further, that the Offering shall be subject to the New Common Units issued to the Backstop Purchaser for the Standby Commitment Fee.  The Offering will only be made to accredited investors in a fashion that will be exempt from registration under the Securities Act of 1933.

74. "Offering Amount" means $25,000,000.

75. "Offering Participant" means an Eligible Holder of a Second Lien Noteholder Claim as of the Offering Record Date, including the Backstop Purchaser.

76. "Offering Procedures" means those certain rights offering procedures, setting forth the terms and conditions of the Offering, as more fully described in Article VI(D) hereof.

77. "Offering Pro Rata Share" means with respect to the Subscription Rights of each Offering Participant, the ratio (expressed as a percentage) of such participant's Offering Participation Claim Amount to the aggregate amount of all Offering Participation Claim Amounts, determined as of the Subscription Expiration Date.

78. "Offering Record Date" means the date for determining which holders of Claims are entitled to receive the Committee's Disclosure Statement and vote to accept or reject the

Committee's Plan, as applicable, which date is the date the Order approving the Committee's Disclosure Statement is entered.

79. "Other Secured Claim" means any Secured Claim other than a First Lien Lender Secured Claim or a Second Lien Noteholder Claim.

80. "Person" means an individual, partnership, corporation, limited liability company, business trust, joint stock company, trust, unincorporated association, joint venture, governmental authority, governmental unit, or other entity of whatever nature.

81. "Petition Date" means June 12, 2009, the date on which each of the Debtors Filed their petitions for relief under chapter 11 of the Bankruptcy Code.

82. "Plan Documents" means the Committee's Plan, the Disclosure Statement, and all exhibits and schedules to either of the foregoing.

83. "Plan Expenses" means the expenses incurred by the Reorganized Debtors following the Effective Date (including the reasonable fees and costs of attorneys and other professionals) for the purpose of (i) resolving Disputed Claims, if any, and effectuating distributions to Creditors under the Committee's Plan, (ii) otherwise implementing the Committee's Plan and closing the Chapter 11 Cases, or (iii) undertaking any other matter relating to the Committee's Plan.

84. "Plan Proponent" means the Creditors' Committee.

85. "Plan Supplement" means the supplement or supplements to the Committee's Plan containing certain documents relevant to the implementation of the Committee's Plan specified in section XIV.9 of the Committee's Plan; provided, however, that the Committee's Plan Supplement and the documents contained therein shall be in form, scope and substance satisfactory to the Backstop Purchaser.

86. "Postconfirmation Board" means the board of directors of the Reorganized Debtors which shall be disclosed in the Committee's Plan Supplement and acceptable to the Backstop Purchaser.

87. "Postconfirmation Organizational Documents" means the certificate of formation, limited liability company agreement, certificate of incorporation, bylaws, and other organizational documents for the Reorganized Debtors, the forms of which shall be reasonably satisfactory to the Backstop Purchaser and consistent with Section 1123(a)(6) of the Bankruptcy Code. The Postconfirmation Organizational Documents shall be included in the Committee's Plan Supplement.

88. "Priority Claim Distributions" shall mean distributions on account of all unpaid Allowed Tax Claims and Priority Non-Tax Claims as required by the Committee's Plan.

89. "Priority Non-Tax Claim" means any Claim, other than a Tax Claim, to the extent entitled to priority under section 507(a) of the Bankruptcy Code.

90. "Pro Rata" means proportionately, so that with respect to any distribution, the ratio of (a) (i) the amount of property to be actually or theoretically distributed on account of a particular Claim and/or Interest or particular group of Claims and/or Interests to (ii) the amount of such particular Claim and/or Interest or group of Claims and/or Interests, is the same as the ratio of (b) (i) the amount of property to be actually or theoretically distributed on account of all Claims and/or Interests or groups of Claims and/or Interests sharing in such distribution to (ii) the amount of all Claims and/or Interests or groups of Claims and/or Interests sharing in such distribution.

91. "Professional Person" shall mean Persons retained or to be compensated pursuant to sections 326, 327, 328, 330, 503(b), and 1103 of the Bankruptcy Code.

92. "Record Date" means the Effective Date.

93. "Released Parties" means the parties described in Article X(C) of the Committee's Plan.

94. "Reorganized Debtors" means all or each of the Debtors from and after the Effective Date.

95. "Representative" means, as to the referenced Person, such Person's present and former officers, directors, shareholders, trustees, partners and partnerships, members, agents, employees, representatives, professionals, and successors or assigns, in each case solely in their capacity as such.

96. "Restructuring Transactions" means those transactions described in Article VI(A) of the Committee's Plan.

97. "Reorganized Debtors" means all or each of the Debtors from and after the Effective Date.

98. "Retained Rights of Action" means all Rights of Action belonging to any of the Estates as of the Effective Date, other than those Rights of Action specifically released under the Committee's Plan, including Avoidance Claims released pursuant to Article IX(C) hereof.

99. "Rights of Action" means any and all claims, demands, rights, defenses, actions, causes of action, suits, contracts, agreements, obligations, accounts, defenses, offsets, powers and privileges of any kind or character whatsoever, known or unknown, suspected or unsuspected, whether arising prior to, on, or after the Petition Date, in contract or in tort, at law or in equity, or under any other theory of law, held by any Person against any other Person.

100. "Schedules" means the schedules Filed by the Debtors with the clerk of the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been or may be amended from time to time.

