August 25, 2009

The Official Committee of Unsecured Creditors of
MagnaChip Semiconductor Finance Company, et al.
c/o Lowenstein Sandler PC
65 Livingston Avenue
Roseland, New Jersey 07068

## AGREEMENT

This Agreement sets forth the terms and conditions under which Financial Balloting Group LLC ("FBG") will serve as balloting agent, tabulator, and consultant to The Official Committee of Unsecured Creditors of MagnaChip Semiconductor Finance Company, *et al.* (the "MagnaChip Committee").

### Assumptions

We are making the following assumptions about the rights offering:

1. Two issues of public debt, whose holders will be entitled to participate in the rights offering related to the Plan of Reorganization.

2. The rights offering will be set up as a direct subscription by noteholders, with confirmation of noteholder positions by nominees (and the rights offer form to be provided by FBG to noteholders upon receipt of an investor certification confirming the holder is an Eligible Holder).

### Subscription Agent Services

FBG shall undertake the following services:

1. Provide advice to the MagnaChip Committee and its counsel regarding the subscription procedures and documents needed for the rights offering.

2. Review the relevant documents, particularly as they may relate to beneficial owners of securities held in Street name. Documents may include: the solicitation procedures motion and/or order, disclosure statement and plan, subscription form, and other documents.

3. Establish a subscription account for the MagnaChip Committee in connection with FBG's role as subscription agent. FBG would act as administrator for the account, but the MagnaChip Committee would need to approve any wires out of the account initiated by FBG (or FBG could administer an account established by another party);

4. Receive inquiries from noteholders and, when requested, provide a copy of the Investor Certificate by email or facsimile transmission.

5. Upon receipt of a completed Investor Certificate, provide a copy of the Subscription Form by email or facsimile transmission.

6. If appropriate, prepare a certificate of service for filing with the court.

7. Handle requests for documents from parties in interest, including brokerage firm and bank back-offices and institutional holders.

8. Respond to telephone inquiries from noteholders and nominees regarding the subscription procedures. FBG will restrict its answers to the information contained in the plan documents. We will seek assistance from the creditor's committee or their counsel on any questions that fall outside of the voting documents.

9. If requested to do so, establish a website for the posting of subscription documents.

10. Receive and examine any subscription forms submitted by noteholders, if applicable, and deposit any checks in the special subscription account established for that purpose.

11. Undertake such other duties as may be agreed upon by the MagnaChip Committee and FBG.

**Pricing for Subscription Agent Services**

For the above mentioned services, the MagnaChip Committee agrees to pay FBG on the following basis:

1. A project fee of $15,000. If the assignment is handled through DTC, the project fee would also cover the coordination with all brokerage firms, banks, institutions and other interested parties, including the distribution of subscription documents through a distribution directed to the firms' reorganization departments (as described above), and no extensions of the subscription deadline:

2. For the mailing to registered record holders of bonds and any other voting party, we would estimate labor charges at $1.75 - $2.25 per subscription package, depending on the complexity of the mailing, with a $750 minimum for each file. The charge indicated assumes that a window envelope will be used for the mailing, and will therefore not require a matched mailing. *It is likely that there are no registered holders of bonds, and that this charge will not apply.*

3. A hosting fee of $150 per month to post relevant documents to the FBG document website, with an appropriate extension for this case. (Unlikely to be needed.)

4. We will bill for consulting hours at our then applicable standard hourly rates. Listed below are our current standard hourly rates. Consulting services by FBG would include the review and development of materials, including the disclosure statement, plan, and subscription forms; participation in telephone conferences, strategy meetings or the development of strategy relative to the project; efforts related to subscription procedures, including issues that may arise during the subscription process; efforts relating to the

rights offering, including coordination with noteholders, The Depository Trust Creditor's committee and its participants, and related efforts; computer programming or other project-related data processing services; visits to cities outside of New York for client meetings or legal or other matters; efforts related to the preparation of testimony and attendance at court hearings; and the preparation of affidavits, certifications, fee applications (if required by the court), invoices, and reports.

