IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| MAGNACHIP SEMICONDUCTOR FINANCE ) | Case No. 09-12008 (PJW) |
| COMPANY, et al.,[1] ) | (Jointly Administered) |
| ) | |
| Debtors. ) | |

Objections Due: September 3, 2009 at 4:00 p.m. (E.T.)
Hearing Date: September 10, 2009 at 3:00 p.m. (E.T.)

## APPLICATION FOR ORDER UNDER SECTIONS 327(A) AND 328(A) OF THE BANKRUPTCY CODE AUTHORIZING THE EMPLOYMENT AND RETENTION OF IMPERIAL CAPITAL, LLC AS FINANCIAL ADVISOR TO THE DEBTORS AND DEBTORS IN POSSESSION

The above-captioned debtors and debtors in possession (the "Debtors") hereby move this Court for entry of an order under sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2014, 2016, and 5002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the employment and retention of Imperial Capital, LLC ("IC") as financial advisors to provide financial advisory services and to assist the Debtors in connection with these chapter 11 cases (the "Application"). The Debtors have relied on the *Declaration of Eric Carlson in Support of The Debtors' Application for Order under Sections 327(a) and 328(a) of The Bankruptcy Code Authorizing the Employment and Retention of Imperial Capital, LLC as Financial Advisor to the Debtors and Debtors in*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, and their respective addresses, are: MagnaChip Semiconductor Finance Company (4144), 787 N. Mary Avenue, Sunnyvale, CA 94085; MagnaChip Semiconductor LLC (5772), 787 N. Mary Avenue, Sunnyvale, CA 94085; MagnaChip Semiconductor SA Holdings LLC, 787 N. Mary Avenue, Sunnyvale, CA 94085; MagnaChip Semiconductor, Inc. (8632), 787 N. Mary Avenue, Sunnyvale, CA 94085; MagnaChip Semiconductor S.A. (9734), 74 Rue de Merl, B.P. 709, L-2017 Luxembourg; and MagnaChip Semiconductor B.V. (9827), 1043 BW Amsterdam, Naritaweg 165, the Netherlands.

*Possession* (the "Carlson Declaration"), a copy of which is attached hereto as <u>Exhibit A</u>. In further support of this Application, the Debtors respectfully represent as follows:

## Jurisdiction

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (O).

2. Venue of these proceedings and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought herein are sections 327(a), 328, 330, and 331 of the Bankruptcy Code and Bankruptcy Rule 2014(a).

## Background

1. On June 12, 2009 (the "Petition Date"), the Debtors commenced these cases (the "Chapter 11 Cases") by each filing a voluntary petitions for relief under chapter 11 the Bankruptcy Code. On June 24, 2009, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors [Docket No. 44].

2. The factual background relating to the Debtors' commencement of these Chapter 11 Cases is set forth in detail in the *Declaration of Margaret Sakai in Support of First Day Motions* (the "Sakai Declaration") filed contemporaneously with this Motion and incorporated herein by reference.

3. The Debtors have continued in possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. No request has been made for the appointment of a trustee or an examiner in the Chapter 11 Cases.

## Relief Requested

5. By this Application, the Debtors seek to employ and retain IC to assist the Debtors in connection with these chapter 11 cases pursuant to 11 U.S.C. §§ 327(a) and 328(a), and Bankruptcy Rules 2014 and 2016, and to obtain approval of the terms under which IC will be compensated, at the expense of the Debtors' estates and on the terms set forth in the Engagement Letter (as defined below), Application and the Carlson Declaration, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code.

## Basis for Relief

6. Under sections 327 and 328 of the Bankruptcy Code, a trustee, debtor in possession and committee appointed under section 1102 of the Bankruptcy Code may employ one or more professionals, that do not hold or represent an interest adverse to the estate and that are disinterested persons, to assist such parties in carrying out their duties under the Bankruptcy Code.

7. Specifically, section 327(a) of the Bankruptcy Code provides that a debtor, subject to Court approval:

> may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor's] duties under this title.

