# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>**MAGNACHIP SEMICONDUCTOR FINANCE COMPANY,** *et al.*[1],<br><br>Debtors. | Chapter 11<br><br>Case No. 09-12008 (PJW)<br><br>Jointly Administered |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS,<br><br>Plaintiff,<br><br>v.<br><br>UBS SECURITIES, LLC, UBS AG, STAMFORD BRANCH, UBS LOAN FINANCE, LLC and KOREAN EXCHANGE BANK,<br><br>Defendants. | Adversary No. 09-_____ (PJW) |

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF

The Official Committee of Unsecured Creditors (the "Committee" or "Plaintiff") appointed in the chapter 11 cases of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through its undersigned counsel, as and for its verified complaint against UBS Securities, LLC, UBS AG, Stamford Branch and UBS Loan Finance, LLC (collectively the "Agent") and Korean Exchange Bank ("KEB" and together with the Agent, the "Defendants"), allege as follows:

---

[1] The Debtors in these cases are: MagnaChip Semiconductor Finance Company; MagnaChip Semiconductor LLC; MagnaChip Semiconductor, Inc.; MagnaChip Semiconductor SA Holdings LLC; MagnaChip Semiconductor S.A.; and MagnaChip Semiconductor B.V.

## SUMMARY OF THE ACTION

1. This is an adversary proceeding brought pursuant to Rules 7001(7) and 7065 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and sections 105(a) and 362(a) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") seeking (i) extension of the automatic stay under section 362(a) of the Bankruptcy Code and/or (ii) injunctive relief under section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7065, to enjoin and restrain the Defendants from pursuing any remedies against any of the Debtors' non-debtor affiliates (the "<u>Non-Debtor Affiliates</u>") without further order of the Court.

2. Based on statements made by counsel for the Debtors and counsel for the Agent on the record in these bankruptcy proceedings, the Committee believes that the First Lien Lenders (defined below) may seek to foreclose on the assets of the Selling Non-Debtors (defined below) including the assets of MSK (defined below) located in Korea. In the event that the First Lien Lenders pursue this course of action, the impact upon these Chapter 11 bankruptcy proceedings and the Committee's competing plan will be devastating and irreparable. Thus, the Committee has commenced this adversary proceeding to protect the Debtors' bankruptcy estates and to preserve the status quo.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (G).

4. The venue of this action in this district is proper pursuant to 28 U.S.C. § 1409.

5. This adversary proceeding is initiated under Bankruptcy Rule 7001(7), and the relief requested herein may be ordered pursuant to Bankruptcy Rule 7065 and sections 105(a) and 362(a) of the Bankruptcy Code.

# THE PARTIES

6. The Agent (as a group) holds the titles of arranger, bookmaker, documentation agent, syndication agent, administrative agent, collateral agent and swingline lender under that certain Credit Agreement, as amended, (the "Credit Agreement") dated as of December 23, 2004 by and between Debtors MagnaChip Semiconductor S.A. ("Luxco") and MagnaChip Semiconductor Finance Company ("Finco"), and the financial institutions to the Credit Agreement (the "First Lien Lenders").

7. Defendant Korean Exchange Bank is the issuing bank under the Credit Agreement.

# BACKGROUND

### A. Background of These Cases

8. On June 12, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9. No trustee or examiner has been appointed in the Debtors' bankruptcy cases.

10. On June 24, 2009, the Office of the United States Trustee appointed the Committee pursuant to section 1102 of the Bankruptcy Code. The Committee has selected Lowenstein Sandler PC as its counsel, Drinker Biddle & Reath LLP as its Delaware counsel, and Mesirow Financial Consulting, LLC as its financial advisor.

### B. The Debtors' Prepetition Capital Structure and Cash Collateral

11. Prior to the Petition Date, Debtors Luxco and Finco entered into the Credit Agreement. Debtors MagnaChip Semiconductor Holdings LLC ("LLC"), MagnaChip Semiconductor Inc. ("MSA"), and MagnaChip Semiconductor B.V. ("Dutchco"), along with certain non-debtor affiliates, are guarantors under the Credit Agreement (the "Subsidiary Guarantors," and together with the Borrowers, the "First Lien Borrower Parties"). The

obligations under the Credit Agreement are allegedly secured by liens on and security interests in (the "Prepetition Senior Liens") substantially all of the assets of the Debtors and certain Non-Debtor Affiliates.

12. In addition, the Debtors issued a total of approximately $500 million in aggregate principal amount of junior secured notes to certain noteholders (the "Second Lien Noteholders") and Bank of New York, as trustee and U.S. Bank, National Association as collateral trustee, pursuant to an Indenture, dated as of December 23, 2004, as amended (the "Second Lien Noteholder Indenture"). The obligations under the Second Lien Noteholder Indenture are allegedly secured by liens on and security interests in (the "Prepetition Junior Liens") substantially all of the assets of the Debtors and certain non-debtor affiliates.

