**EXHIBIT A**

## AVENUE CAPITAL MANAGEMENT II, L.P.

September 23, 2009

John K. Sherwood
Lowenstein Sandler LLP
65 Livingston Avenue
Roseland, New Jersey 07068

Re: $35,000,000 Common Stock Backstop Commitment

Mr. Sherwood:

Reference is made to the chapter 11 bankruptcy cases, lead case no. 09-12008 (the "Chapter 11 Cases"), currently pending before the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), in which MagnaChip Semiconductor, LLC ("LLC") and certain of its affiliates are debtors and debtors in possession (collectively, the "Debtors"). Reference is further made to: (i) a plan of reorganization attached hereto as Exhibit A (as such plan of reorganization may be modified or amended from time to time, the "Committee's Plan") and (ii) a disclosure statement attached hereto as Exhibit B (as it may be modified or amended from time to time, the "Committee's Disclosure Statement"). Capitalized terms used in this letter agreement (the "Backstop Commitment Agreement") and not otherwise defined herein shall have the meanings provided in the Committee's Plan.

The Committee's Plan proposes to obtain exit financing required for the emergence of the Debtors from Chapter 11 by offering to eligible Second Lien Noteholders (the "Offering Participants") a right to participate in an offering (the "Offering") of new common units (the "New Common Units") of MagnaChip Semiconductor, LLC, representing approximately 84% of the New Common Units of LLC on the Effective Date, subject to dilution on account of the Long-Term Incentive Plan, as more fully described in the Committee's Plan. The aggregate purchase price of New Common Units (the "Offering Amount") shall be $35 million. Pursuant to the Committee's Plan, each Offering Participant will be permitted to participate in the Offering up to their respective *pro rata* holdings and will be required to accept such offer by one business day before the Effective Date in accordance with the procedures established in the Committee's Disclosure Statement; provided, however, that the Backstop Purchaser (as defined below) shall be entitled to purchase a minimum allocation of 67% of the New Common Units issued pursuant to the Offering (the "Minimum Allocation"). For purposes of this Backstop Commitment Agreement, the term "*pro rata*" means (x) the total principal amount of Second Lien Noteholder Claims held by such Offeree divided by (y) the aggregate principal amount of Second Lien Noteholder Claims outstanding.

To provide assurance that the Offering will be fully subscribed, the undersigned (the "Backstop Purchaser") hereby commits to backstop the Offering (the "Backstop Commitment"), for the full Offering Amount, on the terms described herein and in the Committee's Plan.

8198639

In consideration for the Backstop Commitment, in the event the Committee's Plan is confirmed and becomes Effective, the Backstop Purchaser shall be paid an amount in New Common Units equal to 10.0% of the New Common Units (the "Standby Commitment Fee"). Subject to the provisions below, the Standby Commitment Fee shall be deemed fully earned and payable upon the Effective Date, regardless of whether the Offering is fully subscribed by eligible holders of the Second Lien Noteholder Claims. The Creditors' Committee agrees that the Standby Commitment Fee shall be nonrefundable and that the Standby Commitment Fee and any other payments hereunder shall be paid without setoff or recoupment and shall not be subject to defense or offset on account of any claim, defense or counterclaim. The Standby Commitment Fee and other amounts payable hereunder shall be paid in New Common Units.

All matters relating to the confirmation and consummation of the Committee's Plan, including, without limitation, the form of the Committee's Plan as ultimately confirmed by the Bankruptcy Court and the terms of the Offering and of any guarantees and intercreditor arrangements relating to other indebtedness of Debtors must be in form and substance reasonably satisfactory to the Backstop Purchaser and its counsel.

The agreement of the Backstop Purchaser hereunder is conditioned upon satisfaction of each of the conditions set forth in the Committee's Plan, including (without limitation) the entry of an order of the Bankruptcy Court on or before September 25, 2009, in form and substance satisfactory to the Backstop Purchaser and its counsel, approving the Backstop Commitment Agreement and the Committee's Plan, including the Standby Commitment Fee, and upon the Effective Date of the Committee's Plan, the payment of expenses pursuant to the expense reimbursement provisions provided in this Backstop Commitment Agreement, which order shall become a final order not subject to stay, appeal or modification on or before October 15, 2009 (the "Approval Order").

The obligation of the Backstop Purchaser hereunder is further conditioned upon the entry by the Bankruptcy Court of an order (which has become final) confirming the Committee's Plan (with such changes as are reasonably satisfactory to the Backstop Purchasers and their counsel) (the Committee's Plan in the form confirmed by the Bankruptcy Court, the "Confirmed Plan"), and the effectiveness of such Confirmed Plan, on or before October 30, 2009.

The obligation of the Backstop Purchaser is further conditioned upon these two conditions as of the Effective Date: (a) the ability of LLC to perform its obligations under the Postconfirmation Organizational Documents, or (b) the ability of the Backstop Purchaser to enforce its rights under the Postconfirmation Organizational Documents.

