# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **MAGNACHIP SEMICONDUCTOR FINANCE COMPANY**, *et al.*, | ) ) ) | Case No. 09-12008 (PJW) |
| | ) | Jointly Administered |
| Debtors. | ) | |

Re: Docket No's. Docket No's. 212, 213, 249, 250, 277, 278, 279, 295

**UNSWORN DECLARATION PURSUANT TO 28 U.S.C. §1746(2) AND FED.R.CIV.P. 43(E), AS INCORPORATED BY FED.R.BANKR.P. 9017, OF DEAN R. VOMERO IN SUPPORT OF CONFIRMATION OF THE SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF MAGNACHIP SEMICONDUCTOR FINANCE COMPANY, *ET AL.***

I, Dean R. Vomero, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury as follows:

1. I am a Managing Director of Mesirow Financial Consulting, LLC. ("Mesirow"), a professional services firm engaged in the business of providing financial advisory and related professional consulting services. Mesirow is a wholly-owned subsidiary of Mesirow Financial Holdings, Inc., a diversified financial services firm which also offers investment management services, insurance services, investment services, investment banking and real estate services.

2. The Official Committee of Unsecured Creditors (the "Committee") of MagnaChip Semiconductor Finance Company, *et al.*, (the "Debtors" or the "Company") has retained Mesirow as its financial advisors in these bankruptcy proceedings. In that capacity, Mesirow has reviewed the Second Amended Chapter 11 Plan of Reorganization Proposed by the Committee, dated as of September 22, 2009 [Docket No. 295] (as may be amended, supplemented or otherwise modified from time to time, the "Plan")[1] and has made its findings and conclusions with respect to the Plan's feasibility and confirmability pursuant to section 1129 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended (the "Bankruptcy Code").

---

[1] All capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Plan.

3. I submit this declaration (the "Declaration") in support of confirmation of the Committee's Plan.

4. In arriving at the conclusions set forth herein, Mesirow Financial Consulting reviewed and considered, among other things, the following information: (i) the Business Transfer Agreement (the "BTA"), (ii) the Debtors' Chapter 11 Plan of Liquidation and Corresponding Disclosure Statement (collectively the "Debtors' Plan"), (iii) the Debtors' historical financial statements, (iv) the most current 2009 financial forecast which includes 2009 actual results through July 31, 2009 plus the Debtors' forecast for the remaining five months of 2009 (the "2009 forecast"), schedules supporting the 2009 forecast and the 2010 forecast, (v) management presentations made to prospects, (vi) financial information for a select group of companies reasonably comparable to the Debtors ("Comps"),[2] (vii) research reports issued by Goldman Sachs Group, Inc. ("Goldman"), Merrill Lynch/Bank of America ("Merrill"), Morgan Stanley Research ("Morgan Stanley"), Credit Suisse Equity Research ("Credit Suisse") and Cowen and Company ("Cowen"), (viii) a number of presentations prepared by the Company's investment bankers, Miller Buckfire and Company, LLC. ("Miller Buckfire"), and Standard Chartered Securities Korea Limited ("Standard"), (ix) information required to calculate the Debtors Total Enterprise Value ("TEV"), (x) other financial and non-financial information and (xi) the Committee's Plan. *See* Exhibit "A" for a complete list of information reviewed and considered in reaching the conclusions stated herein.

5. As a result of my review of the Debtors' business operations and financial information, and the Committee's Plan, it is my opinion that the Committee's Plan is feasible and that Confirmation of the Committee's Plan is necessary and in the best interests of the Debtors' and of the creditors of the Debtors' estates.

---

[2] Comps includes, Novatek Microelectronics Corp., Himax Technologies, Inc., Vanguard International, Semiconductor Corporation, United Microelectronics Corporation, Chartered Semiconductor, Manufacturing Ltd., Semtech Corporation, Maxim Integrated Products, Inc., Semiconductor Manufacturing International Corporation, Tower Semiconductor Ltd., Intersil Corporation. In selecting the Comps, size as measured by revenue, end market influence including display and foundry services, and identification by the Debtors or their professionals were considered.

