## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **MAGNACHIP SEMICONDUCTOR** | ) | Case No. 09-12008 (PJW) |
| **FINANCE COMPANY, *et al.*,** | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |

Re: Docket No's. 212, 213, 249, 250, 277, 278, 279, 295

---

### MEMORANDUM OF LAW IN SUPPORT OF AN ORDER CONFIRMING THE SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION PROPOSED BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF MAGNACHIP SEMICONDUCTOR FINANCE COMPANY, *ET AL.*

---

**DRINKER BIDDLE & REATH LLP**   - and -   **LOWENSTEIN SANDLER PC**
Howard A. Cohen, Esq.                                Kenneth A. Rosen, Esq.
1100 N. Market Street, Suite 1000             John K. Sherwood, Esq.
Wilmington, DE 19801-1254                 65 Livingston Avenue
Telephone: (302) 467-4200                 Roseland, New Jersey 07068
Facsimile: (302) 467-4201                  Tel: (973) 597-2500
                                           Fax: (973) 597-2400

*Counsel to the Official Committee of Unsecured Creditors*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. iii

I.     PRELIMINARY STATEMENT ........................................................................... 1

II.    STATEMENT OF FACTS .................................................................................... 1

III.   SUMMARY OF THE COMMITTEE'S PLAN AND VOTING RESULTS ..................... 4

IV.    ARGUMENT ....................................................................................................... 5

A.     The Committee's Plan Satisfies the Requirements for Confirmation Under
       11 U.S.C. § 1129(a) ........................................................................................... 5

       1.     A Plan Proponent Must Show Compliance With the Provisions of the
              Bankruptcy Code by a Preponderance of the Evidence ........................... 6

       2.     The Committee's Plan Meets All of the Requirements for Confirmation
              Under 11 U.S.C. § 1129 ........................................................................... 6

       3.     The Committee's Plan Satisfies the Requirements of  11 U.S.C. §
              1129(a)(1) ............................................................................................... 6

              a.     The Committee's Plan Satisfies the Classification Requirements of
                     11 U.S.C. § 1122 ............................................................................ 7

              b.     The Committee's Plan Satisfies the Requirements of 11 U.S.C. §
                     1123 ................................................................................................ 8

                     i.     11 U.S.C. § 1123(a) ............................................................. 8

                     ii.    11 U.S.C. § 1123(b) ........................................................... 12

       4.     The Committee, as the Proponent of the Committee's Plan,  Has Complied
              with 11 U.S.C. § 1129(a)(2) ................................................................... 15

       5.     The Committee's Plan Has Been Proposed in Good Faith and Not by  Any
              Means Forbidden by Law — 11 U.S.C. § 1129(a)(3) ............................. 16

       6.     The Committee's Plan Provides for Court Approval of Payment for
              Services and Expenses — 11 U.S.C. § 1129(a)(4) ................................. 18

       7.     Section 1129(a)(5) Has Been Satisfied Because All Necessary
              Information Regarding Directors and Officers of the Debtors  Under the
              Committee's Plan Has Been Disclosed — 11 U.S.C. § 1129(a)(5) ......... 18

8. The Committee's Plan Does Not Contain Rate Changes  Subject to the Jurisdiction of Any Governmental Regulatory  Commission — 11 U.S.C. § 1129(a)(6) ..................................................................19

9. The Committee's Plan Is in the Best Interests of Creditors and  Equity Interest Holders — 11 U.S.C. § 1129(a)(7) ....................................................19

10. Acceptance by All Impaired Classes — 11 U.S.C. § 1129(a)(8) ........................21

11. The Committee's Plan Provides for Payment in Full of All Allowed Priority Claims — 11 U.S.C. § 1129(a)(9) ............................................................21

12. The Committee's Plan Has Been Accepted by at Least One Impaired Class That Is Entitled to Vote — 11 U.S.C. § 1129(a)(10) ...................................23

13. The Committee's Plan Is Feasible — 11 U.S.C. § 1129(a)(11) ...........................23

14. The Committee's Plan Provides for Full Payment of All Statutory Fees — 11 U.S.C. § 1129(a)(12) ........................................................................................24

15. 11 U.S.C. § 1129(a)(13) Through 11 U.S.C. § 1129(a)(16)  Are Inapplicable ..........................................................................................................24

V. CONCLUSION ..............................................................................................................25

WM01/ 7825969.1

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bank of Am. Nat'l. Trust & Savings Assn. v. 203 N. LaSalle St. P'ship.*,
526 U.S. 434 (1999)..........................................................................................19, 20

*Barnes v. Whelan (In re Barnes)*,
689 F.2d 193 (D.C. Cir. 1982) ..................................................................................7

*Gruen Mktg. Corp. v. Asia Commercial Co. (In re Jewelcor Inc.)*,
150 B.R. 580 (Bankr. M.D. Pa. 1992) .....................................................................13

*Hanson v. First Bank of South Dakota*,
828 F.2d 1310 (8th Cir. 1987) .................................................................................16

*Heartland Fed. Savs. & Loan Ass'n v. Brisco Enters., Ltd. II (In re Briscoe Enters. Ltd. II)*,
994 F.2d 1160 (5th Cir. 1993) *cert. denied*, 510 U.S. 992 (1993)............................5

*In re 11, 111 Inc.*,
117 B.R. 471 (Bankr. D. Minn. 1990) ........................................................................7

*In re Armstrong World Indus., Inc.*,
348 B.R. 136 (D. Del. 2006)....................................................................................23

*In re Century Glove, Inc.*,
No. Civ. A. 90-400, 1993 WL 239489 (D. Del. Feb. 10, 1993) .......................17, 20

*In re Continental Airlines*,
203 F.3d 203 (3d Cir. 2000)........................................................................6, 14, 15

*In re Drexel Burnham Lambert Group, Inc.*,
138 B.R. 723 (Bankr. S.D.N.Y. 1992) .......................................................................6

*In re Genesis Health Ventures, Inc.* (Bankr. D. Del. 2001)...........................................6

*In re Jersey City Med. Ctr.*,
817 F.2d 1055 (3d Cir. 1987)....................................................................................7

*In re Johns-Manville Corp.*,
68 B.R. 618 (Bankr. S.D.N.Y. 1986), *aff'd* .............................................................15

*In re Lakeside Global II, Ltd.*,
116 B.R. 499 (Bankr. S.D. Tex. 1989) .....................................................................24

*In re Madison Hotel Assoc.*,
  749 F.2d 410 (7th Cir. 1984) ...................................................................................16

*In re Master Mortg. Inv. Fund, Inc.*,
  16 B.R. 930 (Bankr. W.D. Mo. 1994) ........................................................................14

*In re Metromedia Fiber Network Inc.*,
  416 F.3d 136 (2d Cir. 2005) ........................................................................................15

*In re NII Holdings, Inc.*
  288 B.R. 356 (Bankr. D. Del. 2002) ...........................................................................17

*In re PPI Enters. (U.S.) Inc.*,
  228 B.R. 339 (Bankr. D. Del. 1998) .......................................................................16, 17

*In re PWS Holding Corp.*,
  228 F.3d 224 (3d Cir. 2000) ....................................................................................15, 16

*In re Resorts Int'l Inc.*,
  145 B.R. 412 (Bankr. D.N.J. 1990) .............................................................................15