101. "Second Lien Collateral Agent" means The Bank of New York Mellon, As successor to The Bank of New York, in its capacity as "Parity Lien Collateral Agent" as defined in the Second Lien Indenture.

102. "Second Lien Guarantees" means the guarantees by the Second Lien Guarantors of Luxco's and Finco's obligations under the Second Lien Indenture and the notes executed pursuant to the Second Lien Indenture.

103. "Second Lien Guarantors" means the Non-Korean Guarantors and MSK.

104. "Second Lien Indenture" means that certain Indenture, dated as of December 23, 2004, providing for the issuance of *Floating Rate Second Priority Senior Secured Notes due 2011 and 6 7/8% Second Priority Senior Secured Notes due 2011*, by and among the Second Lien Noteholder Trustee; the Collateral Trustee; Luxco and Finco, as issuers, and the Second Lien Guarantors.

105. "Second Lien Noteholder Claim" means the Claims of the Second Lien Noteholder Trustee and the Second Lien Noteholders arising under, in connection with or pursuant to the Second Lien Indenture, the Final Cash Collateral Order and all other documents, instruments, guarantees and agreements related to either thereof.

106. "Second Lien Noteholder Distribution" means the distribution made to Holders of Second Lien Noteholder Claims pursuant to Article IV(B)(4) of the Committee's Plan.

107. "Second Lien Noteholder Trustee" means Bank of New York, as trustee under the Second Lien Indenture.

108. "Second Lien Noteholders" means the "Holders" under and as defined in the Second Lien Indenture.

109. "Secured Claim" means any Claim of any Person that is secured by a Lien on property in which any of the Debtors or the Estates has an interest, which Lien is valid, perfected, and enforceable under applicable law or by reason of a Final Order, or that is subject to setoff under section 553 of the Bankruptcy Code, but only to the extent of the value, as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code, of any interest of the claimant in the property of the Estate securing such Claim or subject to setoff.

110. "Standby Commitment Fee" means the 10% of the New Common Units to be issued to the Backstop Purchaser pursuant to and in accordance with the terms of the Backstop Commitment Agreement.

111. "Subordinated Note Claim" means any Claim of the Subordinated Note Trustee or any Subordinated Noteholder arising under, in connection with or pursuant to the Subordinated Note Indenture and any documents, instruments or agreements related thereto.

112. "Subordinated Note Distribution" means the distribution, which shall be gifted by the Holders of Second Lien Noteholder Claims, to the Holders of Subordinated Note Claims pursuant to Article IV(B)(6) of the Committee's Plan.

113. "Subordinated Note Guarantors" means the Non-Korean Guarantors.

114. "Subordinated Note Guarantees" means the guarantees by the Subordinated Note Guarantors of Luxco's and Finco's obligations under the Subordinated Note Indenture and the notes executed pursuant to the Subordinated Note Indenture.

115. "Subordinated Note Indenture" means that certain Indenture dated as of December 23, 2004, providing for the issuance of *8% Senior Subordinated Notes due 2014*, by and among Luxco and Finco, as issuers; the Subordinated Note Trustee; and the Subordinated Note Guarantors.

116. "Subordinated Note Trustee" means Law Debenture Corporation, as trustee under the Subordinated Note Indenture.

117. "Subordinated Noteholder" means each "Holder" under and as defined in the Subordinated Note Indenture.

118. "Subscription Agent" means Financial Ballot Group, in its capacity as a subscription agent in connection with the Offering.

119. "Subscription Commencement Date" means August 28, 2009.

120. "Subscription Expiration Date" means September 25, 2009, subject to the Creditor's Committee's right to extend such date, and which shall be the final date by which an Offering Participant may elect to subscribe to the Offering.

121. "Subscription Form" means the form to be used by an Offering Participant pursuant to which such holder may exercise such Subscription Rights, which shall be in form and substance acceptable to the Creditors' Committee.

122. "Subscription Purchase Price" means, for each Offering Participant, such Offering Participant's Offering Pro Rata Share multiplied by the Offering Amount.

123. "Subscription Rights" means the non-transferable, non-certified subscription rights to purchase New Common Units in connection with the Offering on the terms and subject to the conditions set forth in Article VI(D) of the Committee's Plan.

124. "Superpriority Claims" means administrative expenses with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to, Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(b), 726, 1113 and 1114.

125. "Tax" means any tax, charge, fee, levy, impost, or other assessment by any federal, state, local or foreign taxing authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem, estimated, severance, stamp, occupation, and withholding tax. "Tax" shall include any interest or additions attributable to, imposed on or with respect to such assessments.

126. "Tax Claim" means any Claim for any Tax to the extent that it is entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

127. "Timely Filed" means, with respect to a Claim, Interest, or Administrative Expense, that a proof of such Claim or Interest or request for payment of such Administrative Expense was Filed with the Bankruptcy Court or the Claims Agent, as applicable, within such applicable period of time fixed by the Committee's Plan, statute, or pursuant to both Bankruptcy Rule 3003(c)(3) and a Final Order (e.g., the Bar Date).

128. "Unclaimed Property" means all Cash deemed to be "Unclaimed Property" pursuant to Article VIII(E) of the Committee's Plan.

129. "Unimpaired" means, with respect to a Class of Claims or Interests, not Impaired, as defined in Section 1124 of the Bankruptcy Code.

130. "Unsubscribed Units" means those shares of New Common Units to be issued in connection with the Offering that are not subscribed for pursuant to the Offering prior to the Subscription Expiration Date.

131. "Warrants" means the warrants described in Article IV(B)(6) of the Committee's Plan.