Hourly rates:

| Role | Rate |
|---|---|
| Executive Director | $410 per hour |
| Director | $360 per hour |
| Senior Case Manager | $300 per hour |
| Case Manager | $240 per hour |
| Case Analyst | $190 per hour |
| Programmer II | $195 per hour |
| Programmer I | $165 per hour |
| Clerical | $65 per hour |

**Notice Mailings**

In the event a notice mailing is needed in connection with the rights offering, the following charges would apply:

*Mailings to Registered Holders of Securities:*
Mailings to any registered record holders of securities, if any, (or other individual parties) would be charged at $0.50 - $0.65 per holder, for up to two paper notices included in the same envelope, with a $250 minimum. This assumes that labels and/or electronic data for these holders would be provided by the transfer agent, trustee, or other party maintaining the records.

*Mailings to Holders of Public Securities in "Street" name:*
FBG's charges for a notice mailing to holders of debt securities in Street name would be $3,000.

Hourly rates, as enumerated above, would apply for any related consulting work in connection with notice mailings. Out of pocket expenses would be charged separately, as noted above.

**Out of Pocket Expenses**

All out-of-pocket expenses relating to any work undertaken by FBG will be charged separately, and will include such items as travel costs, postage, messengers and couriers, etc., expenses incurred by FBG in obtaining or converting depository participant, creditor, shareholder and/or lists of Non-Objecting Beneficial Owners; and appropriate charges for supplies, in-house photocopying, telephone usage, etc. FBG reserves the right request advance payment for any significant expenses (including, but not limited to, postage advances).

**Charges**

For services rendered by FBG under this Agreement, the MagnaChip Committee shall pay the charges set forth above. FBG will bill the MagnaChip Committee monthly. All invoices shall be due and payable upon receipt.

In addition to all charges for services, the MagnaChip Committee shall pay to FBG all taxes, however designated, levied or based that are applicable to this Agreement or are measured

directly by payments made under this Agreement and are required to be collected by FBG or paid by FBG to taxing authorities. This provision includes, but is not limited to, sales, use and excise taxes, but does not include personal property taxes or taxes based on net income.

Where the MagnaChip Committee requires measures that are unusual and beyond normal business practice of FBG such as, but not limited to, CPA audit, errors and omissions insurance, or off-premises storage of data, the cost of such measures, if provided by FBG, shall be charged to the MagnaChip Committee at a competitive rate.

In the event of termination due to the MagnaChip Committee's default, the MagnaChip Committee shall be liable for all amounts then owing.

**Term**

This Agreement shall become effective on the later of (i) the date it has been accepted by both FBG and the MagnaChip Committee or (ii) if Bankruptcy Court approval is required, the date of entry of an order by the Bankruptcy Court approving this Agreement or such earlier date set by the Bankruptcy Court. The agreement shall remain in effect until it is terminated by the MagnaChip Committee or FBG on one (1) month's prior written notice.

**Indemnity**

The MagnaChip Committee agrees to indemnify and hold FBG harmless against any loss, damage, expense (including, without limitation, legal and other related fees and expenses), liability or claim arising out of FBG's fulfillment of the Agreement (except for any loss, damage, expense, liability or claim resulting out of FBG's own gross negligence or willful misconduct). At its election, the MagnaChip Committee may assume the defense of any such action. FBG hereby agrees to advise the MagnaChip Committee of any such liability or claim promptly after receipt of the notice thereof; provided however, that FBG's right to indemnification hereunder shall not be limited by its failure to promptly advise the MagnaChip Committee of any such liability or claim, except to the extent that the MagnaChip Committee is prejudiced by such failure. The indemnification contained in this paragraph will survive the term of the Agreement. Except as provided herein, FBG's liability to the MagnaChip Committee or any person claiming through or under the MagnaChip Committee for any claim, loss, damage, expense of any kind, or for any lost profits, loss of business or other consequential damages even if FBG has been advised of the possibility of such damages, whether direct or indirect and unless due to gross negligence or willful misconduct of FBG shall be limited to the total amount billed or billable to the MagnaChip Committee for the portion of the particular work which gave rise to the loss or damage. In no event shall FBG be liable to the MagnaChip Committee for any special or consequential damages (including loss of anticipated profits) incurred by the MagnaChip Committee in connection with or arising out of the services provided for in this Agreement.