11 U.S.C. § 327(a). Bankruptcy Rule 2014 requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee.

Fed. R. Bankr. Proc. 2014.

8. By this Application, the Debtors request that the Court approve the compensation arrangements described in the Engagement Letter (as defined below) pursuant to § 328(a) of the Bankruptcy Code to perform the services set forth below for the reasons set forth below.

A. <u>Services</u>

9. IC entered into an engagement letter dated August 24, 2009 (as attached to the Carlson Declaration as <u>Exhibit A</u>, the "Engagement Letter").[1] Pursuant to the Engagement Letter, IC will: (i) analyze the Debtors' business, operations, properties, financial condition, competition, forecast, prospects and management; (ii) prepare a liquidation analysis of the assets of the Debtor; (iii) review and analyze the expert witness valuation report prepared by Mesirow Financial Consulting LLC on behalf of the Official Committee of Unsecured Creditors; (iv) provide testimony in the Bankruptcy Court in connection with the services outlined herein and regarding the sale process as managed by the Debtors' former financial advisor; and (v) provide such other financial advisory services with respect to the Debtors' financial issues as may from time to time be agreed upon between the Debtors and IC.

---

[1] The summary descriptions provided herein are qualified in their entirety by the terms of the Engagement Letter attached to the Carlson Declaration.

B. **Qualifications**

10. The Debtors chose IC to act as the Debtors' financial advisor postpetition because IC has substantial expertise in the sale and liquidation of troubled companies and is well qualified to perform these services and represent the Debtors' interests in these Chapter 11 cases.

11. Specifically, IC is recognized for its expertise in providing financial advisory services in financially distressed situations, including advising debtors, creditors and other constituents in Chapter 11 proceedings. IC provides high level strategic assessments; assists in the development and presentation of business plans; and assists in developing and implementing financial restructuring plans both in and out of court. IC also provides M&A advisory services for both healthy and financially distressed middle-market clientele.

12. IC has considerable experience with Chapter 11 restructuring and other distressed company situations, advising both debtor and creditor client constituencies. Advisory assignments in which IC has been actively involved include, among others: Aloha Airlines; Custom Food Products; LandSource; Movie Gallery; Resorts Atlantic City; Nellson Nutraceutical; GPX; Pierre Foods; Performance Transportation Systems; Werner Ladder; Leiner Health Products; TIC Holdings; Brotman Medical Centers; Greektown Casino; Hawaiian Airlines; Mesaba Aviation; and Synventive Molding.

C. **Compensation**

13. The Engagement Letter provides for the following compensation:
   a. An advisory fee of $350,000.00 (the "Advisory Fee"): The Advisory Fee shall be payable in the following amounts and under the following conditions: (A) $250,000.00 of the Advisory Fee payable upon execution of the Engagement Letter; (B) $50,000.00

upon delivery of a written expert witness report solely to the extent any report is actually prepared; and (C) $50,000.00 upon delivery of expert witness testimony solely to the extent that any such testimony is actually delivered.

    b. <u>A cash deposit of $25,000.00 to be credited to expenses incurred during the engagement</u> (the "Deposit"):[2] Without regard to whether the Restructuring (as the term is defined in the Engagement Letter) is consummated or this Engagement Letter expires or is terminated, all fees, disbursements and out-of-pocket expenses (the "Expenses") incurred by IC in connection with the services to be rendered hereunder (including, without limitation, reasonable attorneys' fees, travel and lodging expenses, word processing charges, messenger services, duplicating services, facsimile expenses and other customary expenditures) shall be reimbursed to IC, or paid on its behalf, promptly as billed. Any unused amounts of the Deposit will be returned to the Debtors upon demand.