13. As of the Petition Date, the principal amount outstanding under the Credit Agreement is approximately $95 million and the principal amount outstanding under the Second Lien Noteholder Indenture is approximately $500 million. The Debtors are also subject to Subordinated Note Claims in the principal amount of approximately $250 million and other unsecured claims of approximately $3.2 million.

14. Pursuant to an Intercreditor Agreement dated as of December 23, 2004, the Prepetition Senior Liens are senior and superior to the Prepetition Junior Liens.

15. On the Petition Date, the Debtors filed a Motion For Authorization to (I) Utilize Cash Collateral Pursuant to 11 U.S.C. § 363; and (II) Provide Adequate Protection Pursuant to 11 U.S.C. §§ 361 and 363 (the "Cash Collateral Motion")

16. According to the Cash Collateral Motion, following the occurrence of certain events of default that allegedly occurred under the Credit Agreement pre-petition, on November 14, 2008, the First Lien Borrower Parties and certain of the First Lien Lenders entered into a Forbearance Agreement, as amended, under which the First Lien Lenders and the Agent agreed to (i) forbear from exercising certain of their default-related rights and remedies under the Credit Agreement and, in lieu of foreclosing on the collateral, (ii) control the access to and use of all cash in the deposit accounts of non-Debtor MagnaChip Semiconductor, Ltd, an affiliated

company organized under the laws of Korea ("MSK") and obtain certain undertakings from the First Lien Borrower Parties to the Agent and the First Lien Lenders, including, without limitation, the agreement of the First Lien Borrower Parties to take steps to market substantially all of the assets of the First Lien Borrower Parties, including MSK, in Korea, and other Non-Debtor Affiliates in foreign jurisdictions pursuant to a transaction containing terms acceptable to the Agent and the First Lien Lenders.

17. Debtor MSA lists a receivable from MSK of approximately $16.5 million. Debtor Dutchco lists the following receivables from MSK: (a) an intercompany receivable of approximately $1.74 million; (b) an intercompany receivable in the form of a short term loan in the amount of $95 million; (c) accrued income in the approximate amount of $45 million, and (d) an intercompany receivable in the form of a long term loan in the amount of $621 million.

18. According to the Cash Collateral Motion, the Agent, Collateral Trustee (U.S. Bank National Association) and First Lien Lenders (collectively, the "First Lien Lender Parties") extended the forbearance period pursuant to the terms of an Enforcement, Consent, Cash Collateral and Limited Forbearance Agreement dated June 11, 2009 (the "Enforcement Agreement"). According to the Cash Collateral Motion, under the Enforcement Agreement, the First Lien Lender Parties have determined to enforce certain of their default-related rights by (i) demanding payment from the Subsidiary Guarantors, (ii) consenting to a sale of substantially all of the assets and liabilities of MSK and certain assets of other First Lien Borrower Parties pursuant to a Business Transfer Agreement, dated as of June 11, 2009 (the "BTA"), and (iii) requiring the distribution of certain of the proceeds of the Asset Sale Transaction to the Collateral Trustee or the Agent, as applicable, for application to the repayment of the outstanding obligations due under the Credit Agreement.

19. On July 13, 2009, the Court entered a final order approving the Cash Collateral Motion (the "Final Cash Collateral Order").

## C. The Debtors' Proposed Plan

20. On June 29, 2009, the Debtors and the Agent (as plan proponents) filed the Joint Chapter 11 Plan of Liquidation (the "Debtors' Plan") and Disclosure Statement in Respect of Joint Chapter 11 Plan of Liquidation (the "Debtors' Disclosure Statement").

21. The Debtors' Plan is premised exclusively upon the implementation of a sale (the "Sale"), pursuant to the BTA, of (1) substantially all of the assets of (i) MSK, (ii) MagnaChip Semiconductor Limited, a company incorporated in the United Kingdom, (iii) MagnaChip Semiconductor Inc., a company incorporated in Japan, (iv) MagnaChip Semiconductor Limited, a company incorporated in Hong Kong SAR, and (v) MagnaChip Semiconductor Limited, a company incorporated in Taiwan (collectively, the "Selling Non-Debtors"); and (2) substantially all of the assets of MSA, certain assets of Luxco and the assignment of certain non-disclosure agreements and other contracts owned by LLC.

22. In contemplation of the Sale, the Debtors (and certain non-debtors) entered into a prepetition agreement with KTB 2007 Private Equity Fund, a Korean registered limited partnership, as represented by its general partner, KTB Securities Co., Ltd., a Korean corporation ("KTB") at a price of approximately $80 million which provides almost full payment of the claims of the First Lien Lenders and, as a practical matter, leaves nothing for general unsecured creditors.

23. Pursuant to the Debtors' Plan, on the effective date, each First Lien Lender Party shall receive a pro rata share of the net sale proceeds from the Sale. In addition, on the effective date, the Agent shall receive, for the benefit of the First Lien Lender Parties, based on their pro rata shares, all of the distributable cash and claims of all of the Debtors other than the cash of MSA. Also, from time to time in the discretion of the Plan Representative, but not less than once every three months if proceeds are available and warrant such a distribution, the Agent shall receive for the benefit of the First Lien Lender Parties, based on their pro rata shares, any proceeds of any other distributable assets of any of the Debtors. Unsecured claims, totaling more

than $750 million, may receive a share of $1 million (approximately .2%) only if all of the voting classes under the Plan vote to accept the Plan.

**D.    The Committee's Objection to the Debtors' Plan and Disclosure Statement**

24.    On July 24, 2009, the Committee filed an objection to approval of the Debtors' Disclosure Statement.

25.    On July 30, 2009, the Court conducted a hearing to consider approval of the Debtors' Disclosure Statement. The Court approved the Debtors' Disclosure Statement, but ordered the Debtors to refrain from sending solicitation packages until a later date. The Court also ruled that it would terminate exclusivity in order to permit the Committee to file a competing plan.

26.    On August 3, 2009, the Court entered an Order Pursuant to 11 U.S.C. §§ 105(a) and 1121(d) Terminating the Debtors' Exclusive Periods as to the Committee only.

**E.    Potential Harm to the Debtors, Their Estates and Their Creditors**

27.    Throughout this case, the Committee has maintained that the value of the assets of the Debtors and the Selling Non-Debtors far exceeds the $80 million purchase price being offered by KTB pursuant to the Sale. Accordingly, the Committee has indicated that it will file an alternate plan of reorganization on or before the current deadline of August 25, 2009.

28.    Upon learning of the Committee's intention to file a competing plan, the Agent (through its counsel) advised the Committee that if the sale to KTB is not consummated within the timeframe set forth in the BTA and the Debtors' Plan, the Agent would seek to foreclose on the assets of the Selling Non-Debtors including the assets of MSK located in Korea. Indeed, the Agent has stated that it is "gearing up" to exercise its remedies as a secured lender against the assets of the Selling Non-Debtors and will exercise these remedies if the Bankruptcy Court does not approve the Debtors' Plan. Thus, even though the Bankruptcy Court has authorized the filing of a competing plan by the Committee, the Agent has stated that it will pursue its remedies against the Non-Debtors Affiliates in the event that the Bankruptcy Court favorably considers a

competing plan of reorganization filed by the Committee. Moreover, the Agent has stated that the Bankruptcy Court does not have jurisdiction over the first Lien Lender Parties in their dealings with the Non-Debtor Affiliates.

29. If the Defendants pursue any remedies against MSK or any of the Non-Debtor Affiliates, the consequences for the Debtors would be severe, immediate and irreparable. The Debtors' operations are dependent upon the viability of MSK, which serves as the Debtors' primary operating subsidiary. A foreclosure or liquidation of the assets of MSK would have a highly disruptive effect on the Debtors' ability, as debtors-in-possession, to administer their Chapter 11 cases in this Court and to control the operations of their overall business, thereby causing irreparable harm to the Debtors' estates and creditors.

## COUNT I
## INJUNCTIVE RELIEF UNDER SECTION 362

30. The Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 27 as if fully set forth herein.

31. Section 362(a)(1) of the Bankruptcy Code operates as a stay, "applicable to all entities," of "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title."

32. Section 362(a)(3) of the Bankruptcy Code operates as a stay, "applicable to all entities," of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."

33. A foreclosure or liquidation of the assets of MSK or any of the Non-Debtor Affiliates would have a highly disruptive effect on the Debtors' ability, as debtors-in-possession, to administer their chapter 11 cases in this Court and to maintain the operations of their overall business, thereby causing harm to the Debtors' estates and creditors.

34. Even though the Non-Debtor Affiliates are not formally debtors-in-possession in this bankruptcy case, should the Defendants proceed against the Non-Debtor Affiliates, the Debtors' restructuring efforts will be completely frustrated. The Debtors' estates will be severely impacted for, among others, the following reasons:

- The Debtors own 100% of the stock of MSK.

- The Debtors' business assets will be rendered valueless if the business operations of MSK are disrupted.

- Among the most valuable assets of the Debtors' estates are accounts receivable due from MSK.

- Management of MSK, the other Non-Debtor Affiliates and the Debtors are essentially the same.

- Creditors view the Debtors, the Non-Debtor Affiliates and MSK as a single business enterprise.

35. Accordingly, the Plaintiff is entitled to a declaratory judgment extending the automatic stay under section 362 of the Bankruptcy Code to enjoin the Defendants from foreclosing on the assets of MSK, liquidating the assets of MSK or otherwise exercising remedies against MSK or other Non-Debtor Affiliates.

## COUNT II
## INJUNCTIVE RELIEF UNDER SECTION 105

36. The Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 33 as if fully set forth herein.

37. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Relief under section 105 of the Bankruptcy Code is particularly appropriate in a chapter 11 case when necessary to protect a debtor's ability to effectively confirm a plan and to preserve the property of a debtor's estate.

38. Section 105 of the Bankruptcy Code enables the Bankruptcy Court to use its "All Writs" powers to preserve the status quo and to protect its effective jurisdiction by preventing matters that come before it from becoming moot before judgment can be rendered or the merits.

39. The Plaintiff is entitled to an injunction under section 105(a) of the Bankruptcy Code, enjoining any attempt by the Defendants to pursue any remedies against the Non-Debtor Affiliates without further order of the Court.

40. A foreclosure or liquidation of the assets of MSK would have a highly disruptive effect on the Debtors' ability, as debtors-in-possession, to administer their chapter 11 cases in this Court, to pursue reorganization under Chapter 11 of the Bankruptcy Code and to control the operations of their overall business, thereby causing irreparable harm to the Debtors' estates and creditors.

41. Based on the value of the Debtors' assets, the Committee has a reasonable likelihood of confirming a Chapter 11 plan of reorganization that protects the interests of the First Lien Lenders and provides far more value for other creditors of the Debtors' estates than is provided under the Debtors' Plan.

42. The harm that will befall the Debtors' estates and their creditors if injunctive relief is not granted greatly outweighs the harm that the Defendants may allegedly incur if the Bankruptcy Court enters an injunction.

43. The entry of injunctive relief under the facts and circumstances of this case is in the public interest.

44. For the reasons stated herein, the Plaintiff is entitled to injunctive relief pursuant to Bankruptcy Rule 7065 enjoining the Defendants from foreclosing on the assets of MSK, liquidating the assets of MSK or otherwise exercising remedies against MSK or other Non-Debtor Affiliates.

**WHEREFORE**, for all of the foregoing reasons, the Plaintiff respectfully requests entry of:

(A) A preliminary and permanent injunction enjoining the Defendants and their agents, attorneys and all persons acting in concert or participation with them, directly and indirectly from (a) taking any act or action to enforce any rights against any Non-Debtor Affiliates, (b) taking any act or action to obtain possession of or to exercise control over property, or the proceeds of property, of Non-Debtor Affiliates; (c) taking any act or action to create, perfect or enforce any lien against Non-Debtor Affiliates or their property, or the proceeds of such property; (d) commencing or continuing any action or legal proceeding (including, without limitation, any judicial, quasi-judicial, administrative or regulatory action, proceeding or process whatsoever), including by way of counterclaim, against Non-Debtor Affiliates, or any of their property, or the proceeds of such property, including, without limitation, the commencement of insolvency or similar proceedings against Non-Debtor Affiliates in any jurisdiction whatsoever; and (e) enforcing any judicial, quasi-judicial, administrative or regulatory judgment, assessment or order against Non-Debtor Affiliates, and commencing or continuing any act or action or other legal proceeding (including, without limitation, any judicial, quasi-judicial, administrative or regulatory action, proceeding or process whatsoever) or any counterclaim to create, perfect or enforce any lien, attachment, garnishment, setoff or other claim against Non-Debtor Affiliates or their property, or the proceeds of such property, or any action to commence insolvency or similar proceedings against Non-Debtor Affiliates in any jurisdiction whatsoever; and

(B) An order granting such other and further relief as the Court may deem just and proper.

Dated: August 26, 2009

/s/ Howard A. Cohen
**DRINKER BIDDLE & REATH LLP**
Howard A. Cohen (DE 4082)
1100 N. Market Street, Suite 1000
Wilmington, DE 19801-1254
Telephone: (302) 467-4200
Facsimile: (302) 467-4201

- and -

**LOWENSTEIN SANDLER PC**
Kenneth A. Rosen, Esq.
John K. Sherwood, Esq.
Jeffrey D. Prol, Esq.
Nicole Stefanelli, Esq.
65 Livingston Avenue
Roseland, New Jersey 07068
Telephone: (973) 597-2500
Facsimile: (973) 597-2400

*Counsel to the Official Committee of Unsecured Creditors*

## VERIFICATION

I, Dean Vomero, of full age, certify as follows:

1. I am a Managing Director of Mesirow Financial Consulting, LLC, financial advisors to the Official Committee of Unsecured Creditors.

2. I have carefully reviewed the above Complaint, and certify that all of the facts set forth therein are true and correct to the best of my knowledge, and those facts alleged upon information belief are true and correct to the best of my information and belief.

3. I am aware that if any of the above statements are willfully false, I am subject to punishment.

_____
Dean Vomero

Dated: August 24, 2009