In the event the Committee's Plan is confirmed and becomes Effective, the Backstop Purchaser shall be: (y) paid within 10 days of demand the reasonable and documented fees, expenses, disbursements and charges of the Backstop Purchaser incurred after July 29, 2009 relating to the exploration and discussion of alternative financing structures to the Backstop Commitment or to the preparation and negotiation of this Backstop Commitment Agreement, the Committee's Plan, the Postconfirmation Organizational Documents, and the proposed documentation and the transactions contemplated hereby and thereby, including, without

limitation, the reasonable fees and expenses of counsel to the Backstop Purchasers, and (z) indemnified and held harmless from and against any and all losses, claims, damages, liabilities and expenses, joint or several, which any such person or entity may incur, have asserted against it or be involved in as a result of or arising out of or in any way related to this letter, the matters referred to herein, the proposed Backstop Commitment contemplated hereby, the use of proceeds thereunder or any related transaction or any claim, litigation, investigation or proceeding relating to any of the foregoing, regardless of whether any of such indemnified persons is a party thereto, and to reimburse each of such indemnified persons upon 10 days of demand for any legal or other expenses incurred in connection with any of the foregoing; provided, however, that the foregoing indemnity will not, as to any indemnified person, apply to losses, claims, damages, liabilities or related expenses to the extent they have resulted from the bad faith, willful misconduct or gross negligence of such indemnified person. Notwithstanding any other provision of this letter, no indemnified person will be liable for any special, indirect, consequential or punitive damages in connection with its activities related to the Backstop Commitment and the Offering. The terms set forth in this paragraph survive termination of this Backstop Commitment Agreement and shall remain in full force and effect regardless of whether the documentation for the Offering is executed and delivered.

This letter (a) is not assignable by the Creditors' Committee without the prior written consent of the Backstop Purchasers (and any purported assignment without such consent shall be null and void), and (b) is intended to be solely for the benefit of the parties hereto and is not intended to confer any benefits upon, or create any rights in favor of, any person other than the parties hereto; provided, however, the First Lien Lender Parties shall be considered third party beneficiaries of the parties hereof.

This Backstop Commitment Agreement sets forth the agreement of the Backstop Purchaser to fund the Backstop Commitment on the terms described herein and shall be considered withdrawn if the Backstop Purchaser has not received from the Creditors' Committee a fully executed counterpart to this Backstop Commitment Agreement on or before 5:00 p.m. on September 25, 2009.

The obligations of the Backstop Purchaser to fund the Backstop Commitment shall terminate and all of the obligations of the Debtors (other than the obligations of the Debtors to pay the reimbursable expenses and to satisfy their indemnification obligations as set forth herein) shall be of no further force or effect, upon the giving of written notice of termination by the Backstop Purchaser, in the event that items (a)-(c) set forth in the Committee's Plan under the heading "Conditions Precedent to Plan Effectiveness" shall not occur, each of which may be waived in writing by the Backstop Purchaser.

THIS COMMITMENT LETTER WILL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

This Backstop Commitment Agreement may not be amended or waived except in writing signed by the Creditors' Committee and the Backstop Purchaser. This Backstop Commitment Agreement may be executed in any number of counterparts, each of which will be an original,

and all of which, when taken together, will constitute one agreement. Delivery of an executed counterpart of this Backstop Commitment Agreement by facsimile or portable document format (PDF) will be effective as delivery of a manually executed counterpart of this Backstop Commitment Agreement.

This Backstop Commitment Agreement constitutes the entire understanding among the parties hereto with respect to the subject matter hereof and replaces and supersedes all prior agreements and understandings, both written and oral, between the parties hereto with respect to the subject matter hereof and shall become effective and binding upon (i) the mutual exchange of fully executed counterparts and (ii) the entry of the Approval Order.

The Official Committee of Unsecured Creditors will use reasonable efforts to obtain an order approving this Backstop Commitment Agreement by the Bankruptcy Court no later than September 25, 2009.

[SIGNATURE PAGES FOLLOW]

If the foregoing is in accordance with your understanding of our agreement, please sign this letter in the space indicated below and return it to us.

Very truly yours,

By: Avenue Capital Management II, L.P., solely in its capacity as its investment advisor to Avenue Investments, L.P., Avenue International Master, L.P., Avenue Special Situations Fund IV, L.P., Avenue Special Situations Fund V, L.P., and Avenue CDP-Global Opportunities Fund, L.P.

By: _____
Name:
Title:

Address:
535 Madison Avenue
New York, NY 10022
Attention: Randal Klein
Fax: (212) 486-1891

**THE FOREGOING IS HEREBY
AGREED TO AND ACCEPTED:**


OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF MAGNACHIP
SEMICONDUCTOR FINANCE COMPANY ET AL.


By: */s/ John K. Sherwood*
    Name:    John K. Sherwood
    Title:    Counsel to the Official Committee of Unsecured Creditors of MagnaChip
             Semiconductor Finance et al.

8198639

## Schedule I

## Backstop Purchasers

| Backstop Purchasers[1] | Commitment Percentage | Commitment Amount |
|---|---|---|
| Avenue Investments, L.P. Avenue International Master, L.P., Avenue Special Situations Fund IV, L.P., Avenue Special Situations Fund V, L.P., and Avenue CDP-Global Opportunities Fund, L.P. | 100% | $35,000,000 |

---

[1] The Backstop Purchaser may be funds and/or accounts managed or advised by the entity listed above.

8198639

# Exhibit A

## Plan

8198639

# Exhibit B

## Disclosure Statement

8198639