6. Except as otherwise indicated herein, all facts set forth in this Declaration are based upon my personal knowledge and belief upon my review of the financial and other information referenced in paragraph 4, above, as well as discussions with, and information provided by, the Debtors' management. If I were called upon to testify, I could and would, based upon the foregoing, testify competently to the facts set forth herein.

A. <u>Compliance With 11 U.S.C. § 1129(a)(1) and (2)</u>

7. I am advised and believe that the Committee, as Plan Proponent, and the Plan, comply with the applicable provisions of the Bankruptcy Code as described more fully below. Thus the Plan satisfies the requirements of 11 U.S.C. § 1129(a)(1) and (2).

### 1. The Committee's Plan complies with 11 U.S.C. § 1122

8. Article IV(B) of the Committee's Plan classifies Claims and Interests as follows: (i) Class 1 – Priority non-Tax Claims; (ii) Class 2 – Other Secured Claims; (iii) Class 3 – First Lien Lender Secured Claims; (iv) Class 4 – Second Lien Noteholder Claims; (v) Class 5 – General Unsecured Claims; (vi) Class 6 – Subordinated Note Claims; (vii) Class 7 – Intercompany Claims against the Debtors; and (viii) Class 8 – Interests in the Debtors. I am advised and believe, therefore, that the Plan Satisfies the Classification Requirements of 11 U.S.C. § 1122.

9. I am advised and believe that the aforementioned classification structure was chosen because it places each Claim and Interests in a Class with other substantially similar Claims or Interests. Specifically, I am advised and believe that each of the Claims and Interests in each Class listed above contains similar legal rights, thereby ensuring there is no intra-class discrimination. I am advised and believe, therefore, that the Plan complies with section 1122 of the Bankruptcy Code.

## 2. The Committee's Plan complies with 11 U.S.C. § 1123

(a) Designation of Classes of Claims and Interests — 11 U.S.C. § 1123(a)(1)

10. The Plan satisfies the Requirements of 11 U.S.C. § 1123. The Plan designates Classes of Claims and Interests other than those specified in 11 U.S.C. §§ 507(a)(2)(3) and (8). In am advised and believe therefore that the Plan complies with section 1123(a)(1) of the Bankruptcy Code.

(b) The Committee's Plan Specifies Unimpaired Classes — 11 U.S.C. § 1123(a)(2)

11. The Plan specifies which Classes of Claims and Interests are unimpaired under the Plan. In am advised and believe therefore that the Plan complies with section 1123(a)(2) of the Bankruptcy Code.

(c) The Committee's Plan Adequately Specifies the Treatment of Impaired Classes — 11 U.S.C. § 1123(a)(3)

12. The Plan specifies which Classes of Claims and Interests are Impaired under the Plan and adequately specifies the treatment of such Claims. I am advised and believe therefore that the Plan complies with section 1123(a)(3) of the Bankruptcy Code.

(d) The Committee's Plan Provides for the Same Treatment for Claims or Interests Within the Same Class — 11 U.S.C. § 1123(a)(4)

13. In compliance with 11 U.S.C. § 1123(a)(4), the Plan provides for equality of treatment for each Claim or Interest within a particular Class. In am advised and believe, therefore, that the Plan complies with section 1123(a)(4) of the Bankruptcy Code.

(e) The Committee's Plan Provides Adequate Means for its Implementation — 11 U.S.C. § 1123(a)(5)

14. In compliance with 11 U.S.C. § 1123(a)(5), the Plan contains adequate means for implementation. I am advised that the Plan contains adequate and proper means for the implementation, including: (a) the Restructuring Transactions; (b) the release of Second Liens, Second Lien Guarantees, and Subordinate Note Guarantees; (c) the Offering; (d) the amendment

of the certificates of incorporation, charter, and bylaws of the Debtors as required to be consistent with the provisions of the Committee's Plan and the Bankruptcy Code; (e) the cancellation of the Interests on account of LLC; (f) the authorization for the Reorganized Debtors' entry into the New Term Loan and the execution of related documents; (g) the authorization and issuance or distribution of the New Common Units and the execution of related documents; and (h) the payment of the Committee's Plan's expenses. Moreover, the Reorganized Debtors will have, immediately upon the Effective Date, sufficient Cash to make all payments required to be made on the Effective Date pursuant to the terms of the Committee's Plan. Given these provisions, together with other extensive provisions for implementation contained in the Plan, I am advised and believe that the Plan complies with section 1123(a)(5) of the Bankruptcy Code.

   (f)  The Committee's Plan Provides That the Debtors Will Prohibit the Issuance of Nonvoting Equity Securities — 11 U.S.C. § 1123(a)(6)

15. I am advised that Article VI(A)(2) of the Plan provides for the cancellation of existing securities and related indentures on the Effective Date. Furthermore, pursuant to Article VI(A)(3) of the Plan provides that, in connection with the issuance of New Common Units, Warrants and Subscription Rights, the Reorganized Debtors shall not issue nonvoting equity securities to the extent prohibited by section 1123(a)(6) of the Bankruptcy Code. I am advised and believe, therefore, that the Plan complies with section 1123(a)(6) of the Bankruptcy Code.

   (g)  The Plan Contains Appropriate Provisions with Respect to the Selection of Post-Confirmation Directors and Officers — 11 U.S.C. § 1123(a)(7)

16. The Plan provisions with respect to the manner of selection of any officer, director or trustee of the post-confirmation Debtors are consistent with the interests of creditors and equity security holders and public policy. I am advised and believe, therefore, that the requirements of section 1123(a)(7) of the Bankruptcy Code have been met.

(h)  Section 1123(a)(8) of the Bankruptcy Code is
Not Implicated by the Committee's Plan —
11 U.S.C. § 1123(a)(8)

17. None of the Debtors are individuals. I am advised and believe, therefore, that, having no applicability to the Committee's Plan, the requirements of section 1123(a)(8) of the Bankruptcy Code have been met.

18. As set forth above, the Committee's Plan satisfies the applicable mandatory plan requirements contained in section 1123(a) of the Bankruptcy Code.

### 3. The Committee's Plan complies with 11 U.S.C. § 1123(b)

19. The Plan specifies that all Classes of Claims and Interests are impaired or unimpaired, as the case may be. I am advised and believe that the Committee's Plan is therefore consistent with section 1123(b)(1) of the Bankruptcy Code.

20. Article VII of the Committee's Plan provides that, except for any executory contracts or unexpired leases: (i) that are listed as Rejected Contracts in the Plan Supplement (ii) that previously were assumed or rejected by an order of the Bankruptcy Court, pursuant to section 365 of the Bankruptcy Code; (iii) as to which a motion for approval of the assumption or rejection of such contracts or leases has been Filed and served prior to Confirmation; or (iv) that constitute contracts of insurance in favor of, or that benefit, the Debtors or the Estates, each executory contract and unexpired lease entered into by the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed assumed pursuant to section 365 of the Bankruptcy Code as of the Effective Date. The Committee's Plan further provides that on the Effective Date, the Debtors shall pay any cure costs associated with any assumed contracts owned by the Debtors (i.e., claims of non-Debtor contract parties against the Debtors for monetary damages for breaches of such assumed contracts) from the Cash of the Reorganized Debtors. I am advised and believe that the Committee's Plan is therefore consistent with section 1123(b)(2) of the Bankruptcy Code.

21. Article IX(D) of the Committee's Plan provides that, the Reorganized Debtors will retain and may exclusively enforce any Retained Rights of Action and the Confirmation

Order shall be deemed a res judicata determination of such rights to retain and exclusively enforce such Retained Rights of Action. I am advised and believe that the Committee's Plan is therefore consistent with section 1123(b)(3) of the Bankruptcy Code.

22. I am advised and believe that, in accordance with section 1123(b)(6) of the Bankruptcy Code, the Plan provides for the retention of the jurisdiction of the Bankruptcy Court, and contains certain, injunction, exculpation and release provisions that are consistent with the applicable provisions of the Bankruptcy Code.

    (a)    The Retention of the Court's Jurisdiction Is Permitted by 11 U.S.C. § 1123(b)

23. I am advised that, under Article XIV of the Plan, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Cases and any of the proceedings related to the Chapter 11 Cases pursuant to section 1142 of the Bankruptcy Code and 28 U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy Code and other applicable law, including, without limitation, such jurisdiction as is necessary to ensure that the purpose and intent of the Plan are carried out. I am also advised that all of the matters outlined in Article XIV of the Plan are matters over which the Bankruptcy Court otherwise would have jurisdiction during the pendency of these Chapter 11 Cases. I am advised and believe, therefore, that the continuing jurisdiction of the Bankruptcy Court, as provided in Article XIV of the Committee's Plan, is appropriate, necessary and wholly consistent with applicable law.

    (b)    The Other Permissive Provisions in the Committee's Plan Are Reasonable and Appropriate

24. In addition, I am advised that the injunction, exculpation and release provisions contained in Article X of the Committee's Plan are consistent with precedent in this District. I am also advised and believe that the Court has the power to issue an injunction protecting the Non-Debtor Subsidiaries based upon, among others, the following unique facts and circumstances: (1) the identity of interests between the Debtors and the Non-Debtor Subsidiaries (especially MSK), such that a suit against the Non-Debtor Subsidiaries is, in essence, a suit

-7-
WM01/ 7825970.1

against the Debtors or will deplete assets of the estate; (2) the substantial contribution by the Non-Debtor Subsidiaries (especially MSK) of assets to the reorganization of the Debtors in these bankruptcy proceedings; (3) the essential nature of the injunction to the reorganization to the extent that, without the injunction, there is little likelihood of success; (4) the anticipated substantial support of creditor groups for the Committee's Plan; and (5) the provisions in the Committee's Plan for payment upon the claims of the First Lien Lenders and the Second Lien Noteholders, who are the primary creditors affected by the injunction. I am advised and believe, therefore, that the injunction is important and necessary to the success of the Committee's Plan. I am also advised and believe that the exculpation provisions contained in Article X(B)(3) of the Plan are consistent with precedent in this District.

25. In addition, I am advised that the Committee, as Plan Proponent, has adhered to the disclosure and solicitation requirements of sections 1125 and 1126 of the Bankruptcy code.

B. **The Committee's Plan Has Been Proposed in Good Faith And Not by Any Means Forbidden by Law — 11 U.S.C. § 1129(a)(3)**

26. Consistent with the purpose of chapter 11 of the Bankruptcy Code, the Committee's Plan is designed to fairly and efficiently reorganize the Debtors' operations in a manner that will allow these cases to be promptly resolved, while providing for recoveries to all creditors that substantially exceed the recoveries to creditors proposed under the Debtors' Plan. The Committee's Plan was developed, negotiated and is being proposed in good faith. Upon termination of the Debtors' exclusivity periods by the Bankruptcy Court on August 3, 2009, Mesirow diligently pursued many plan alternatives with potential lenders, investors and purchasers. The transaction with the backstop Purchaser incorporated in the Plan was the best alternative available to the Debtors estates under the circumstances. Also, the Committee's Plan and the process leading to its formulation, including diligently pursued negotiations with the Agent and the Debtors, provide additional, independent evidence of the Committee's good faith. Further, the Committee's Plan's exculpation, release and injunction provisions have been negotiated in good faith and are consistent with sections 105, 1123(b)(6), 1129 and 1142 of the

Bankruptcy Code and applicable law. I am advised and believe, therefore that the Committee has fulfilled its obligations under section 1129(a)(3) of the Bankruptcy Code.

C. **The Committee's Plan Provides for Court Approval of Payment for Services and Expenses — 11 U.S.C. § 1129(a)(4)**

27. As required by section 1129(a)(4) of the Bankruptcy Code, any payment made or promised by the Plan Proponent, the Debtors, or by a person acquiring property under the Plan, for services or for costs and expenses in or in connection with these Chapter 11 Cases or in conjunction with the Plan has been, or will be, approved by, or is subject to the approval of, the Court. I am advised and believe therefore, that the Plan complies with section 1129(a)(4) of the Bankruptcy Code.

D. **Section 1129(a)(5) Has Been Satisfied Because All Necessary Information Regarding Directors and Officers of the Debtors Under the Committee's Plan Has Been Disclosed — 11 U.S.C. § 1129(a)(5)**

28. In compliance with section 1129(a)(5)(A)(i) of the Bankruptcy Code, Article VI(G) of the Plan provides that the Backstop Purchaser has no current intention of changing the Debtors' current management or their current compensation. I am advised and believe, therefore, that the Plan complies with section 1129(a)(5) of the Bankruptcy Code.

E. **The Committee's Plan Does Not Contain Rate Changes Subject to the Jurisdiction of Any Governmental Regulatory Commission — 11 U.S.C. § 1129(a)(6)**

29. I am advised and believe that section 1129(a)(6) of the Bankruptcy Code is inapplicable because the Plan does not provide for any changes in any rates subject to such regulatory approval. I am advised and believe, therefore, that having no applicability to the Committee's Plan, it follows that the requirements of section 1129(a)(6) of the Bankruptcy Code have been met.

WM01/ 7825970.1

F.  **The Committee's Plan Is in the Best Interests of Creditors and Equity Interest Holders — 11 U.S.C. § 1129(a)(7)**

All creditors will receive substantially more under the Committee's Plan than they would receive in a chapter 7 liquidation. As reflected in the Committee's Disclosure Statement, the Committee's Plan provides greater recovery to the Holders of Allowed Claims than such Holders would receive under a liquidation under chapter 7 because (i) the Debtors' operations are worth more as a going concern than in a distressed sale, (ii) the Committee's Plan avoids a layer of administrative expense associated with the appointment of a chapter 7 trustee, while increasing the efficiency of administering the Debtors' assets for the benefit of Creditors. *See* Liquidation Analysis, attached hereto as Exhibit "A".

30. I believe, and the Liquidation Analysis shows, that all Impaired Classes of creditors will receive at least as much under the Committee's Plan on account of their Claims than they would in a chapter 7 liquidation of the Debtors. The Debtors' assets are secured by the liens of the Lenders. I am also advised and believe that, in a chapter 7 case, the chapter 7 trustee would also be entitled to seek a sliding scale commission based upon the funds distributed by such trustee, even if the Debtors have already accumulated much of the funds and have already incurred many of the expenses associated with generating those funds. I am further advised and believe that there is a reasonable likelihood that Creditors would "pay again" for the funds accumulated by the Debtors, since the chapter 7 trustee would be entitled to receive a commission in some amount for all funds distributed, including possibly substantial funds handed over to the chapter 7 trustee by the Debtors.

31. I am advised and believe, therefore, that a chapter 7 liquidation would result in delay in distributions to Creditors. I also believe that, among other things, a chapter 7 case would trigger a new bar date for filing Claims that would be more than ninety days following conversion of the case to chapter 7.

32. I believe, therefore, that the Committee's Plan provides greater recovery to the Holders of Allowed Claims than such Holders would receive under a liquidation under chapter 7

because (i) the Debtors' operations are worth more as a going concern than in a distressed sale, (ii) the Committee's Plan avoids a layer of administrative expense associated with the appointment of a chapter 7 trustee, while increasing the efficiency of administering the Debtors' assets for the benefit of Creditors.

33. I believe that the Committee's Plan provides an opportunity to bring the greatest return to Creditors. I believe, therefore, that the Plan complies with section 1129(a)(7) of the Bankruptcy Code.

G. **The Committee's Plan Provides for Payment in Full of All Allowed Priority Claims — 11 U.S.C. § 1129(a)(9)**

34. Pursuant to Article III(B) of the Committee's Plan, on the Effective Date, each Holder of an Allowed Administrative Expense will receive, in full satisfaction, settlement and release of such Allowed Administrative Expense, Cash equal to the full amount of such Allowed Administrative Expense, unless such Holder and any of the Debtors have mutually agreed in writing to other terms, or an order of the Bankruptcy Court provides for other terms; provided, however, that (a) requests for payment of all Administrative Expenses must be filed and served as described in Article XIV(B)(3) of the Committee's Plan, and (b) certain different and additional requirements shall apply to the Administrative Expenses that are Fee Claims as set forth in Article XIV(B)(2) of the Committee's Plan.

35. Likewise, I am advised that Article IV(B)(1) of the Committee's Plan provides that the Holder of each Priority Non-Tax Claim shall receive, in full satisfaction, settlement and release of such Priority Non-Tax Claim, a Cash payment equal to the Allowed amount of such Claim on or as soon as practicable after the later of the Effective Date or the date upon which the Bankruptcy Court enters a Final Order determining or allowing such Claim. I am also advised that any Holder of a Priority Non-Tax Claim may agree to accept different treatment as to which the Debtors and such Holder have agreed upon in writing.

36. Finally, I am advised that, consistent with section 1129(a)(9)(c) of the Bankruptcy Code, Article III(D) of the Committee's Plan provides that on or as soon as practicable after the

-11-
WM01/ 7825970.1

Effective Date, each Holder of an Allowed Tax Claim against any of the Debtors will receive, at the sole option of the Debtors or the Reorganized Debtors, (i) on the Effective Date, or as soon thereafter as is practicable, Cash in an amount equal to such Allowed Tax Claim or, (ii) commencing on the Effective Date, or as soon thereafter as is practicable, and continuing over a period not exceeding five (5) years from and after the Petition Date, equal semi-annual Cash payments in an aggregate amount equal to such Allowed Tax Claim, together with interest for the period after the Effective Date at the rate determined under applicable non-bankruptcy law as of the calendar month in which the Plan is confirmed, subject to the sole option of the Debtors or Reorganized Debtors to prepay the entire amount of the Allowed Tax Claim. Any Allowed Tax Claim (or portion thereof) not yet due and payable as of the Effective Date will be paid by the Reorganized Debtors in the ordinary course of business as such obligations become due. Any Holder of an Allowed Tax Claim may agree to accept different treatment as to which the Debtors and such Holder have agreed upon in writing.

37. Based upon the foregoing, I am advised and believe that the Committee's Plan treats all priority claims against the Debtor in accordance with the requirements of section 1129(a)(9) of the Bankruptcy Code.

### H. The Committee's Plan Is Feasible — 11 U.S.C. § 1129(a)(11)

38. Based upon my review of the Debtors' operations and financial information, as well as my review of other market information, I believe that the Plan is feasible. The Committee's Plan provides, among other things, for a Stock Rights Offering of $35.0 million (the "Offering Amount"). In addition, I believe the Committee's Plan is feasible based on the fact the Debtors will have sufficient liquidity to conduct business operations comfortably and to service all financial obligations from the process of the Offering and available cash flow, and more than enough value to adequately protect the Lenders who select the Minimum Offering.

Given these provisions, together with other extensive provisions for implementation contained in the Plan, I believe that the Plan is feasible, that confirmation of the plan will not likely be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors under the plan, and I am advised that the Plan complies with section 1129(a)(11) of the Bankruptcy Code.

I.  **The Committee's Plan Provides for Full Payment of All Statutory Fees — 11 U.S.C. § 1129(a)(12)**

39. I am advised that Articles III(B) and XIV(B)(2) of the Committee's Plan provide that all fees payable pursuant to section 1930 of Title 28 of the United States Code shall continue to be paid pursuant to the provisions of such section. I am advised and believe, therefore, that the Committee's Plan complies with section 1129(a)(12) of the Bankruptcy Code.

J.  **U.S.C. § 1129(a)(13) Through 11 U.S.C. § 1129(a)(16) Are Inapplicable**

40. I am advised and believe that, based on the facts of these Chapter 11 Cases, section 1129(a)(13) through (16) of the Bankruptcy Code are not applicable to the Committee's Plan. I am advised and believe, therefore, that having no applicability to the Committee's Plan, the requirements of section 1129(a)(13) through (16) of the Bankruptcy Code have been met.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

September 24, 2009

_____
Dean R. Vomero
Managing Director
Mesirow Financial Consulting