*In re Toy & Sports Warehouse, Inc.*,
  37 B.R. 141 (Bankr. S.D.N.Y. 1984) ..........................................................................16

*In re Zenith Elecs. Corp.*,
  241 B.R. 92 (Bankr. D. Del. 1999) ..............................................................................14

*John Hancock Mutual Life Ins. Co. v. Route 37 Bus. Park Assocs. (In re Route 37 Bus.
  Park Assocs.)*,
  987 F.2d 154 (3d Cir. 1993) ...........................................................................................7

*Kane v. Johns-Manville Corp.*,
  843 F.2d 636 (2d Cir. 1988) .....................................................................................6, 15

*United States v. Reorganized C&I Fabricators, Inc.*,
  518 U.S. 213 (1996) ......................................................................................................19

**STATUTES**

11 U.S.C. § 105 ...............................................................................................................17

11 U.S.C. § 1102 ...............................................................................................................2

11 U.S.C. § 1107(a) ..........................................................................................................2

11 U.S.C. § 1108 ...............................................................................................................2

11 U.S.C. § 1122 ...........................................................................................................6, 7

WM01/ 7825969.1

11 U.S.C. § 1123 .................................................................................................................. 8

11 U.S.C. § 1123(a) ........................................................................................................ 8, 11

11 U.S.C. § 1123(a)(1) .......................................................................................................... 8

11 U.S.C. § 1123(a)(2) .......................................................................................................... 8

11 U.S.C. § 1123(a)(3) ....................................................................................................... 8, 9

11 U.S.C. § 1123(a)(4) .......................................................................................................... 9

11 U.S.C. § 1123(a)(5) ..................................................................................................... 9, 10

11 U.S.C. § 1123(a)(6) ........................................................................................................ 10

11 U.S.C. § 1123(a)(7) .................................................................................................... 10, 11

11 U.S.C. § 1123(a)(8) ........................................................................................................ 11

11 U.S.C. § 1123(b) ....................................................................................................... 11, 13

11 U.S.C. § 1123(b)(1) .................................................................................................... 11, 12

11 U.S.C. § 1123(b)(2) ........................................................................................................ 12

11 U.S.C. § 1123(b)(3) .................................................................................................... 12, 13

11 U.S.C. § 1123(b)(6) .................................................................................................... 13, 17

11 U.S.C. § 1125 ........................................................................................................... 15, 16

11 U.S.C. § 1126 ................................................................................................................ 15

11 U.S.C. § 1128 ................................................................................................................ 24

11 U.S.C. § 1129(a) ......................................................................................................... 5, 6

11 U.S.C. § 1129(a)(1) ...................................................................................................... 6, 15

11 U.S.C. § 1129(a)(2) ..................................................................................................... 15, 16

11 U.S.C. § 1129(a)(3) ..................................................................................................... 16, 17

11 U.S.C. § 1129(a)(4) ........................................................................................................ 18

11 U.S.C. § 1129(a)(5) ........................................................................................................ 18

11 U.S.C. § 1129(a)(6) ........................................................................................................ 19

11 U.S.C. § 1129(a)(7)................................................................................................19

11 U.S.C. § 1129(a)(8)................................................................................................21

11 U.S.C. § 1129(a)(9).....................................................................................21, 22, 23

11 U.S.C. § 1129(a)(10)..............................................................................................23

11 U.S.C. § 1129(a)(11)..............................................................................................23

11 U.S.C. § 1129(a)(12)..............................................................................................24

11 U.S.C. § 1129(a)(14)..............................................................................................24

11 U.S.C. § 1129(a)(16)..............................................................................................24

11 U.S.C. § 1142........................................................................................................17

28 U.S.C. § 1334........................................................................................................13

28 U.S.C. § 1930........................................................................................................24

## RULES

Fed. R. Bankr. P. 3017..............................................................................................16

Fed. R. Bankr. P. 3018..............................................................................................16

Fed. R. Bankr. P. 3019..............................................................................................16

## OTHER AUTHORITIES

7 *Collier on Bankruptcy* ¶ 1123.01[6], at 1123-14 (15th ed. rev. 2007) .......................10

7 *Collier on Bankruptcy* ¶ 1129.03[2], at 1129-26 (15th ed. rev. 2007) .......................15

6 Queenan, *et al.*, *Chapter 11 Theory and Practice* ...................................................13

H.R. Rep. No. 95-595 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963 ....................6, 15

H.R. Rep. No. 95-989 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787 ..........................6

S. Rep. No. 95-589 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787..............................15

Securities Act of 1933................................................................................................4

WM01/ 7825969.1

## I.    PRELIMINARY STATEMENT

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), submits this Memorandum of Law in support of confirmation of the Second Amended Chapter 11 Plan of Reorganization Proposed by the Official Committee of Unsecured Creditors of MagnaChip Semiconductor Finance Company, *et al.* [Docket No. 295] (as may be amended, supplemented or otherwise modified from time to time, the "Committee's Plan").[1] This memorandum should be considered in connection with the Declaration of Dean Vomero (the "Vomero Declaration") that is being filed concurrently herewith and any evidence and testimony to be proffered at the confirmation hearing. As set forth in greater detail herein, the Committee's Plan satisfies the requirements for confirmation set forth in section 1129 of title 11 of the United States Code (the "Bankruptcy Code").

In the approximately four weeks since the filing of the Committee's Plan, through the focused efforts of the Creditors' Committee, along with the Backstop Purchaser (defined below), remarkable achievements have been accomplished. These efforts were aimed towards the goal of proposing a confirmable, and preferably consensual, plan of reorganization. These goals have been achieved. Indeed, these accomplishments include, obtaining the Debtors' support of the Committee's Plan, earning votes in favor of the Committee's Plan from all voting Classes, and obtaining the support of all parties in interest, as evidenced by the fact that no objections were filed. Accordingly, the Committee respectfully submits that the Committee's Plan should be confirmed.

## II.   STATEMENT OF FACTS

On June 12, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District

---

[1] All capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Committee's Plan.

of Delaware (the "Bankruptcy Court").  Since the Petition Date, the Debtors have continued to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Debtors' bankruptcy cases.  On June 24, 2009, the Office of the United States Trustee appointed the Committee pursuant to section 1102 of the Bankruptcy Code.

On June 29, 2009, the Debtors filed the Joint Chapter 11 Plan of Liquidation Proposed by MagnaChip Semiconductor Finance Company, et al. and UBS AG, Stamford Branch, As Creditor Agreement Agent and Priority Lien Collateral Agent (the "Debtors' Plan").  On the same date, the Debtors filed the Disclosure Statement in Respect of Joint Chapter 11 Plan of Liquidation Proposed by MagnaChip Semiconductor Finance Company, et al. and UBS AG, Stamford Branch, As Creditor Agreement Agent and Priority Lien Collateral Agent (the "Debtors' Disclosure Statement").  The Debtors' Plan provides for the satisfaction of claims against the Debtors and the enforcement of the First Lien Lender Secured Claims through (a) the authorization by the Debtors of the sale of substantially all of the assets of the Selling Non-Debtors, which are direct or indirect foreign subsidiaries of the Debtors, and (b) the sale of substantially all of the assets of Debtor MSA, certain assets of Debtor Luxco, and the assignment of certain non-disclosure agreements and other contracts hereto owned by LLC through the Debtors' Plan.  Pursuant to the terms of the Debtors' Plan, the sale proceeds, together with the Debtors' available cash as of the Effective Date, are to be used to satisfy claims, plan expenses and case expenses as provided under the Debtors' Plan.  On July 24, 2009, the Creditors' Committee filed an objection to the approval of the Debtors' Disclosure Statement based upon, among other things, the Creditors' Committee's belief that the total enterprise value of the Debtors' estate and the assets of the Selling Non-Debtors justifies a return to general unsecured creditors far in excess of that provided under the Debtors' Plan.  On July 31, 2009, the Bankruptcy Court entered an order approving the Debtors' Disclosure Statement but also indicated that it was prepared to terminate the Debtors' exclusive period to file a plan in order to

WM01/ 7825969.1

enable the Creditors' Committee to file a competing plan. On August 3, 2009, the Debtors' exclusive period in which to file a plan was terminated as to the Committee only.

On August 25, 2009, the Committee filed the Committee's Plan and Disclosure Statement in Respect of the Committee's Plan (the "Committee's Disclosure Statement"). On August 28, 2009, the Bankruptcy Court entered an order approving the Committee's Disclosure Statement. On August 31, 2009, the Bankruptcy Court entered the Order (I) Approving Voting Procedures With Respect to (A) The Joint Chapter 11 Plan of Liquidation of MagnaChip Semiconductor Finance Company, *et al.*, and UBS AG, Stamford Branch, As Credit Agreement Agent and Priority Lien Collateral Agent, and (B) The Chapter 11 Plan of Reorganization Proposed By The Official Committee of Unsecured Creditors of MagnaChip Semiconductor Finance Company, *et al.* and (II) Approving the Subscription Form for Purposes of the Offering (the "Voting Procedures Order"). Pursuant to the Voting Procedures Order, the Bankruptcy Court established (i) July 29, 2009 as the Voting Record Date, (ii) August 31, 2009 as the deadline by which to serve the Solicitation Packages, and (iii) September 21, 2009 at 4:00 p.m. as the Balloting Deadline. As required by the Voting Procedures Order, the Solicitation Packages were duly mailed to all known holders of Claims in the voting Classes. Likewise, the Notice of Entry of Orders Approving (I) Debtors' Disclosure Statement and Committee's Disclosure Statement (II) Hearing to Confirm Competing Plans; and (III) Related Important Dates were mailed to holders of Claims and Interests in the non-voting Classes. On September 11, 2009, the Committee filed the various documents comprising the Plan Supplement. In addition, on September 11, 2009, the Committee filed the Notice of (I) Amended Chapter 11 Plan of Reorganization Proposed by the Official Committee of Unsecured Creditors of MagnaChip Semiconductor Finance Company, *et al.* and (II) Amended Disclosure Statement in Respect of Chapter 11 Plan of Reorganization Proposed by the Official Committee of Unsecured Creditors of MagnaChip Semiconductor Finance Company, *et al.* On September 23, 2009, the Committee filed the Second Amended Chapter 11 Plan of Reorganization Proposed by the Official Committee of Unsecured Creditors of MagnaChip Semiconductor Finance Company, *et al.*

No objections to confirmation of the Committee's Plan were filed by the objection deadline.

## III.    SUMMARY OF THE COMMITTEE'S PLAN AND VOTING RESULTS

The Committee's Plan provides for the satisfaction of Claims against the Debtors through (a) the payment of Cash and the issuance of a New Term Loan in full and complete satisfaction of the First Lien Lender Claims, (b) the conversion of the Second Lien Noteholder Claims and Subordinated Note Claims to the Second Lien Noteholder Distribution and the Subordinated Note Distribution, respectively, (c) a rights offering for the issuance of New Common Units of the Reorganized Debtors (the "Offering"), and (d) cash payments to holders of General Unsecured Claims. Pursuant to the terms of the Offering, each Offering Participant that identifies itself as an accredited investor shall be entitled to receive Subscription Rights entitling such Offering Participant the right to subscribe for up to its Offering Pro Rata Share of New Common Units to be issued pursuant to the Offering. The Offering Amount shall be $35 million in aggregate New Common Units to be offered, (i) on a pro rata basis to each Eligible Holder of Second Lien Noteholder Claims and (ii) to the extent less than the full Offering Amount is issued to the Eligible Holders of Second Lien Noteholder Claim, to the Backstop Purchaser; provided, however, that the Backstop Purchaser shall receive the Minimum Allocation of the Offering Amount pursuant to the Offering; provided, further, that the Offering shall be subject to the New Common Units issued to the Backstop Purchaser for the Standby Commitment Fee and the Long-Term Incentive Plan. The Offering will only be made to accredited investors in a fashion that will be exempt from registration under the Securities Act of 1933.

Upon the Effective Date of the Committee's Plan, the liens of the First Lien Lender Parties and the Second Lien Noteholders shall be released and extinguished, and the Second Lien Guarantees in favor of the Second Lien Noteholders from the Non-Korean Guarantors and the Subordinated Note Guarantees in favor of the Holders of the Subordinated Note Claims shall be released; provided, however, that the Liens securing the First Lien Lender Secured Claims shall

remain in effect for the sole purpose of securing the New Term Loan. In addition, the Korean Guarantee shall be released as of the Effective Date.

The deadline for submitting ballots to accept or reject the Committee's Plan was September 21, 2009 at 4:00 p.m. As set forth in the Declaration of Brian Osborne of Omni Management Group Certifying the Ballots Accepting or Rejecting the Chapter 11 Plan of Reorganization Proposed by the Official Committee of Unsecured Creditors of MagnaChip Semiconductor Finance Company, *et al.* (the "Osborne Declaration"), all Classes entitled to vote on the Committee's Plan have voted to accept the Committee's Plan.

## IV.    ARGUMENT

For the Committee's Plan to be confirmed, the Court must determine that the Committee's Plan satisfies the applicable requirements of section 1129 of the Bankruptcy Code. The Committee submits that the Committee's Plan should be confirmed because it satisfies the requirements of section 1129 of the Bankruptcy Code.

## A.    The Committee's Plan Satisfies the Requirements for Confirmation Under 11 U.S.C. § 1129(a)

Section 1129 of the Bankruptcy Code governs confirmation of a plan of reorganization or liquidation and sets forth the requirements that must be satisfied in order for a plan to be confirmed. As the proponent of the Committee's Plan, the Committee bears the burden of establishing that all elements necessary for confirmation of the Committee's Plan under section 1129(a) of the Bankruptcy Code have been met by a preponderance of the evidence. *Heartland Fed. Savs. & Loan Ass'n v. Brisco Enters., Ltd. II (In re Briscoe Enters. Ltd. II)*, 994 F.2d 1160, 1165 (5th Cir. 1993) *cert. denied*, 510 U.S. 992 (1993).

As addressed in detail below, the Committee's Plan satisfies all of the applicable requirements of section 1129(a) of the Bankruptcy Code.

WM01/ 7825969.1

1.    **A Plan Proponent Must Show Compliance With the Provisions of the Bankruptcy Code by a Preponderance of the Evidence**

As demonstrated below, the Committee has satisfied its burden to prove by a preponderance of the evidence that the Committee's Plan complies with the applicable provisions of the Bankruptcy Code and, accordingly, the Committee's Plan should be confirmed.

2.    **The Committee's Plan Meets All of the Requirements for Confirmation Under 11 U.S.C. § 1129**

As set forth more fully below, the Committee's Plan should be confirmed because it satisfies each of the requirements of section 1129(a) of the Bankruptcy Code.

3.    **The Committee's Plan Satisfies the Requirements of 11 U.S.C. § 1129(a)(1)**

Section 1129(a)(1) of the Bankruptcy Code requires that "a plan comply with the applicable provisions of this title." 11 U.S.C. § 1129(a)(1). Section 1129(a)(1) has been interpreted by the courts as requiring that a plan comply with sections 1122 (governing classification of claims) and 1123 (governing the contents of a plan). *See In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 723, 757 (Bankr. S.D.N.Y. 1992) ("The legislative history of § 1129(a)(1) explains that this provision embodies the requirements of §§ 1122 and 1123, respectively, governing classification of claims and the contents of the Plan."); *see also Kane v. Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988) (noting that it is "doubtful that violations of [Bankruptcy] Code provisions unrelated to the form and content of a plan, such as voting procedures, implicate subsection 1129(a)(1) at all"), *distinguished on other grounds by In re Continental Airlines*, 203 F.3d 203 (3d Cir. 2000) *and In re Genesis Health Ventures, Inc.* (Bankr. D. Del. 2001); H.R. Rep. No. 95-989, at 126 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5912 ("Paragraph (1) [of 1129(a)] requires that the plan comply with the applicable provisions of Chapter 11, such as §§ 1122 and 1123, governing classification and contents of [a] plan."); H.R. Rep. No. 95-595, at 412 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6368 (same).

**The Committee's Plan Satisfies the Classification Requirements of 11 U.S.C. § 1122**

Section 1122 of the Bankruptcy Code governs the classification of claims under a plan. This section authorizes multiple classes of claims or interests as long as each claim or interest within a class is substantially similar to the other claims and interests in that class. Classification does not, however, require that all substantially similar claims or interests be placed in the same class. *See In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1060-61 (3d Cir. 1987) ("[W]e agree with the general view which permits the grouping of similar claims in different classes."); *Barnes v. Whelan (In re Barnes)*, 689 F.2d 193, 201 (D.C. Cir. 1982) (stating "[section 1122] does not require that similar groups must be grouped together, but merely that any group created must be homogenous."); *In re 11, 111 Inc.*, 117 B.R. 471, 476 (Bankr. D. Minn. 1990) ("[W]hile § 1122(a) requires that a given class in a plan of reorganization consist of substantially similar claims, all substantially similar claims need not be included in the same class."). Thus, provided there is a reasonable basis for the classification of claims, a plan proponent has significant flexibility in determining its classification structure. *See John Hancock Mutual Life Ins. Co. v. Route 37 Bus. Park Assocs. (In re Route 37 Bus. Park Assocs.)*, 987 F.2d 154, 157 (3d Cir. 1993); *Jersey City Med. Ctr.*, 817 F.2d at 1060-61.

Article IV(B) of the Committee's Plan classifies Claims and Interests into classes that are substantially similar to the other Claims or Interests within that Class as follows: (i) Class 1 (A-F) – Priority non-Tax Claims; (ii) Class 2 (A-F) – Other Secured Claims; (iii) Class 3 (A-F) – First Lien Lender Secured Claims; (iv) Class 4 (A-F) – Second Lien Noteholder Claims; (v) Class 5 (A-F) – General Unsecured Claims; (vi) Class 6 (A-F) – Subordinated Note Claims; (vii) Class 7 (A-F) – Intercompany Claims against the Debtors; and (viii) Class 8 – Interests in the Debtors. Accordingly, the Committee's Plan satisfies the Classification Requirements of 11 U.S.C. § 1122.

### b. The Committee's Plan Satisfies the Requirements of 11 U.S.C. § 1123

Section 1123 of the Bankruptcy Code sets forth the mandatory and permissive contents required for a plan.

#### i. 11 U.S.C. § 1123(a)

##### (1) Designation of Classes of Claims and Interests — 11 U.S.C. § 1123(a)(1)

Section 1123(a)(1) of the Bankruptcy Code requires that a plan designate classes of claims, other than claims of a kind specified in sections 507(a)(2), (3) or (8) of the Bankruptcy Code. Article IV of the Committee's Plan provides for the separate classification of Claims and Interests into eight Classes, based on differences in the legal nature or priority of such Claims and Interests (other than Administrative Expenses, Superpriority Claims and Tax Claims, which are addressed in Article II of the Committee's Plan, and which are required not to be designated as separate Classes pursuant to section 1123(a)(1) of the Bankruptcy Code). Valid business, factual, and legal reasons exist for the separate classification of the various Classes of Claims and Interests created under the Committee's Plan, the classifications were not done for any improper purpose, and the creation of such Classes does not unfairly discriminate between or among Holders of Claims or Interests. Therefore, the Committee's Plan complies with section 1123(a)(1) of the Bankruptcy Code.

##### (2) The Committee's Plan Specifies Unimpaired Classes — 11 U.S.C. § 1123(a)(2)

Section 1123(a)(2) of the Bankruptcy Code requires that a plan specify any class of claims or interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code. Article III of the Committee's Plan specifies that Administrative Expenses and Tax Claims are not classified under the Committee's Plan and are treated in accordance with the requirements of the Bankruptcy Code. Thus, the Committee's Plan complies with section 1123(a)(2) of the Bankruptcy Code.

WM01/ 7825969.1

### (3) The Committee's Plan Adequately Specifies the Treatment of Impaired Classes — 11 U.S.C. § 1123(a)(3)

Section 1123(a)(3) of the Bankruptcy Code requires that a plan specify the treatment of any class of claims or interests that is impaired within the meaning of section 1124 of the Bankruptcy Code. Article IV of the Committee's Plan specifies the treatment of each Impaired Class under the Committee's Plan, including Classes 1 (A-F), 2 (A-F), 3 (A-F), 4 (A-F), 5 (A-F), 6 (A-F), 7 (A-F) and 8 (A-F). Therefore, the requirements of section 1123(a)(3) of the Bankruptcy Code have been met.

### (4) The Committee's Plan Provides for the Same Treatment for Claims or Interests Within the Same Class — 11 U.S.C. § 1123(a)(4)

Section 1123(a)(4) of the Bankruptcy Code requires that a plan provide "the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." 11 U.S.C. § 1123(a)(4). Article IV of the Committee's Plan uniformly provides for the same treatment of each Claim or Interest in a particular Class, as the case may be, unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest. Accordingly, the Committee's Plan complies with section 1123(a)(4) of the Bankruptcy Code.

### (5) The Committee's Plan Provides Adequate Means for its Implementation — 11 U.S.C. § 1123(a)(5)

Section 1123(a)(5) of the Bankruptcy Code requires that a plan of reorganization or liquidation "provide adequate means for the plan's implementation," and sets forth several examples of such means, including retention by the debtor of property of the estate, sales of the debtor's property, amending the debtor's charter or issuing securities of the debtor in exchange for claims or interests. 11 U.S.C. § 1123(a)(5). Article VI and various other provisions of the Committee's Plan specifically provide in detail adequate and proper means for the Committee's Plan's implementation, including: (a) the Restructuring Transactions; (b) the release of Second Liens, Second Lien Guarantees, and Subordinate Note Guarantees; (c) the Offering; (d) the

amendment of the certificates of incorporation, charter, and bylaws of the Debtors as required to be consistent with the provisions of the Committee's Plan and the Bankruptcy Code; (e) the cancellation of the Interests on account of LLC; (f) the authorization for the Reorganized Debtors' entry into the New Term Loan and the execution of related documents; (g) the authorization and issuance or distribution of the New Common Units and the execution of related documents; and (h) the payment of the Committee's Plan's expenses. Moreover, the Reorganized Debtors will have, immediately upon the Effective Date, sufficient Cash to make all payments required to be made on the Effective Date pursuant to the terms of the Committee's Plan. As a result thereof, the requirements of section 1123(a)(5) of the Bankruptcy Code have been satisfied.

> **(6)** **The Committee's Plan Provides That the Debtors Will Prohibit the Issuance of Nonvoting Equity Securities — 11 U.S.C. § 1123(a)(6)**

Section 1123(a)(6) of the Bankruptcy Code requires that a plan of reorganization or liquidation provide for the inclusion in a debtor's corporate charter of provisions prohibiting the issuance of nonvoting equity securities, and arranging "an appropriate distribution" of power among the classes of securities possessing voting power. This provision requires that a debtor's securities be distributed "so that allocation of voting power — i.e., the control of the company — properly recognizes the respective position of the claimants and stockholders according to their rank and rights they surrender." *See* 7 *Collier on Bankruptcy* ¶ 1123.01[6], at 1123-14 (15th ed. rev. 2007). This provision ensures that "creditors who are forced to take stock in the new company, or whose rights as creditors are modified or altered so that they assume some risk of the success of a reorganized corporation are entitled to an allocation of voting power and a voice in the selection of management that will protect their interests." *Id*. at 1123-15. Article VI(A)(3) of the Committee's Plan provides that the certificate of incorporation of the Reorganized Debtors will prohibit the issuance of non-voting equity securities. Accordingly, the Committee's Plan complies with section 1123(a)(6) of the Bankruptcy Code.

WM01/ 7825969.1

### (7) The Committee's Plan Contains Appropriate Provisions with Respect to the Selection of Post-Confirmation Directors and Officers — 11 U.S.C. § 1123(a)(7)

Section 1123(a)(7) of the Bankruptcy Code provides that a plan may "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director or trustee under the plan and any successor to such officer, director or trustee." 11 U.S.C. § 1123(a)(7).

The Plan Supplement describes the manner of selection of directors and officers of the Reorganized Debtors. In addition, the identities and affiliations of any and all persons proposed to serve as a director or officer were disclosed in filings with the Bankruptcy Court prior to Confirmation, and such filings complied with applicable law. The selection of the initial directors and officers of the Reorganized Debtors was consistent with the interests of Holders of Claims and Interests and public policy. As a result, the requirements of section 1123(a)(7) of the Bankruptcy Code have been satisfied.

### (8) Section 1123(a)(8) of the Bankruptcy Code is Not Implicated by the Committee's Plan — 11 U.S.C. § 1123(a)(8)

Section 1123(a)(8) of the Bankruptcy Code states that a plan that is filed in a case in which the debtor is an individual must "provide for the payment to creditors under the plan of all or such portion of earnings from personal services performed by the debtor after the commencement of the case or other future income of the debtor as is necessary for the execution of the plan." 11 U.S.C. § 1123(a)(8). None of the Debtors are individuals. Having no applicability to the Committee's Plan, it follows that the requirements of section 1123(a)(8) of the Bankruptcy Code have been met.

As set forth above, the Committee's Plan satisfies the applicable mandatory plan requirements contained in section 1123(a) of the Bankruptcy Code.

Section 1123(b)(1) of the Bankruptcy Code sets forth the permissive provisions that may be incorporated in a chapter 11 plan, including any "provision not inconsistent with the applicable provisions of the Bankruptcy Code." 11 U.S.C. § 1123(b). Each provision of the Committee's Plan is consistent with section 1123(b) of the Bankruptcy Code.

Section 1123(b)(1) of the Bankruptcy Code provides that a plan may impair or leave unimpaired any class of claims, secured or unsecured, or of interests. The Committee's Plan specifies that all Classes of Claims and Interests are Impaired or unimpaired, as the case may be, and is therefore consistent with section 1123(b)(1) of the Bankruptcy Code.

Section 1123(b)(2) of the Bankruptcy Code allows a plan to provide for the assumption, assumption and assignment or rejection of executory contracts and unexpired leases pursuant to section 365 of the Bankruptcy Code. Article VII of the Committee's Plan provides that, except for any executory contracts or unexpired leases: (i) that are listed as Rejected Contracts in the Plan Supplement (ii) that previously were assumed or rejected by an order of the Bankruptcy Court, pursuant to section 365 of the Bankruptcy Code; (iii) as to which a motion for approval of the assumption or rejection of such contracts or leases has been filed and served prior to Confirmation; or (iv) that constitute contracts of insurance in favor of, or that benefit, the Debtors or the Estates, each executory contract and unexpired lease entered into by the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed assumed pursuant to section 365 of the Bankruptcy Code as of the Effective Date. The Committee's Plan further provides that on the Effective Date, the Debtors shall pay any cure costs associated with any assumed contracts owned by the Debtors (i.e., claims of non-Debtor contract parties against the Debtors for monetary damages for breaches of such assumed contracts) from the Cash of the Reorganized Debtors. These provisions of the Committee's Plan are permitted by section 1123(b)(2) of the Bankruptcy Code.

Section 1123(b)(3) of the Bankruptcy Code provides that a plan may provide for the settlement or adjustment of any claim or interest belonging to the debtor or the estate or retention

-12-

and enforcement by a debtor of certain claims or interests. Article IX(D) of the Committee's Plan provides that, the Reorganized Debtors will retain and may exclusively enforce any Retained Rights of Action and the Confirmation Order shall be deemed a *res judicata* determination of such rights to retain and exclusively enforce such Retained Rights of Action. This provision of the Committee's Plan is permitted by section 1123(b)(3) of the Bankruptcy Code.

Section 1123(b)(6) of the Bankruptcy Code provides that a plan may include any other provision that is not inconsistent with the applicable provisions of the Bankruptcy Code. In accordance with section 1123(b)(6) of the Bankruptcy Code, the Committee's Plan provides for the retention of the jurisdiction of the Bankruptcy Court, and contains certain, injunction, exculpation and release provisions that are consistent with the applicable provisions of the Bankruptcy Code.

### (1) The Retention of the Court's Jurisdiction Is Permitted by 11 U.S.C. § 1123(b)

The post-confirmation retention of jurisdiction by the Bankruptcy Court is permitted by the Bankruptcy Code:

> Section 1141 [of the Bankruptcy Code], which deals with the consequences of confirmation, says nothing about reducing the court's jurisdiction. The court therefore retains jurisdiction under its general statutory grants of jurisdiction to the extent those grants remain relevant post confirmation.

6 Queenan, *et al.*, *Chapter 11 Theory and Practice*, A Guide to Reorganization, § 32-04, at 32:6 (1994).

Case law also establishes that the court may retain jurisdiction over the debtor or the property of the estate following confirmation. *Gruen Mktg. Corp. v. Asia Commercial Co. (In re Jewelcor Inc.)*, 150 B.R. 580, 582 (Bankr. M.D. Pa. 1992) ("There is no doubt that the bankruptcy court's jurisdiction continues post confirmation to protect its confirmation decree, to

prevent interference with the execution of the plan and to aid otherwise in its operation.") (citations omitted).

Under Article XIV of the Committee's Plan, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Cases and any of the proceedings related to the Chapter 11 Cases pursuant to section 1142 of the Bankruptcy Code and 28 U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy Code and other applicable law, including, without limitation, such jurisdiction as is necessary to ensure that the purpose and intent of the Committee's Plan are carried out. All of the matters outlined in Article XIV of the Committee's Plan are matters over which the Bankruptcy Court otherwise would have jurisdiction during the pendency of these chapter 11 cases. The continuing jurisdiction of the Bankruptcy Court, as provided in Article XIV of the Committee's Plan, is appropriate, necessary and wholly consistent with applicable law.

### (2)     The Other Permissive Provisions in the Committee's Plan Are Reasonable and Appropriate

The injunction, exculpation and release provisions contained in Article X of the Committee's Plan are consistent with precedent in this District. *See In re Continental Airlines*, 203 F.3d 203, 214 (3d Cir. 2000) (noting that the hallmarks of permissible non-consensual releases are fairness, necessity to the reorganization, and specific factual findings); *In re Master Mortg. Inv. Fund, Inc.*, 16 B.R. 930, 934 (Bankr. W.D. Mo. 1994) (noting that while an injunction or release may not be warranted in all cases, a per se rule prohibiting injunctions and releases is similarly unwarranted, if not a misreading of the Bankruptcy Code). The Committee believes that the Court has the power to issue an injunction protecting the Non-Debtor Subsidiaries. Indeed, the Debtors *support* the Committee's Plan. Creditors voted *in favor of* and *accepted* the Committee's Plan, which expressly includes the injunction. Further, the injunction is warranted based upon the following unique facts and circumstances: (1) the identity of interests between the Debtors and the Non-Debtor Subsidiaries (especially MSK), such that a suit against the Non-Debtor Subsidiaries is, in essence, a suit against the Debtors or will deplete

assets of the estate; (2) the substantial contribution by the Non-Debtor Subsidiaries (especially MSK) of assets to the reorganization of the Debtors in these bankruptcy proceedings; (3) the essential nature of the injunction to the reorganization to the extent that, without the injunction, there is little likelihood of success; and (4) the substantial support of creditor groups for the Committee's Plan. *See In re Zenith Elecs. Corp.*, 241 B.R. 92, 110 (Bankr. D. Del. 1999). Moreover, the Committee believes that the unusual circumstances here render the injunction important and necessary to the success of the Committee's Plan. *See In re Metromedia Fiber Network Inc.*, 416 F.3d 136, 143 (2d Cir. 2005); *Gillman v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203, 214 (3d Cir. 2000). In sum, this is an uncontested plan.

In addition, the exculpation provisions of Article X(B)(3) of the Committee's Plan are consistent with precedent in this District. *In re PWS Holding Corp.*, 228 F.3d 224, 247 (3d Cir. 2000) (approving exculpation clause containing a carve-out for willful misconduct and gross negligence).

### 4. The Committee, as the Proponent of the Committee's Plan, Has Complied with 11 U.S.C. § 1129(a)(2)

Section 1129(a)(2) of the Bankruptcy Code requires that the proponent of a plan comply "with the applicable provisions of this title." 11 U.S.C. § 1129(a)(2). Whereas section 1129(a)(1) of the Bankruptcy Code focuses on the form and content of a plan itself, section 1129(a)(2) is concerned with the applicable activities of a plan proponent under the Bankruptcy Code. *See 7 Collier on Bankruptcy* ¶ 1129.03[2], at 1129-26 (15th ed. rev. 2007). In determining whether a plan proponent has complied with this section, courts focus on whether the disclosure and solicitation requirements of sections 1125 and 1126 of the Bankruptcy Code have been adhered to. *See In re PWS Holding Corp.*, 228 F.3d. at 248; *In re Resorts Int'l Inc.*, 145 B.R. 412, 468 (Bankr. D.N.J. 1990) (applying section 1129(a)(2) only to disclosure requirements of Bankruptcy Code); *In re Johns-Manville Corp.*, 68 B.R. 618, 630 (Bankr. S.D.N.Y. 1986) ("Objections to confirmation raised under § 1129(a)(2) generally involve the alleged failure of the plan proponent to comply with § 1125 and § 1126 of the Code."), *aff'd in part, rev'd in part on other*

*grounds*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd sub nom. Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988); *see also* S. Rep. No. 95-589, at 126 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5912 (Section 1129(a)(2) "requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure"); H.R. Rep. No. 95-595, at 412 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6368 (same).

The Committee, as the proponent of the Committee's Plan, has complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1123, 1125, and 1126 of the Bankruptcy Code and Bankruptcy Rules 3017, 3018, and 3019. The Committee and the Debtors and their respective present and former members, advisors, attorneys, and agents did not solicit the acceptance or rejection of the Committee's Plan by any Holders of Claims or Interests prior to the approval and transmission of the Committee's Disclosure Statement. Votes to accept or reject the Committee's Plan were only solicited by the Committee and its agents after disclosure to Holders of Claims or Interests of adequate information as defined in section 1125(a) of the Bankruptcy Code. As such, the Committee and its professionals have acted in good faith in all respects in this process. The Committee, therefore, submits that it has complied with the provisions of section 1129(a)(2).

### 5. The Committee's Plan Has Been Proposed in Good Faith and Not by Any Means Forbidden by Law — 11 U.S.C. § 1129(a)(3)

Section 1129(a)(3) of the Bankruptcy Code requires a plan proponent to propose a plan "in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). In determining good faith under section 1129(a)(3), courts address whether the proposed plan is consistent with the objectives of the Bankruptcy Code. *See In re PWS Holding Corp.*, 228 F.3d at 242 ("[F]or purposes of determining good faith under section 1129(a)(3) … the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code"); *In re Madison Hotel Assoc.*, 749 F.2d 410, 425 (7th Cir. 1984) ("the important point of inquiry is the plan itself and whether such plan will fairly achieve

a result consistent with the objectives and purposes of the Bankruptcy Code"); *Hanson v. First Bank of South Dakota*, 828 F.2d 1310, 1315 (8th Cir. 1987) (finding that a plan will be considered to have been proposed in good faith "if there is a reasonable likelihood that the plan will achieve a result consistent with the standards prescribed under the Bankruptcy Code"); *In re PPI Enters. (U.S.) Inc.*, 228 B.R. 339, 347 (Bankr. D. Del. 1998) (same); *In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984) (same). Good faith is to be viewed in light of the particular facts and the circumstances of the case. *See In re NII Holdings, Inc.* 288 B.R. 356, 362 (Bankr. D. Del. 2002) (examining the totality of the circumstances surrounding the formulation of a plan to determine good faith); *In re PPI Enterprises*, 228 B.R. at 347 (describing the good faith test as "testing only whether the debtor's conduct in formulating, proposing, and confirming a plan displays the requisite honesty of intention."); *In re Century Glove, Inc.*, No. Civ. A. 90-400, 1993 WL 239489, at *4 (D. Del. Feb. 10, 1993) ("requirement of good faith must be viewed in light of the totality of circumstances surrounding the establishment of a [c]hapter 11 plan").

The Committee has met the good faith obligation imposed upon it under the Bankruptcy Code. Consistent with the purpose of chapter 11 of the Bankruptcy Code, the Committee's Plan is designed to fairly and efficiently reorganize the Debtors' operations in a manner that will allow these cases to be promptly resolved, while providing for recoveries to all creditors that substantially exceed the recoveries to creditors proposed under the Debtors' Plan. The Committee's Plan was developed, negotiated and is being proposed in good faith. Upon termination of the Debtors' exclusivity periods by the Bankruptcy Court on August 3, 2009, Mesirow diligently pursued many plan alternatives with potential lenders, investors and purchasers. The transaction with the Backstop Purchaser incorporated in the Plan was the best alternative available to the Debtors estates under the circumstances. Also, the Committee's Plan and the process leading to its formulation, including diligently pursued negotiations with the Agent and the Debtors, provide additional, independent evidence of the Committee's good faith. Further, the Committee's Plan's exculpation, release and injunction provisions have been

-17-

negotiated in good faith and are consistent with sections 105, 1123(b)(6), 1129 and 1142 of the Bankruptcy Code and applicable law. The Committee has, therefore, fulfilled its obligations under section 1129(a)(3) of the Bankruptcy Code.

### 6. The Committee's Plan Provides for Court Approval of Payment for Services and Expenses — 11 U.S.C. § 1129(a)(4)

Section 1129(a)(4) of the Bankruptcy Code provides that "any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable." 11 U.S.C. § 1129(a)(4). The procedures set forth in the Committee's Plan for the Bankruptcy Court's review and ultimate determination of the fees and expenses to be paid by the Debtors in connection with the Chapter 11 Cases, or in connection with the Committee's Plan and incident to the Chapter 11 Cases, satisfy the objectives of and are in compliance with section 1129(a)(4) of the Bankruptcy Code.

### 7. Section 1129(a)(5) Has Been Satisfied Because All Necessary Information Regarding Directors and Officers of the Debtors Under the Committee's Plan Has Been Disclosed — 11 U.S.C. § 1129(a)(5)

Sections 1129(a)(5)(A)(i) and (ii) of the Bankruptcy Code require that a plan proponent disclose the "identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer or voting trustee of the debtor," and requires a finding that "the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy." 11 U.S.C. §§ 1129(a)(5)(A)(i), (ii). Section 1129(a)(5)(B) of the Bankruptcy Code further requires that a plan proponent disclose the "identities of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider." 11 U.S.C. § 1129(a)(5)(B).

The Committee's Plan complies with the requirements of section 1129(a)(5) of the Bankruptcy Code because the Creditors' Committee has disclosed (a) the identity and affiliations of each proposed director and officer of the Reorganized Debtors following Confirmation and (b)

-18-

the identity of and nature of any compensation for any insider who will be employed or retained by the Reorganized Debtors. The method of appointment of directors and officers was consistent with the interests of Holders of Claims and Interests and public policy.

**8.    The Committee's Plan Does Not Contain Rate Changes Subject to the Jurisdiction of Any Governmental Regulatory Commission — 11 U.S.C. § 1129(a)(6)**

Section 1129(a)(6) of the Bankruptcy Code requires that any regulatory commission having jurisdiction over the rates charged by a debtor in the operation of its business approve any rate change provided for in the plan. The Committee's Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and will not require governmental regulatory approval, therefore section 1129(a)(6) of the Bankruptcy Code is satisfied.

**9.    The Committee's Plan Is in the Best Interests of Creditors and Equity Interest Holders — 11 U.S.C. § 1129(a)(7)**

Section 1129(a)(7) of the Bankruptcy Code codifies what is generally referred to as the "best interests of creditors test." Section 1129(a)(7) provides:

With respect to each impaired class of claims or interests-

(A)    each holder of a claim or interest of such class-

(i)    has accepted the plan; or

(ii)    will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date.

11 U.S.C. § 1129(a)(7).

The "best interests" test focuses on individual dissenting creditors, rather than classes of claims. *See Bank of Am. Nat'l. Trust & Savings Assn. v. 203 N. LaSalle St. P'ship.*, 526 U.S. 434, 442 & n. 13 (1999); *Leslie Fay*, 207 B.R. at 787. The best interest analysis requires that each holder of a claim or interest either accept the plan or receive or retain property having a

present value under the Plan, as of the effective date of the plan, not less that the amount such holder would receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code. *See id.*; *United States v. Reorganized C&I Fabricators, Inc.*, 518 U.S. 213, 228 (1996). Accordingly, if the Court finds that each nonconsenting member of an impaired class will receive at least as much under the Committee's Plan as it would receive in a chapter 7 liquidation, the Committee's Plan satisfies the best interests of creditors test. *See Bank of Am. Nat'l. Trust,* 526 U.S. at 441 n.13; *In re Century Glove, Inc.*, 1993 WL 239489 (Bankr. D. Del. 1993). Here, all creditors will receive substantially more under the Committee's Plan than they would receive in a chapter 7 liquidation.

The Committee submits that the "best interests of creditors" test is satisfied as to all Classes. At the time the Committee's Disclosure Statement was mailed to creditors, the liquidation analysis attached thereto as Exhibit B (the "Liquidation Analysis") set forth assumptions and judgments that formed the basis of the analysis, and reflected the considered opinions of the Committee and its advisors, that no creditor would receive more in a liquidation under chapter 7 of the Bankruptcy Code than they would under the Committee's Plan. A copy of the Liquidation Analysis is also attached to the Vomero Declaration as Exhibit A.

The evidence in this case mandates the conclusion that all Impaired Classes of creditors will receive at least as much under the Committee's Plan on account of their Claims than they would in a chapter 7 liquidation of the Debtors. The Debtors' assets are secured by the liens of the Lenders. The Committee's Plan provides greater recovery to the Holders of Allowed Claims than such Holders would receive under a liquidation under chapter 7 because (i) the Debtors' operations are worth more as a going concern than in a distressed sale, (ii) the Committee's Plan avoids a layer of administrative expense associated with the appointment of a chapter 7 trustee, while increasing the efficiency of administering the Debtors' assets for the benefit of Creditors.

Moreover, in a chapter 7 case, the chapter 7 trustee would also be entitled to seek a sliding scale commission based upon the funds distributed by such trustee, even if the Debtors have already accumulated much of the funds and have already incurred many of the expenses

associated with generating those funds. Accordingly, the Committee believes that there is a reasonable likelihood that Creditors would "pay again" for the funds accumulated by the Debtors, since the chapter 7 trustee would be entitled to receive a commission in some amount for all funds distributed, including possibly substantial funds handed over to the chapter 7 trustee by the Debtors. It is also anticipated that a chapter 7 liquidation would result in delay in distributions to Creditors. Among other things, a chapter 7 case would trigger a new bar date for filing Claims that would be more than ninety days following conversion of the case to chapter 7. Fed. R. Bank. P. 3002(c). Hence, a chapter 7 liquidation would not only delay distributions, but raise the prospect of additional Claims that were not asserted in the Chapter 11 Cases. Based on the foregoing, the Committee's Plan provides an opportunity to bring the greatest return to Creditors.

### 10. <u>Acceptance by All Impaired Classes — 11 U.S.C. § 1129(a)(8)</u>

Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests that is impaired under the plan accept the plan. Classes 1 through 6 are impaired and were entitled to vote. Classes 7 and 8 are impaired and are deemed to have rejected the Committee's Plan. As set forth in the Osborne Declaration, all Classes entitled to vote on the Committee's Plan have voted to accept the Committee's Plan.

### 11. <u>The Committee's Plan Provides for Payment in Full of All Allowed Priority Claims — 11 U.S.C. § 1129(a)(9)</u>

Section 1129(a)(9) of the Bankruptcy Code contains a number of requirements concerning the payment of priority claims. Section 1129(a)(9) requires that unless the holder of a particular priority claim agrees to a different treatment of such claim:

 a. holders of claims entitled to priority under Section 507(a)(2) or (3) must receive cash in the allowed amounts of such claims on the effective date of the plan;

 b. holders of claims entitled to priority under Section 507(a)(1), (4), (5), (6) or (7) must receive cash in the allowed amounts of such claims on the effective date of the plan or deferred

cash payments of a value, as of the effective date of the plan, equal to the allowed amounts of such claims; and

c.     holders of tax claims entitled to priority under Section 507(a)(8) must receive on account of such claims regular installment payments in cash, of a total value as of the effective date of the plan, equal to the allowed amount of such claim over a period ending not later five years after the date of the order of relief and in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan.

11 U.S.C. § 1129(a)(9).

The Plan meets the requirements of all three subsections of section 1129(a)(9). Pursuant to Article III(B) of the Committee's Plan, on the Effective Date, each Holder of an Allowed Administrative Expense will receive, in full satisfaction, settlement and release of such Allowed Administrative Expense, Cash equal to the full amount of such Allowed Administrative Expense, unless such Holder and any of the Debtors have mutually agreed in writing to other terms, or an order of the Bankruptcy Court provides for other terms; provided, however, that (a) requests for payment of all Administrative Expenses must be filed and served as described in Article XIV(B)(3) of the Committee's Plan, and (b) certain different and additional requirements shall apply to the Administrative Expenses that are Fee Claims as set forth in Article XIV(B)(2) of the Committee's Plan.

Likewise, Article IV(B)(1) of the Committee's Plan provides that the Holder of each Priority Non-Tax Claim shall receive, in full satisfaction, settlement and release of such Priority Non-Tax Claim, a Cash payment equal to the Allowed amount of such Claim on or as soon as practicable after the later of the Effective Date or the date upon which the Bankruptcy Court enters a Final Order determining or allowing such Claim. Any Holder of a Priority Non-Tax Claim may agree to accept different treatment as to which the Debtors and such Holder have agreed upon in writing.

Finally, consistent with section 1129(a)(9)(C) of the Bankruptcy Code, Article III(D) of the Committee's Plan provides that on or as soon as practicable after the Effective Date, each Holder of an Allowed Tax Claim against any of the Debtors will receive, at the sole option of the

-22-

Debtors or the Reorganized Debtors, (i) on the Effective Date, or as soon thereafter as is practicable, Cash in an amount equal to such Allowed Tax Claim or, (ii) commencing on the Effective Date, or as soon thereafter as is practicable, and continuing over a period not exceeding five (5) years from and after the Petition Date, equal semi-annual Cash payments in an aggregate amount equal to such Allowed Tax Claim, together with interest for the period after the Effective Date at the rate determined under applicable non-bankruptcy law as of the calendar month in which the Plan is confirmed, subject to the sole option of the Debtors or Reorganized Debtors to prepay the entire amount of the Allowed Tax Claim. Any Allowed Tax Claim (or portion thereof) not yet due and payable as of the Effective Date will be paid by the Reorganized Debtors in the ordinary course of business as such obligations become due. Any Holder of an Allowed Tax Claim may agree to accept different treatment as to which the Debtors and such Holder have agreed upon in writing.

Based on the foregoing, the Committee submits that the Committee's Plan treats all priority claims against the Debtors in accordance with the requirements of section 1129(a)(9) of the Bankruptcy Code.

### 12. The Committee's Plan Has Been Accepted by at Least One Impaired Class That Is Entitled to Vote — 11 U.S.C. § 1129(a)(10)

Section 1129(a)(10) of the Bankruptcy Code requires that if a class of claims is impaired under a plan, at least one class of impaired claims must have voted to accept the plan. As required by section 1129(a)(10) of the Bankruptcy Code, the Committee's Plan satisfies the requirement that at least one Class of Claims or Equity Interests that is impaired under the Committee's Plan accept the Committee's Plan, excluding votes cast by insiders. As set forth in the Osborne Declaration, all Classes entitled to vote on the Committee's Plan have voted to accept the Committee's Plan.

### 13. The Committee's Plan Is Feasible — 11 U.S.C. § 1129(a)(11)

Section 1129(a)(11) of the Bankruptcy Code provides that a plan of reorganization or liquidation may be confirmed only if "[c]onfirmation of the plan is not likely to be followed by

-23-

the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11). *See In re Armstrong World Indus., Inc.*, 348 B.R. 136, 167 (D. Del. 2006). This requirement, commonly known as the "feasibility" standard, usually encompasses two interrelated determinations: (i) the debtor's ability to consummate the provisions of the plan, and (ii) the debtor's ability to reorganize as a viable entity. *See In re Lakeside Global II, Ltd.*, 116 B.R. 499, 506 (Bankr. S.D. Tex. 1989) ("This definition [of feasibility] has been slightly broadened and contemplates whether [a] debtor can realistically carry out its Plan … and [b] whether the Plan offers a reasonable prospect of success and is workable").

As set forth more fully in the Vomero Declaration, the Committee's Plan is feasible based on the fact that the Debtors will have sufficient liquidity to conduct business operations and meet their financial obligations under the New Term Loan and pursuant to the Committee's Plan.

### 14. The Committee's Plan Provides for Full Payment of All Statutory Fees — 11 U.S.C. § 1129(a)(12)

Section 1129(a)(12) of the Bankruptcy Code requires that certain fees listed in 28 U.S.C. § 1930 be determined by the court at the confirmation hearing and be paid on the effective date of a plan. Article XIV(B) of the Committee's Plan provides that all fees payable pursuant to section 1930 of the United States Judicial Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first. Thus, the Committee's Plan complies with section 1129(a)(12) of the Bankruptcy Code.

### 15. 11 U.S.C. § 1129(a)(13) Through 11 U.S.C. § 1129(a)(16) Are Inapplicable

Based on the facts of these chapter 11 cases, section 1129(a)(13) through (16) of the Bankruptcy Code are not applicable to the Committee's Plan. Having no applicability to the

Committee's Plan, it follows that the requirements of section 1129(a)(13) through (16) of the Bankruptcy Code have been met.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, the Committee respectfully submits that the Court should enter an order (i) confirming the Committee's Plan and (ii) granting the Committee such other and further relief as is just and proper.

Dated: September 24, 2009

/s/  Howard A. Cohen
**DRINKER BIDDLE & REATH LLP**
Howard A. Cohen, Esq. (DE 4082)
1100 N. Market Street, Suite 1000
Wilmington, DE 19801-1254
Telephone: (302) 467-4200
Facsimile:  (302) 467-4201

- and -

**LOWENSTEIN SANDLER PC**
Kenneth A. Rosen, Esq.
John K. Sherwood, Esq.
Nicole Stefanelli, Esq.
65 Livingston Avenue
Roseland, New Jersey 07068
Telephone: (973) 597-2500
Facsimile:  (973) 597-2400

*Counsel to the Official Committee of*
*Unsecured Creditors*

-25-