**Confidentiality**

FBG agrees to preserve the confidentiality of all non-public information provided by the MagnaChip Committee or its agents for its use in providing services under this Agreement, or information developed by FBG based upon such non-public information. All of the MagnaChip Committee's data given to FBG will be safeguarded by FBG to the same extent that FBG safeguards data relating to its own business; provided, however, that if data is publicly available, was already in FBG's possession or known to it, or was rightfully obtained by FBG from a third party, FBG shall bear no responsibility for disclosure. the MagnaChip Committee agrees that

FBG shall not be liable beyond the limits provided under "Indemnity," above, for damages or losses of any nature whatsoever arising out of the unauthorized acquisition or use of any material supplied by the MagnaChip Committee to FBG in the performance of this Agreement.

**General**

No waiver alteration, amendment or modification of any of the provisions of this Agreement shall be binding upon either party unless signed in writing by a duly authorized representative of both parties.

This agreement may not be assigned by the MagnaChip Committee without the express written consent of FBG, which consent shall not be unreasonably withheld. The services provided under this Agreement are for the sole benefit and use of the MagnaChip Committee, and shall not be made available to any other persons.

This Agreement shall be governed by the laws of the State of New York, without regard to that state's provisions for choice of law.

Certain financial products may be provided to the MagnaChip Committee pursuant to the Epiq Systems agreement with Union Bank or other financial institution, and FBG may receive compensation from Union Bank or other financial institution for services FBG provides to it pursuant to such agreement.

The parties agree that this Agreement is the complete and exclusive statement of the agreement between the parties which supersedes all proposals or prior agreements, oral or written, and all other communications between the parties relating to the subject matter of this Agreement.

Notices to be given or submitted by either party to the other, pursuant to this Agreement, shall be sufficiently given or made if given or made in writing and sent by certified mail or overnight courier, postage prepaid, and addressed as follows:

If to FBG:

>	Financial Balloting Group LLC
>	757 Third Avenue, 3rd Floor
>	New York, New York 10017
>	Attn: Jane Sullivan, Executive Director

If to the MagnaChip Committee:

>	Lowenstein Sandler PC
>	65 Livingston Avenue
>	Roseland, New Jersey 07068
>	Attn: John K. Sherwood, Esq.

**If the above is agreed to by you, please sign and return this Agreement to Financial Balloting Group LLC, Attention: Jane Sullivan, 757 Third Avenue, 3rd Floor, New York, NY 10017.**

| | |
|---|---|
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF MAGNACHIP SEMICONDUCTOR FINANCE COMPANY, *et al.* | FINANCIAL BALLOTING GROUP LLC |

By: Avenue Capital Management II, L.P., solely in its capacity as its investment advisor to Avenue Investments, L.P., Avenue International Master, L.P., Avenue Special Situations Fund IV, L.P., Avenue Special Situations Fund V, L.P., and Avenue CDP-Global Opportunities Fund, L.P.

By: ___/s/ Sonia Gardner___
Name: Sonia Gardner
Title: Member

By: _____
Jane Sullivan
Executive Director

Address:

535 Madison Avenue
New York, NY 10022
Attention: Randal Klein

Fax: (212) 486-1891

If the above is agreed to by you, please sign and return this Agreement to Financial Balloting Group LLC, Attention: Jane Sullivan, 757 Third Avenue, 3rd Floor, New York, NY 10017.

| | |
|---|---|
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF MAGNACHIP SEMICONDUCTOR FINANCE COMPANY, *et al.* | FINANCIAL BALLOTING GROUP LLC |

By: Avenue Capital Management II, L.P., solely in its capacity as its investment advisor to Avenue Investments, L.P., Avenue International Master, L.P., Avenue Special Situations Fund IV, L.P., Avenue Special Situations Fund V, L.P., and Avenue CDP-Global Opportunities Fund, L.P.

By: _____
Name:
Title:

By: /s/ Jane Sullivan
Jane Sullivan
Executive Director

Address:

535 Madison Avenue
New York, NY 10022
Attention: Randal Klein

Fax: (212) 486-1891