14.     The Debtors understand that IC intends to apply to this Court for allowance of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and orders of this Court for all services performed and expenses incurred after the Petition Date. IC may file interim fee applications, and shall file a final fee application as required by the Local Rules and orders of this Court, provided however, that IC shall only provide summary time descriptions in support of such applications. The Engagement Letter calls for payment of certain components of compensation to IC upon the occurrence of certain events. The Debtors request authority to pay those components upon occurrence of the events in accordance with the terms of the Engagement Letter subject to approval through filing of an interim or final fee application. The Debtors and IC understand that the Office of the United States Trustee shall retain the right to object to IC's

---

[2] The Debtors submit that its lenders consent to the payment of this deposit, and the cash collateral budget will be amended to provide for both the payment of the Deposit and the Advisory Fee.

interim and final fee applications, and that any objection shall be pursuant to section 328(a) of the Bankruptcy Code.

15. The Debtors submit that the overall compensation structure described above is comparable to compensation generally charged by financial advisors of similar stature to IC for comparable engagements, both in and out of court. IC's restructuring expertise, as well as its capital markets knowledge and financing skills, were important factors in IC's determination of its fee structure.

**D.   Indemnification Provisions**

16. The Engagement Letter provides for indemnification of IC in certain situations, and the Debtors request approval of these indemnification provisions subject to the following:

    a.    Notwithstanding any provision of the Engagement Letter to the contrary, the Debtors shall have no obligation to indemnify IC, or provide contribution or reimbursement to IC, for any claim or expense that is either (i) judicially determined (the determination having become final) to have arisen from IC's gross negligence or willful misconduct, (ii) for a contractual dispute in which the Debtors allege the breach of IC's contractual obligations unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to *In re United Artists Theatre Company, et al.*, 315 F. 3d 217 (3rd Cir. 2003); or (iii) settled prior to a judicial determination as to IC's gross negligence or willful misconduct, but determined by this Court, after notice and a hearing, to be a claim or expense for which IC should not receive indemnity, contribution or reimbursement under the terms of the Engagement Letter, as modified by this Order; and

    b.    If, before the earlier of (i) the entry of an order confirming a Chapter 11 plan in the Debtors' cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these Chapter 11 cases, IC believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Letter (as modified by this

Order), including without limitation the advancement of defense costs, IC must file an application therefore in this Court, and the Debtors may not pay any such amounts to IC before the entry of an order by this Court approving the payment. This subparagraph b is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by IC for indemnification, contribution or reimbursement and not a provision limiting the duration of the Debtors' obligation to indemnify IC; and

c. Any limitation on liability or any amounts to be contributed by the parties to the Engagement Letter under the terms of the Engagement Letter shall be eliminated.

E. **Conflicts**

17. To the best of the Debtors' knowledge, information, and belief, and based upon the Carlson Declaration, IC is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

18. As described in detail in the Carlson Declaration, IC has, among other things, searched its client databases to determine whether it represents, or has represented, certain of the Debtors' creditors or other parties in interest in these proceedings, and/or matters wholly unrelated to these proceedings. However, IC may have represented certain of the Debtors' creditors or other parties in interest in matters wholly unrelated to these Chapter 11 cases. Except as may be described in the Carlson Declaration, IC does not, to its knowledge, represent any party with an interest materially adverse to the Debtors or their estates.

### Notice

19. Notice has been provided to (i) the Office of the United States Trustee; (ii) the Official Committee of Unsecured Creditors appointed in these chapter 11 cases; and (iii) all

parties required to receive notice pursuant to Bankruptcy Rule 2002(b). The Debtors submit that, under the circumstances, no further notice need be given.

### No Prior Request

20.  No prior application for the relief requested herein has been made to this or any other court.

WHEREFORE, based on the facts and disclosures above, the Debtors respectfully request: (i) the authority to employ and retain IC as their financial advisor, (ii) that the Court approve the terms of employment set forth in the Engagement Letter, pursuant to the provisions of 11 U.S.C. §§ 327(a) and 328(a) and Bankruptcy Rule 2014, and (iii) that the Court grant such other and further relief as is just and proper.

Dated: August 25, 2009

MagnaChip Semiconductor Finance Company; MagnaChip Semiconductor LLC; MagnaChip Semiconductor SA Holdings LLC; MagnaChip Semiconductor, Inc.; MagnaChip Semiconductor S.A.; and MagnaChip Semiconductor B.V.

By: _____
Title: