IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MAGNACHIP SEMICONDUCTOR FINANCE | ) | Case No. 09-12008 (PJW) |
| COMPANY, et al.,[1] | ) | |
| | ) | |
| Debtors. | ) | Re : docket # 295 |

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER
CONFIRMING SECOND AMENDED CHAPTER 11 PLAN OF
REORGANIZATION PROPOSED BY THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF MAGNACHIP SEMICONDUCTOR FINANCE COMPANY, ET. AL.

The above captioned debtors and debtors in possession (collectively, the "Debtors")

having:[2]

a.  commenced chapter 11 cases (collectively, the "Chapter 11 Cases") by filing
    voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11
    U.S.C §§ 101-1532 (as amended, the "Bankruptcy Code") on June 12, 2009 (the
    "Petition Date");

b.  continued to operate their businesses and manage their property as debtors in
    possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c.  filed, on June 29, 2009, the *Joint Chapter 11 Plan of Liquidation Proposed by
    MagnaChip Semiconductor Finance Company Et Al. and UBS AG, Stamford Branch,
    as Credit Agreement Agent and Priority Lien Collateral Agent* and the *Disclosure

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, if
    applicable, and their respective addresses, are: MagnaChip Semiconductor Finance Company (4144), 787 N.
    Mary Avenue, Sunnyvale, CA 94085; MagnaChip Semiconductor LLC (5772), 787 N. Mary Avenue,
    Sunnyvale, CA 94085; MagnaChip Semiconductor SA Holdings LLC, 787 N. Mary Avenue, Sunnyvale, CA
    94085; MagnaChip Semiconductor, Inc. (8632), 787 N. Mary Avenue, Sunnyvale, CA 94085; MagnaChip
    Semiconductor S.A. (9734), 74 Rue de Merl, B.P. 709, L-2017 Luxembourg; and MagnaChip Semiconductor
    B.V. (9827), 1043 BW Amsterdam, Naritaweg 165, the Netherlands.

[2]  Unless otherwise noted, capitalized terms not defined in the *Findings of Fact, Conclusions of Law, and Order
    Confirming Amended Chapter 11 Plan of Reorganization Proposed by the Official Committee of Unsecured
    Creditors of MagnaChip Semiconductor Finance Company Et. Al.* (the "Confirmation Order"), shall have the
    meanings ascribed to them in *Chapter 11 Plan of Reorganization Proposed by the Official Committee of
    Unsecured Creditors of MagnaChip Semiconductor Finance Company Et. Al.* [Docket No. 246] (as the same
    may have been subsequently modified, supplemented, and amended). The rules of interpretation set forth in
    Article II of the Plan shall apply to the Confirmation Order.

*Statement in Respect of Joint Chapter 11 Plan of Liquidation Proposed by MagnaChip Semiconductor Finance Company Et Al. and UBS AG, Stamford Branch, as Credit Agreement Agent and Priority Lien Collateral Agent* [Docket No. 54];

d. distributed solicitation materials beginning on or about August 31, 2009, consistent with the Bankruptcy Code, the Bankruptcy Rules, the *Order Approving Disclosure Statement in Respect of Joint Chapter 11 Plan of Liquidation Proposed by MagnaChip Semiconductor Finance Company Et Al. and UBS AG, Stamford Branch, as Credit Agreement Agent and Priority Lien Collateral Agent* entered on July 31, 2009 [Docket No. 158] (the "Debtors' Disclosure Statement Order"), and the *Order (I) Approving Voting Procedures With Respect to (A) Joint Chapter 11 Plan of Liquidation Proposed by MagnaChip Semiconductor Finance Company Et Al. and UBS AG, Stamford Branch, as Credit Agreement Agent and Priority Lien Collateral Agent, and (B) Chapter 11 Plan of Reorganization Proposed by the Official Committee of Unsecured Creditors of MagnaChip Semiconductor Finance Company Et. Al. and (II) Approving the Subscription Form for Purposes of the Offering* entered on August 31, 2009 [Docket No. 249] (the "Solicitation Procedures Order"), as evidenced by the *Affidavit of Service of Omni Management Group LLC* [Docket Nos. 261, 305, 306 and 307];

e. filed, on September 24, 2009 a statement in support of the Committee's Plan (as defined below) [Docket No. 304];

The official committee of unsecured creditors (the "Creditors' Committee") having:

a. filed, on August 25, 2009, the *Chapter 11 Plan of Reorganization Proposed by the Official Committee of Unsecured Creditors of MagnaChip Semiconductor Finance Company Et. Al.* [Docket No. 212] (as the same may have been subsequently modified, supplemented, and amended, the "Committee's Plan"[3]) and the *Disclosure Statement in Respect of Chapter 11 Plan of Reorganization Proposed by the Official Committee of Unsecured Creditors of MagnaChip Semiconductor Finance Company Et. Al.* [Docket No. 212] (as the same may have been subsequently modified, supplemented, and amended, the "Committee's Disclosure Statement);

b. filed, on August 27, 2009, revised versions of the Committee's Plan [Docket No. 241] and Committee's Disclosure Statement [Docket No. 242];

c. filed, on August 31, 2009, the *Amended Chapter 11 Plan of Reorganization Proposed by the Official Committee of Unsecured Creditors of MagnaChip Semiconductor Finance Company Et. Al.* [Docket No. 246] and the *Amended Disclosure Statement in Respect of Chapter 11 Plan of Reorganization Proposed by the Official Committee of Unsecured Creditors of MagnaChip Semiconductor Finance Company Et. Al.* [Docket No. 247];

d. distributed solicitation materials beginning on or about August 31, 2009, consistent with the Bankruptcy Code, the Bankruptcy Rules, the *Order Approving Disclosure Statement in Respect of Chapter 11 Plan of Reorganization Proposed by the Official Committee of Unsecured Creditors of MagnaChip Semiconductor Finance Company Et. Al.* entered on August 28, 2009 [Docket No. 224] (the "Committee' Disclosure Statement Order"), and the Solicitation Procedures Order, as evidenced by the

---

[3] The Committee's Plan is attached as Exhibit A to this Order.

*Affidavits of Service of Omni Management Group LLC* [Docket Nos. 261, 262, 306 and 307];

e.  filed, on September 11, 2009, the various documents comprising the Plan Supplement [Docket No. 279];

f.  filed, on September 11, 2009, a notice of *Amended Chapter 11 Plan of Reorganization Proposed by the Official Committee of Unsecured Creditors of MagnaChip Semiconductor Finance Company Et. Al.* [Docket No. 277], which was served on the Holders of Second Lien Noteholder Claims, as evidenced by the *Affidavit of Service of Omni Management Group LLC* [Docket No. 293] and the Holders of First Lien Lender Secured Claims, as evidenced by the *Affidavit of Service of Omni Management Group LLC* [Docket No. 291];

g.  filed on September 23, 2009, the *Second Amended Chapter 11 Plan of Reorganization Proposed by the Official Committee of Unsecured Creditors of MagnaChip Semiconductor Finance Company Et. Al.* [Docket No. 295];

h.  filed, on [ ], 2009, the *Declaration of [ ] Regarding the Tabulation of Claims* [Docket No. / ], the ~~Certification of [ ] with respect to the Tabulation of Votes~~ ~~[Docket No. ], and the~~ *~~Affidavit of [ ] Regarding Votes Accepting or Rejecting the Plan~~* ~~[Docket No. ]~~ (collectively, the "Voting Certifications") each detailing the results of the Committee's Plan voting process;
    *[handwritten: 2009 Brian Osborne; September 24, 2009]*

i.  filed, on September 24, 2009, the *Memorandum of Law In Support of an Order Confirming the Second Amended Chapter 11 Plan of Reorganization Proposed by the Official Committee of Unsecured Creditors of MagnaChip Semiconductor Finance Company Et. Al.* [Docket No. 302] (the "Plan Confirmation Brief"), together with the *Affidavit of Dean Vomero in Support of Confirmation of the Amended Chapter 11 Plan of Reorganization Proposed by the Official Committee of Unsecured Creditors of MagnaChip Semiconductor Finance Company Et. Al.* [Docket No. 301] (the "Vomero Affidavit"); and

This Court having:

a.  entered the Committee's Disclosure Statement Order and the Solicitation Procedures Order on August 31, 2009;

b.  set September 25, 2009, at 10:00 a.m., prevailing Eastern Time, as the date and time for the commencement of the Confirmation Hearing pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

c.  reviewed the Committee's Plan, Committee's Disclosure Statement, the Plan Confirmation Brief, the Voting Certifications, and all filed pleadings, exhibits, statements, and comments regarding Confirmation, including all objections, statements, and reservations of rights;

d.  heard the statements, arguments, and objections, if any, made by counsel in respect of Confirmation;

e.  received no objection to confirmation of the Committee's Plan;

f.  considered that all classes entitled to vote voted in favor of the Committee's Plan;

g.  considered all oral representations, testimony, documents, filings, and other evidence regarding Confirmation; and

h.  taken judicial notice of the papers and pleadings filed in the Chapter 11 Cases.

NOW, THEREFORE, it appearing to the Bankruptcy Court that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation have been adequate and appropriate as to all parties affected or to be affected by the Committee's Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of Confirmation and presented at the Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefore, the Court hereby makes and issues the following Findings of Fact, Conclusions of Law, and Orders:

## I. <u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**A.** **<u>Jurisdiction and Venue.</u>**

1.      Beginning on the Petition Date, the Debtors commenced the Chapter 11 Cases. Venue in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") was proper as of the Petition Date pursuant to 28 U.S.C. §§1408 and 1409 and continues to be proper during the Chapter 11 Cases. The Bankruptcy Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Confirmation of the Committee's Plan is a core proceeding pursuant to section 157(b)(2)(L) of title 28 of the United States Code. The Bankruptcy Court has exclusive jurisdiction to determine whether the Committee's Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

**B.** **<u>Eligibility for Relief.</u>**

2.      The Debtors were and are entities eligible for relief under section 109 of the Bankruptcy Code.

8205962
DOCS_DE:153436.2

C.  **Commencement and Joint Administration of the Chapter 11 Cases.**

3.      Beginning on the Petition Date, each of the above-captioned Debtors commenced a case under chapter 11 of the Bankruptcy Code.  By prior order of the Bankruptcy Court, the Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015.  The Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Cases.

D.  **Judicial Notice.**

4.      The Bankruptcy Court takes judicial notice of (and deems admitted into evidence for Confirmation) the docket of the Chapter 11 Cases and all related adversary proceedings and appeals maintained by the clerk of the applicable court or its duly appointed agent, including all pleadings and other documents on file, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the applicable court during the pendency of the Chapter 11 Cases.  Any resolutions of objections to Confirmation explained on the record at the Confirmation Hearing are hereby incorporated by reference.  All unresolved objections, statements, and reservations of rights are overruled on the merits.

E.  **Burden of Proof.**

5.      The Creditors' Committee, as proponent of the Committee's Plan, has met its burden of proving the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for the Confirmation.  Further, the Creditors' Committee has proven the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by clear and convincing evidence.

## F.  Solicitation Procedures Order.

6.  On August 31, 2009, the Bankruptcy Court entered the Solicitation Procedures Order, which, among other things: (i) approved voting procedures with respect to (A) Joint Chapter 11 Plan of Liquidation Proposed by MagnaChip Semiconductor Finance Company Et Al. and UBS AG, Stamford Branch, as Credit Agreement Agent and Priority Lien Collateral Agent, and (B) Chapter 11 Plan of Reorganization Proposed by the Official Committee of Unsecured Creditors of MagnaChip Semiconductor Finance Company Et. Al.; (ii) approved the Subscription Form for purposes of the Offering; (b) fixed August 27, 2009, as the Voting Record Date (as defined in the Solicitation Procedures Order); (c) fixed September 21, 2009, as the Voting Deadline for voting to accept or reject the Committee's Plan; (d) fixed September 21, 2009, as the deadline for objecting to the Committee's Plan (which deadline was subsequently extended to September 23, 2009 by the Debtors and the Creditors' Committee); (e) fixed September 25, 2009, at 10:00 a.m. prevailing Eastern Time, as the date and time for the commencement of the Confirmation Hearing; and (e) approved the form and method of notice of the Confirmation Hearing Notice set forth therein.

## G.  Transmittal and Mailing of Materials; Notice.

7.  As evidenced by the Committee's Disclosure Statement Affidavit and the Voting Procedures Affidavit, due, adequate, and sufficient notice of the Committee's Disclosure Statement, Committee's Plan, Plan Supplement, and Confirmation Hearing, together with all deadlines for voting on or objecting to the Committee's Plan, has been given to all parties that requested notice in accordance with Bankruptcy Rule 2002.  Adequate and sufficient notice of the Confirmation Hearing, as continued from time to time, and other bar dates and hearings described in the Solicitation Procedures Order was given in compliance with the Bankruptcy Rules and Solicitation Procedures Order, and no other or further notice is or shall be required.

## H.   Solicitation.

8.    Votes for acceptance and rejection of the Committee's Plan were solicited in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Committee's Disclosure Statement, the Solicitation Procedures Order, all other applicable provisions of the Bankruptcy Code and all other applicable rules, laws, and regulations. Specifically, the solicitation materials approved by the Bankruptcy Court in the Committee's Disclosure Statement Order and the Solicitation Procedures Order (including the Committee's Disclosure Statement, Committee's Plan, Ballots, and Solicitation Procedures Order) were transmitted to and served on all Holders of Claims or Interests in Classes that were entitled to vote to accept or reject the Committee's Plan, as well as to other parties in interest in the Chapter 11 Cases, in compliance with section 1125 of the Bankruptcy Code, the Committee's Disclosure Statement Order, the Solicitation Procedures Order, and the Bankruptcy Rules. Such transmittal and service were adequate and sufficient, and no further notice is or shall be required. In addition, Holders of Claims or Interests in Classes that were not entitled to vote to accept or reject the Committee's Plan were provided with certain non-voting materials approved by the Bankruptcy Court in compliance with the Committee's Disclosure Statement Order and the Solicitation Procedures Order. All procedures used to distribute solicitation materials to Holders of Claims and Interests were fair, and conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and all other applicable rules, laws, and regulations.

## I.   Voting Certification.

9.    Prior to the Confirmation Hearing, the Debtors filed the Voting Certification. All procedures used to tabulate the Ballots and Master Ballots were fair and conducted in accordance

with the Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and all other applicable rules, laws, and regulations.

10. As evidenced by the Voting Certifications, Creditors in Classes 1 (A-F) ("Priority Non-Tax Claims"), 2 (A-F) ("Other Secured Claims"), 3 (A-F) ("First Lien Lender Secured Claims"), 4 (A-F) ("Second Lien Noteholder Claims"), 5 (A-F) ("General Unsecured Claims") and 6 (A-F) ("Subordinated Note Claims") voted to accept the Committee's Plan (collectively, the "Impaired Accepting Classes").

11. Creditors in Classes 7(A-F) ("Intercompany Claims against the Debtors") and 8 (A-F) ("Interests in the Debtors" and, together with Classes 7 (A-F), the "Rejecting Classes") are deemed to reject the Committee's Plan.

## J. Plan Supplement.

12. On September 11, 2009, the Creditors' Committee filed the Plan Supplement. The Plan Supplement complies with the terms of the Committee's Plan, and the filing and notice of such documents was good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Procedures Order, and no other or further notice is or shall be required. The Creditors' Committee is authorized to modify the Plan Supplement following entry of the Confirmation Order in accordance with the terms of the Committee's Plan.

## K. Modifications to the Plan.

13. Subsequent to solicitation, the Debtors made certain non-material modifications to the Committee's Plan. All modifications to the Committee's Plan since the entry of the Solicitation Procedures Order are consistent with all of the provisions of the Bankruptcy Code, including, but not limited to, sections 1122, 1123, 1125, and 1127 of the Bankruptcy Code, including, *inter alia*, the modification regarding the treatment of First Lien Secured Claims. Except as provided for by law, contract, or prior order of the Bankruptcy Court, none of the

modifications made since the commencement of solicitation adversely affects the treatment of any Holder of a Claim or Interest under the Committee's Plan. In addition, the Holders of First Lien Lender Secured Claims have consented to the modifications to their treatment under the Committee's Plan. Accordingly, pursuant to section 1127(a) of the Bankruptcy Code, none of the modifications require additional disclosure under section 1125 of the Bankruptcy Code or resolicitation of votes under section 1126 of the Bankruptcy Code.

14. Prior notice to the Holders of Second Lien Noteholder Claims regarding the substance of any modifications to the Committee's Plan, coupled with the filing with the Bankruptcy Court of the Committee's Plan as modified, and the disclosure of the Committee's Plan modifications on the record at the Confirmation Hearing constitute due and sufficient notice of any and all of such modifications.

15. In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims who voted to accept the Committee's Plan or who are conclusively presumed to have accepted the Committee's Plan are deemed to have accepted the Committee's Plan as modified by the Committee's Plan modifications. No Holder of a Claim or Interest shall be permitted to change its vote as a consequence of the Committee's Plan modifications. The modifications to the Committee's Plan are hereby approved, pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019. The Committee's Plan as modified shall constitute the Committee's Plan submitted for Confirmation. In addition, the Motion for Entry of Order Approving Technical Modifications to the Chapter 11 Plan of Reorganization Proposed by the Official Committee of Unsecured Creditors of MagnaChip Semiconductor Finance Company, *Et Al.* is hereby approved.

## L.   Bankruptcy Rule 3016.

16.   The Committee's Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Committee's Disclosure Statement with the clerk of the Bankruptcy Court satisfied Bankruptcy Rule 3016(b).

## M.   Compliance with the Requirements of Section 1129 of the Bankruptcy Code.

17.   The Committee's Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code as follows.

### 1.   Section 1129(a)(1)—Compliance of the Committee's Plan with Applicable Provisions of the Bankruptcy Code.

18.   The Committee's Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123.

#### (i)   Section 1122 and 1123(a)(1)—Proper Classification.

19.   The classification of Claims and Interests under the Committee's Plan is proper under the Bankruptcy Code. Pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article IV of the Committee's Plan provides for the separate classification of Claims and Interests into eight Classes, based on differences in the legal nature or priority of such Claims and Interests (other than Administrative Expenses, Superpriority Claims and Tax Claims, which are addressed in Article II of the Committee's Plan, and which are required not to be designated as separate Classes pursuant to section 1123(a)(1) of the Bankruptcy Code). Valid business, factual, and legal reasons exist for the separate classification of the various Classes of Claims and Interests created under the Committee's Plan, the classifications were not done for any improper purpose, and the creation of such Classes does not unfairly discriminate between or among Holders of Claims or Interests.

20.     As required by section 1122(a) of the Bankruptcy Code, each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class. As a result thereof, the requirements of sections 1122(a), 1122(b), and 1123(a)(1) of the Bankruptcy Code have been satisfied.

### (ii)     Section 1123(a)(2)—Specification of Unimpaired Classes.

21.     Article III of the Committee's Plan specifies that Administrative Expenses and Tax Claims are not classified under the Committee's Plan and are treated in accordance with the requirements of the Bankruptcy Code. As a result thereof, the requirements of section 1123(a)(2) of the Bankruptcy Code have been satisfied.

### (iii)     Section 1123(a)(3)—Specification of Treatment of Impaired Classes.

22.     Article IV of the Committee's Plan specifies the treatment of each Impaired Class under the Committee's Plan, including Classes 1 (A-F), 2 (A-F), 3 (A-F), 4 (A-F), 5 (A-F), 6 (A-F), 7 (A-F) and 8 (A-F). As a result thereof, the requirements of section 1123(a)(3) of the Bankruptcy Code have been satisfied.

### (iv)     Section 1123(a)(4)—No Discrimination.

23.     Pursuant to section 1123(a)(4) of the Bankruptcy Code, Article IV of the Committee's Plan uniformly provides for the same treatment of each Claim or Interest in a particular Class, as the case may be, unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest. As a result thereof, the requirements of section 1123(a)(4) of the Bankruptcy Code have been satisfied.

### (v)     Section 1123(a)(5)—Additional Plan Provisions.

24.     Pursuant to section 1123(a)(5) of the Bankruptcy Code, Article VI and various other provisions of the Committee's Plan specifically provide in detail adequate and proper means for the Committee's Plan's implementation, including: (a) the Restructuring Transactions;

(b) the release of Second Liens, Second Lien Guarantees, and Subordinate Note Guarantees; (c) the Offering; (d) the amendment of the certificates of incorporation, charter, and bylaws of the Debtors as required to be consistent with the provisions of the Committee's Plan and the Bankruptcy Code; (e) the cancellation of the Interests on account of LLC; (f) the authorization for the Reorganized Debtors' entry into the New Term Loan and the execution of related documents; (g) the authorization and issuance or distribution of the New Common Units and the execution of related documents; and (h) the payment of the Committee's Plan's expenses. Moreover, the Reorganized Debtors shall have, immediately upon the Effective Date, sufficient Cash to make all payments required to be made on the Effective Date pursuant to the terms of the Committee's Plan. As a result thereof, the requirements of section 1123(a)(5) of the Bankruptcy Code have been satisfied.

(vi)    **Section 1123(a)(6)—Voting Power of Equity Securities.**

25.    Article VI.A.3 of the Committee's Plan provides that the certificate of incorporation of the Reorganized Debtors shall prohibit the issuance of non-voting equity securities, thereby satisfying section 1123(a)(6) of the Bankruptcy Code.

(vii)    **Section 1123(a)(7)—Selection of Officers and Directors.**

26.    The Plan Supplement describes the manner of selection of directors and officers of the Reorganized Debtors. In addition, the identities and affiliations of any and all persons proposed to serve as a director or officer were disclosed in filings with the Bankruptcy Court prior to Confirmation, and such filings complied with applicable law. The selection of the initial directors and officers of the Reorganized Debtors was consistent with the interests of Holders of Claims and Interests and public policy. As a result, the requirements of section 1123(a)(7) of the Bankruptcy Code have been satisfied.

### (viii)    Section 1123(b)—Discretionary Contents of the Committee's Plan.

27.    The Committee's Plan contains various provisions that may be construed as discretionary, but are not required for Confirmation under the Bankruptcy Code. As set forth below, such discretionary provisions comply with section 1123(b) of the Bankruptcy Code and are not inconsistent in any way with the applicable provisions of the Bankruptcy Code. Thus, section 1123(b) of the Bankruptcy Code is satisfied.

### (a)    Section 1123(b)(1)-(2)—Claims and Executory Contracts.

28.    Pursuant to sections 1123(b)(1) and 1123(b)(2) of the Bankruptcy Code, respectively, Article IV of the Committee's Plan impairs or leaves unimpaired, as the case may be, each Class of Claims and Interests, and Article VII of the Committee's Plan provides for the assumption or rejection of the executory contracts and unexpired leases of the Debtors not previously assumed or rejected pursuant to section 365 of the Bankruptcy Code and appropriate authorizing orders of the Bankruptcy Court.

### (b)    Section 1123(b)(3)—Release, Exculpation, Injunction, Discharge, and Preservation of Claims Provisions.

29.    **Releases by the Debtors**. The releases and discharges of claims and Causes of Action by the Debtors described in Article X.C of the Committee's Plan pursuant to section 1123(b)(3)(A) of the Bankruptcy Code represent a valid exercise of the Creditors' Committee's business judgment. Pursuing any such claims against the Released Parties is not in the best interest of the Debtors' estates various constituencies as the costs involved likely would outweigh any potential benefit from pursuing such claims.

30.    **Releases by Holders of Claims and Interests**. The releases of Claims and Causes of Action by Holders of Claims and Interests described in Article X.D of the Committee's Plan are an important aspect of the Committee's Plan. Such releases by Holders of

8205962
DOCS_DE:153436.2

Claims and Interests provide for the release by Holders of Claims and Interests that vote in favor of the Committee's Plan, and choose not to opt out of the releases, or who have otherwise consented to give a release, and are consensual. The Ballots explicitly stated that a vote to accept the Committee's Plan without opting out of the releases each constitutes an acceptance and assent to the releases set forth in the Committee's Plan. Thus, those Holders of Claims and Interests voting to accept the Committee's Plan and choosing not to opt out of the releases were given due and adequate notice that they would be granting the releases by acting in such a manner.

31. **Injunction**. The injunction provisions set forth in Article X.B of the Committee's Plan are necessary to preserve and enforce the releases granted by the Committee's Plan in Article X and are narrowly tailored to achieve that purpose.

32. **Exculpation**. The exculpation provisions set forth in Article X.B of the Committee's Plan are appropriately tailored to protect the exculpated parties from inappropriate litigation and do not relieve any party of liability for gross negligence or willful misconduct.

33. Thus, each of the discharge, release, indemnification, and exculpation provisions set forth in the Committee's Plan: (a) is within the jurisdiction of the Bankruptcy Court under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d); (b) is an essential means of implementing the Committee's Plan pursuant to section 1123(a)(6) of the Bankruptcy Code; (c) is an integral element of the transactions incorporated into the Committee's Plan; (d) confers material benefits on, and is in the best interests of, the Debtors, their Estates, and their Creditors; (e) is important to the overall objectives of the Committee's Plan to finally resolve all Claims among or against the parties-in-interest in the Chapter 11 Cases with respect to the Debtors; and (f) is consistent with sections 105, 1123, 1129, and other applicable provisions of the Bankruptcy Code. The

record of the Confirmation Hearing and the Chapter 11 Cases is sufficient to support the discharge, release, exculpation, and injunction provisions contained in Article X of the Committee's Plan.

34. **Preservation of Claims and Causes of Action**. Article IX.D of the Committee's Plan appropriately provides for the preservation by the Debtors of the causes of action in accordance with section 1123(b)(3)(B) of the Bankruptcy Code. The provisions regarding Causes of Action in the Committee's Plan are appropriate and are in the best interests of the Debtors, their Estates, and Holders of Claims and Interests.

2. **Section 1129(a)(2)—Compliance of the Debtors and Others With The Applicable Provisions of the Bankruptcy Code.**

35. The Creditors' Committee, as proponent of the Committee's Plan, has complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1123, 1125, and 1126 of the Bankruptcy Code and Bankruptcy Rules 3017, 3018, and 3019.

36. The Creditors' Committee and the Debtors and their respective present and former members, advisors, attorneys, and agents did not solicit the acceptance or rejection of the Committee's Plan by any Holders of Claims or Interests prior to the approval and transmission of the Committee's Disclosure Statement. Votes to accept or reject the Committee's Plan were only solicited by the Creditors' Committee and its agents after disclosure to Holders of Claims or Interests of adequate information as defined in section 1125(a) of the Bankruptcy Code.

37. The Creditors' Committee and the Debtors and their respective present and former members, advisors, attorneys, and agents have solicited and tabulated votes on the Committee's Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly, in good faith within the meaning of section 1125(e) of the Bankruptcy

Code, and in a manner consistent with the applicable provisions of the Debtors' Disclosure Statement Order, Debtors' Disclosure Statement, Committee's Disclosure Statement Order, Solicitation Procedures Order, the Committee's Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Article X of the Committee's Plan.

38.     The Creditors' Committee and its respective present and former members, advisors, attorneys, and agents have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering, issuance, and distribution of recoveries under the Committee's Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Committee's Plan or such distributions made pursuant to the Committee's Plan.

### 3.     Section 1129(a)(3)—Proposal of Committee's Plan in Good Faith.

39.     The Creditors' Committee has proposed the Committee's Plan in good faith and not by any means forbidden by law.  In determining that the Committee's Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Committee's Plan itself, and the process leading to its formulation.  The Creditors' Committee's good faith is evident from the facts and records of the Chapter 11 Cases, the Committee's Disclosure Statement and the hearing thereon, and the record of the Confirmation Hearing and other proceedings held in the Chapter 11 Cases. The Committee's Plan is the product of arm's-length negotiations between the Creditors' Committee, the Debtors and the Holders of various Claims and Interests.  The Committee's Plan itself, and the process leading to its formulation, provide independent evidence of the Creditors'

Committee's good faith, serve the public interest, and assure fair treatment of Holders of Claims and Interests. Consistent with the overriding purpose of chapter 11, the Chapter 11 Cases were filed, and the Committee's Plan was proposed, with the legitimate purpose of allowing the Debtors to reorganize and emerge from bankruptcy with a capital structure that shall allow them to satisfy their obligations with sufficient liquidity and capital resources.

**4.      Section 1129(a)(4)—Bankruptcy Court Approval of Certain Payments as Reasonable.**

40.    The procedures set forth in the Committee's Plan for the Bankruptcy Court's review and ultimate determination of the fees and expenses to be paid by the Debtors in connection with the Chapter 11 Cases, or in connection with the Committee's Plan and incident to the Chapter 11 Cases, satisfy the objectives of and are in compliance with section 1129(a)(4) of the Bankruptcy Code.

**5.      Section 1129(a)(5)—Disclosure of Identity of Proposed Management, Compensation of Insiders and Consistency of Management Proposals with the Interests of Creditors and Public Policy.**

41.    The Committee's Plan complies with the requirements of section 1129(a)(5) of the Bankruptcy Code because the Creditors' Committee has disclosed (a) the identity and affiliations of each proposed director and officer of the Reorganized Debtors following Confirmation and (b) the identity of and nature of any compensation for any insider who shall be employed or retained by the Reorganized Debtors. The method of appointment of directors and officers was consistent with the interests of Holders of Claims and Interests and public policy.

**6.      Section 1129(a)(6)—Approval of Rate Changes.**

42.    The Committee's Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and shall not require governmental regulatory approval, therefore section 1129(a)(6) of the Bankruptcy Code is satisfied.

7. **Section 1129(a)(7)—Best Interests of Holders of Claims and Interests.**

43. The liquidation analysis included in the Committee's Plan (the "Liquidation Analysis") and the other evidence related thereto that was proffered or adduced at or prior to, or in affidavits in connection with, the Confirmation Hearing: (a) are reasonable, persuasive, and credible; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that, with respect to each Impaired Class, each Holder of an Allowed Claim or Interest in such Class has voted to accept the Committee's Plan or shall receive under the Committee's Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount such Holder would receive if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code. Thus, the Committee's Plan satisfies the "best interests of creditors test" set forth in section 1129(a)(7) of the Bankruptcy Code.

8. **Section 1129(a)(8)—Conclusive Presumption of Acceptance by Unimpaired Classes; Acceptance of the Committee's Plan by Each Impaired Class.**

44. Because the Committee's Plan has not been accepted by the Rejecting Classes, the Debtors sought Confirmation under section 1129(b), rather than section 1129(a)(8), of the Bankruptcy Code. Thus, although section 1129(a)(8) of the Bankruptcy Code has not been satisfied with respect to the Rejecting Classes, the Committee's Plan is confirmable because the Committee's Plan does not discriminate unfairly and is fair and equitable with respect to the Rejecting Classes and thus satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes as described further below.

9. **Section 1129(a)(9)—Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code.**

45. The treatment of Allowed Administrative Expenses, Allowed Tax Claims, and Allowed Priority Non-Tax Claims under Articles III and IV of the Committee's Plan satisfies the requirements of and complies in all respects with section 1129(a)(9) of the Bankruptcy Code.

### 10. Section 1129(a)(10)—Acceptance By At Least One Impaired Class.

46. As set forth in the Voting Certification, the Impaired Accepting Classes have voted to accept the Committee's Plan. As such, there is at least one Class of Claims that is Impaired under the Committee's Plan and has accepted the Committee's Plan, determined without including any acceptance of the Committee's Plan by any insider, thus satisfying section 1129(a)(10) of the Bankruptcy Code in all respects.

### 11. Section 1129(a)(11)—Feasibility of the Committee's Plan.

47. The Committee's Plan satisfies section 1129(a)(11) of the Bankruptcy Code. The evidence proffered or adduced at, or prior to, or in affidavits filed in connection with, the Confirmation Hearing: (a) is reasonable, persuasive, and credible; (b) has not been controverted by other evidence; (c) establishes that the Committee's Plan is feasible and Confirmation of the Committee's Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Reorganized Debtors or any successor to the Reorganized Debtors under the Committee's Plan; and (d) establishes that the Reorganized Debtors shall have sufficient funds available to meet their obligations under the Committee's Plan, thus satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

### 12. Section 1129(a)(12)—Payment of Bankruptcy Fees.

48. Article XIV.B of the Committee's Plan provides that all fees payable pursuant to section 1930 of the United States Judicial Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed,

whichever occurs first. The Committee's Plan therefore satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

### 13. Section 1129(a)(13)—Retiree Benefits.

49.     Section 1129(a)(13) of the Bankruptcy Code requires a plan to provide for retiree benefits at levels established pursuant to section 1114 of the Bankruptcy Code. Article XI of the Committee's Plan provides that, the Debtors are not obligated pursuant to section 1129(a)(13) of the Bankruptcy Code to pay any "retiree benefits" (as that term is defined in section 1114(a) of the Bankruptcy Code). The Committee's Plan therefore satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code.

### 14. Section 1129(b)—Confirmation of Committee's Plan Over Nonacceptance of Impaired Class.

50.     Notwithstanding the fact that the Rejecting Classes have voted not to accept the Committee's Plan, the Committee's Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code because: (a) the Impaired Accepting Classes have voted to accept the Committee's Plan; and (b) the Committee's Plan does not discriminate unfairly and is fair and equitable with respect to the Rejecting Classes. Thus, the Committee's Plan may be confirmed notwithstanding the Debtors' failure to satisfy section 1129(a)(8) of the Bankruptcy Code. After entry of the Confirmation Order and upon the occurrence of the Effective Date, the Committee's Plan shall be binding upon the members of the Rejecting Classes.

51.     The Committee's Plan does not unfairly discriminate because members within each Class are treated similarly. Accordingly, the Committee's Plan does not discriminate unfairly in respect to the Rejecting Classes or any other Class of Claims or Interests.

52.     To determine whether a plan is "fair and equitable" with respect to a Class of Interests, section 1129(b)(2)(C)(ii) of the Bankruptcy Code provides that "the holder of any

interest that is junior to the interests of such class shall not receive or retain under the plan on account of such junior interest any property." There are no Classes junior to the Rejecting Classes that shall receive any distribution under the Committee's Plan. Therefore the Committee's Plan is fair and equitable and satisfies the requirements of section 1129(b).

      **15.**    **Section 1129(c)—Only One Plan.**

      53.    Other than the Committee's Plan (including previous versions thereof), no other plan has been confirmed in the Chapter 11 Cases. Accordingly, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

      **16.**    **Section 1129(d)—Principal Purpose of the Committee's Plan Is Not Avoidance of Taxes.**

      54.    No governmental entity has requested that the Bankruptcy Court refuse to confirm the Committee's Plan on the grounds that the principal purpose of the Committee's Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act. As evidenced by its terms, the principal purpose of the Committee's Plan is not such avoidance. Accordingly, the Committee's Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

**N.**    **Satisfaction of Confirmation Requirements.**

      55.    Based upon the foregoing, the Committee's Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

**O.**    **Good Faith.**

      56.    The Creditors' Committee and the Debtors and their respective present and former members, advisors, attorneys, and agents have been, are, and shall continue to act in good faith if they proceed to: (a) consummate the Committee's Plan and the agreements, settlements, transactions, and transfers contemplated thereby (including, without limitation, the entry into and

performance under the New Term Loan); and (b) take the actions authorized and directed by the Confirmation Order.

**P.** **Disclosure: Agreements and Other Documents.**

57. The Creditors' Committee and the Debtors have disclosed all material facts regarding: (a) the adoption of the new certificate of incorporation and bylaws, or similar corporate documents; (b) the selection of directors and officers for the Reorganized Debtors; (c) the New Term Loan; (d) the distribution of Cash; (e) the issuance of the New Common Units; (f) the adoption, execution, and implementation of the other matters provided for under the Committee's Plan involving corporate action to be taken by or required of the Reorganized Debtors; (g) the Long-Term Incentive Plan; (h) the adoption, execution, and delivery of all contracts, leases, instruments, releases, indentures, and other agreements related to any of the foregoing; (i) the Offering; and (j) the Backstop Commitment Agreement.

**Q.** **Transfers by Debtors; Vesting of Assets.**

58. All transfers of property of the Debtors' estates, including the issuance of the New Common Units, and transfers of property of the Non-Debtor Subsidiaries, shall be free and clear of all Liens, charges, Claims, encumbrances, and other interests, except as expressly provided in the Committee's Plan. Pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of each of the Debtors shall vest in each respective Reorganized Debtor or its successors or assigns, as the case may be, free and clear of all Liens, charges, Claims, encumbrances, and other interests, except as expressly provided in the Committee's Plan. Such vesting does not constitute a voidable transfer under the Bankruptcy Code or applicable nonbankruptcy law.

**R.** **Likelihood of Satisfaction of Conditions Precedent to Plan Effective Date.**

59. Each of the conditions precedent to the Effective Date, as set forth in Article XV of the Committee's Plan, has been satisfied or waived in accordance with the provisions of the

Committee's Plan, or is reasonably likely to be satisfied, <u>provided</u>, <u>however</u>, that no waiver of the conditions precedent to Consummation shall have occurred without the consent of the Creditors' Committee; <u>provided</u>, <u>further</u>, that the conditions precedent to the Effective Date set forth in Article XV(A)(F) and Article XV(A)(H) may not be waived.

## S.      **Implementation.**

60.      All documents and agreements necessary to implement the Committee's Plan, including those contained in the Plan Supplement, and all other relevant and necessary documents (including the documentation of the New Term Loan), have been negotiated in good faith, at arm's length, and are in the best interests of the Debtors and the Reorganized Debtors and shall, upon completion of documentation and execution be valid, binding, and enforceable documents and agreements not in conflict with any federal or state law.

## T.      **Approval of New Term Loan.**

61.      The New Term Loan is an essential element of the Committee's Plan, and entry into the New Term Loan is in the best interests of the Debtors, their Estates, and their Creditors. The Creditors' Committee has exercised reasonable business judgment in determining to enter the New Term Loan and have provided adequate notice thereof. The New Term Loan has been negotiated in good faith and at arm's-length among the Creditors' Committee and the lenders under the New Term Loan, and any credit extended, letters of credit issued for the account of, and loans made to the Reorganized Debtors by the lenders under the New Term Loan pursuant to the New Term Loan shall be deemed to have been extended, issued, and made in good faith. The terms and conditions of the New Term Loan, substantially in the form as attached as **Exhibit B** to this Order, are fair and reasonable and are approved.

## V.      **Approval of the Forbearance Agreement**

62.     Upon confirmation of the Committee's Plan, the Enforcement, Consent, Cash Collateral and Limited Forbearance Agreement dated as of June 11, 2009 among the Debtors and the subsidiary guarantors signatory thereto, the Agent and the Collateral Trustee shall terminate and the Debtors' right to use cash collateral under the Final Order (I) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. Section 363 and (II) Granting Adequate Protection Pursuant to 11 U.S.C. Sections 361 and 363 to First Lien Lenders and Second Lien Noteholders dated July 13, 2009 (the "Cash Collateral Order") shall also terminate. To effectuate the Committee's Plan, the Agent and the First Lien Lenders have agreed to forbear from exercising their rights and remedies under the First Lien Credit Agreement through the earlier of the Effective Date of the Committee's Plan, October 30, 2009 or the occurrence of a Forbearance Default (as defined in the Forbearance Agreement) and have agreed to the Debtors' use of cash collateral on the terms and conditions set forth in the Forbearance Agreement dated September 25, 2009 (the "Forbearance Agreement"), by and among Luxco, Finco, the First Lien Guarantors and the Agent. The Debtors have exercised reasonable business judgment in determining to enter the Forbearance Agreement. The terms and conditions of the Forbearance Agreement, substantially in the form as attached as **Exhibit C** to this Order, are fair and reasonable and are approved.

63.     The Debtors are authorized to use the Cash Collateral (as defined in the Cash Collateral Order) up to the amounts permitted in the Forbearance Agreement prior to the occurrence of a Termination Event (as defined in the Forbearance Agreement).

64.     Upon the occurrence of a Termination Event (as defined in the Forbearance Agreement), the automatic stay pursuant to Section 362 of the Bankruptcy Code shall be and is hereby vacated as to the Agent and the First Lien Lenders to permit them to exercise their rights and remedies against the Debtors, including to foreclose on the Prepetition Collateral (as defined

in the Cash Collateral Order) and Replacement Collateral (as defined in the Cash Collateral Order) without further order of this Court.

## W. Approval of the Offering and Backstop Commitment Agreement

65.     The Offering and Backstop Commitment Agreement are essential elements of the Committee's Plan, and pursuit of the Offering and entrance into the Backstop Commitment Agreement are in the best interests of the Debtors, their Estates, and their Creditors. The Creditors' Committee has exercised reasonable business judgment in determining to pursue the Offering and enter into the Backstop Commitment Agreement and has provided adequate notice thereof. The Offering and the Backstop Commitment Agreement have been negotiated in good faith and at arm's-length among the Creditors' Committee and the Backstop Purchaser, and any financing provided to the Reorganized Debtors by the Backstop Purchasers or the Offering Participants pursuant to the Offering and the Backstop Commitment Agreement shall be deemed to have been provided in good faith. The terms and conditions of the Offering and the Backstop Commitment Agreement as described in the Committee's Plan, are fair and reasonable and are approved.

## X. Release and Discharge of Non-Debtor Subsidiaries

66.     Each Holder of a Secured Claim, the Second Lien Noteholder Trustee of the Second Lien Notes, the Subordinated Note Trustee of the Subordinated Notes, any agent under the First Lien Credit Agreement, the Second Lien Indenture, the Subordinated Note Indenture shall be deemed to have forever waived, released, and discharged the Non-Debtor Subsidiaries of any Liens, Claims, claims, causes of action, rights, or liabilities arising from guarantees granted to the Holders of (i) the Second Lien Noteholder Claims under the Second Lien Indenture, (ii) the First Lien Lender Secured Claims under the First Lien Credit Agreement, or (iii) the

Subordinated Note Claims under the Subordinated Note Indenture, as well as any respective Deficiency Claims; provided, however, that the Liens securing the First Lien Lender Secured Claims shall remain in effect for the sole purpose of securing the New Term Loan.

67. In addition, the Reorganized Debtors, Second Lien Noteholder Trustee and the Subordinated Note Trustee are authorized to take whatever action may be necessary or appropriate, in their reasonable discretion, to effectuate the foregoing, including, without limitation, providing a release of the Liens, the First Lien Guarantees, the Second Lien Guarantees, and the Subordinated Note Guarantees; provided, however, that the Liens securing the First Lien Lender Secured Claims shall remain in effect for the sole purpose of securing the New Term Loan.

68. The Creditors' Committee has made an overwhelming and uncontroverted showing of the very substantial cost, harm, risk, and prejudice to the Debtors' Estates and their Creditors that would result if the Committee's Plan is not consummated.

## II.    ORDER

**BASED ON THE FOREGOING FINDINGS OF FACT, IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

### A.    Order.

69. This Confirmation Order shall confirm the Committee's Plan. A copy of the Committee's Plan is attached hereto as **Exhibit A**.

### B.    Objections.

70. To the extent that any objections, reservations of rights, statements, or joinders to Confirmation have not been withdrawn, waived, or settled prior to entry of the Confirmation

Order or otherwise resolved as stated on the record of the Confirmation Hearing, they are hereby overruled on the merits.

## C.     Findings of Fact and Conclusions of Law.

71.     The findings of fact and the conclusions of law stated in the Confirmation Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to the proceeding by Bankruptcy Rule 9014. To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed.

## D.     Confirmation of the Committee's Plan.

72.     The Committee's Plan (as the same may have been subsequently modified, supplemented, and amended) and Plan Supplement (as such may be amended by the Confirmation Order or in accordance with the Committee's Plan) and each of their provisions are confirmed in each and every respect pursuant to section 1129 of the Bankruptcy Code. The documents contained in the Plan Supplement, and any amendments, modifications, and supplements thereto, and all documents and agreements related thereto (including all exhibits and attachments thereto and documents referred to in such papers), and the execution, delivery, and performance thereof by the Reorganized Debtors, are authorized and approved. Without further order or authorization of the Bankruptcy Court, the Creditors' Committee, Reorganized Debtors, and their successors are authorized and empowered to make all modifications to all documents included as part of the Plan Supplement that are consistent with the Committee's Plan. As set forth in the Committee's Plan, once finalized and executed, the documents composing the Plan Supplement and all other documents contemplated by the Committee's Plan shall constitute legal, valid, binding, and authorized obligations of the respective parties thereto,

enforceable in accordance with their terms and, to the extent applicable, shall create, as of the Effective Date, all Liens and other security interests purported to be created thereby.

73.     The terms of the Committee's Plan, the Plan Supplement, and exhibits thereto are incorporated by reference into, and are an integral part of, the Confirmation Order. The terms of the Committee's Plan, the Plan Supplement, all exhibits thereto, and all other relevant and necessary documents, shall be effective and binding as of the Effective Date of the Committee's Plan.

## E.     Committee's Plan Classification Controlling.

74.     The terms of the Committee's Plan shall solely govern the classification of Claims and Interests for purposes of the distributions to be made thereunder. The classifications set forth on the Ballots tendered to or returned by the Holders of Claims or Interests in connection with voting on the Committee's Plan: (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Committee's Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims and Interests under the Committee's Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Committee's Plan for distribution purposes; and (d) shall not be binding on the Creditors' Committee, Debtors and Reorganized Debtors except for voting purposes.

## F.     The Releases, Injunction, Exculpation, and Related Provisions Under the Committee's Plan.

75.     The following releases, injunctions, exculpations, and related provisions set forth in Article X of the Committee's Plan are hereby approved and authorized in their entirety:

### A.     Releases by the Debtors.

**Each Debtor, for itself and its affiliates, its respective successors, assigns, transferees, those officers and directors, acting in such capacities as of the Petition**

Date, agents, members, financial advisors, attorneys, employees, partners, affiliates, representatives, in each case in their capacity as such, shall be deemed to have released any and all claims and causes of action against Interest holders of LLC, the Plan Proponent, the Backstop Purchaser, any of the present or former First Lien Lender Parties, any of the present or former officers or directors of the Debtors or their affiliates, the Second Lien Noteholder Trustee, the Subordinated Noteholder Trustee and the Reorganized Debtors, and their respective officers, directors, managers, employees, agents, advisors, accountants, attorneys and representatives, and their respective property, arising prior to the Effective Date. The Creditors' Committee is not aware of the existence of any Rights of Action that are the subject of the release described under this Article X.C. As of the date of the Committee's Plan, the Creditors' Committee has not performed a formal investigation of the Rights of Action described in Article X.C. of the Committee's Plan.

**B.**     **Releases by Holders of Claims and Interests.**

Each Creditor that does not elect to opt out of this release by checking the appropriate box on the ballot provided to such Creditor in connection with solicitation of such Creditors' vote to accept to reject the Committee's Plan, for itself and its respective successors, assigns, transferees, those officers and directors, acting in such capacities as of the Petition Date, agents, members, financial advisors, attorneys, employees, partners, affiliates, representatives, in each case in their capacity as such, shall, by virtue of its vote, be deemed to have released any and all claims and causes of action against the Plan Proponent, the Backstop Purchaser, any of the present or former First Lien Lender Parties, the Second Lien Noteholder Trustee, the Subordinated Noteholder Trustee, any of the present or former officers or directors of the Debtors and their affiliates, the Debtors and their affiliates, and the Reorganized Debtors, and their respective officers, directors, managers, employees, agents, advisors, accountants, attorneys and representatives, and their respective property, arising prior to the Effective Date. The Creditors' Committee is not aware of the existence of any Rights of Action that are the subject of the release described under this Article X.D. As of the date of the Committee's Plan, the Creditors' Committee has not performed a formal investigation of the Rights of Action described in Article X.D. of the Committee's Plan.

**C.**     **Exculpation.**

As of and subject to the occurrence of the Effective Date, each of the Plan Proponent and its Representatives, the Backstop Purchaser, the Second Lien Noteholder Trustee, the Subordinated Noteholder Trustee, any present or former First Lien Lender Parties and their respective Representatives, the present and former directors and officers of the Debtors and their affiliates, the Debtors and their affiliates, the Reorganized Debtors and the members of the Committee (acting in such capacity), shall neither have nor incur any liability to any Person or Entity for any act taken or omitted to be taken, in connection with, or related to, the formulation, preparation,

dissemination, implementation, administration, Confirmation or Consummation of the Committee's Plan or any contract, instrument, waiver, release or other agreement or document created or entered into, in connection with the Committee's Plan, or any other act taken or omitted to be taken in connection with the Chapter 11 Cases; provided, however, that the foregoing provisions of this subsection shall have no effect on the liability of any Person or Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct.

**D.     Injunction.**

**(i)     Generally**

Unless otherwise provided in the Committee's Plan or the Confirmation Order, all injunctions and stays provided for in the Chapter 11 Cases pursuant to sections 105 and 362 of the Bankruptcy Code or otherwise in effect on the Confirmation Date shall remain in full force and effect until the Effective Date. From and after the Effective Date, all Persons are permanently enjoined from, and restrained against, commencing or continuing in any court any suit, action, or other proceeding, or otherwise asserting any Claim or interest, (a) seeking to hold (i) the Reorganized Debtors, (ii) the Plan Proponent, (iii) the Backstop Purchaser; (iv) the Second Lien Noteholder Trustee; (v) the Subordinated Noteholder Trustee or (vi) the property of the Reorganized Debtors, liable for any Claim, obligation, right, interest, debt, or liability that has been satisfied, discharged or released pursuant the Committee's Plan.

From and after the Effective Date, the Agent, the Collateral Trustee and all Holders of Claims are permanently enjoined from and restrained against, commencing or continuing in any court any suit, action, or other proceeding, or otherwise asserting any Claim or Interest against the Non-Debtor Subsidiaries, except as provided under the New Term Loan.  The Second Lien Noteholder Trustee, the Subordinated Note Trustee, the Second Lien Collateral Agent and the Collateral Trustee hereby release all Liens, the Second Lien Guarantees, and the Subordinated Note Guarantee, except for the Liens securing the First Lien Lender Secured Claims, which shall remain in effect for the sole purpose of securing the New Term Loan.

**(ii)     Injunction Related to Rights of Action and Terminated Claims, Administrative Expenses or Interests**

Except as provided in the Committee's Plan or in the Confirmation Order, as of the Effective Date, all Entities that have held, currently hold or may hold a Claim, Administrative Expense, Superpriority Claim, Interest, or other debt or liability that is stayed, Impaired, or terminated pursuant to the terms of the Committee's Plan are permanently enjoined from taking any of the following actions either (x) against the Plan Proponent, the Backstop Purchaser, the Second Lien Noteholder Trustee, the Subordinated Noteholder Trustee, any of the present or former First Lien Lender Parties, any of the present or former officers or directors of the Debtors and their affiliates, the Debtors and their affiliates or the Reorganized Debtors, or their property on account of all or such portion of any such Claims, Administrative Expenses, Superpriority Claims, Interests, debts, or liabilities that

are stayed, Impaired, or terminated or (y) against any Person with respect to any Right of Action or any objection to a Claim, Administrative Expense, Superpriority Claim, or Interest, which Right of Action or objection, under the Committee's Plan, is waived, released, assigned or exclusively retained by any of the Debtors: (a) commencing or continuing, in any manner or in any place, any action or other proceeding; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order, (c) creating, perfecting, or enforcing any lien or encumbrance; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability, or obligation due; and (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Committee's Plan. To avoid any doubt, except as otherwise expressly noted in the Committee's Plan, nothing in the Committee's Plan or herein shall be construed or is intended to affect, enjoin, modify, release, or waive any claims, rights, and actions that a third party may have against a person other than the Plan Proponent, the Backstop Purchaser, the Second Lien Noteholder Trustee, the Subordinated Noteholder Trustee, any of the present or former First Lien Lender Parties, any of the present or former officers or directors of the Debtors and their affiliates, the Debtors and their affiliates or the Reorganized Debtors, provided that such claims, rights, and actions are wholly separate and exist independently from any claims, rights, and actions of the Estates.

G.     **Post-Confirmation Notices and Bar Dates.**

    1.     **Notice of Entry of the Confirmation Order.**

76.     In accordance with Bankruptcy Rules 2002 and 3020(c), within ten business days of the date of entry of the Confirmation Order, the Debtors shall serve the Notice of Confirmation by United States mail, first class postage prepaid, by hand, or by overnight courier service to all parties having been served with the Confirmation Hearing Notice; provided, however, that no notice or service of any kind shall be required to be mailed or made upon any Entity to whom the Claims Agent mailed a Confirmation Hearing Notice, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address" or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address. Mailing the Notice of Confirmation in the time and manner set forth in the this paragraph shall be good and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c), and no other or further notice is necessary.

77. The Notice of Confirmation shall have the effect of an order of the Bankruptcy Court, shall constitute sufficient notice of the entry of the Confirmation Order to such filing and recording officers, and shall be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law.

78. The deadline for filing requests for payment of Administrative Expense Claims, shall be thirty days after the Effective Date for all Administrative Expense Claims incurred after the Petition Date through the Effective Date, except with respect to Fee Claims, which shall be subject to the provisions of Article XIV(B)(2) of the Committee's Plan.

**2.    Professional Compensation.**

79. All final requests for payment of Claims of a Professional shall be filed with the Bankruptcy Court no later than sixty days after the Effective Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts of such Professional Claims shall be determined by the Bankruptcy Court.

80. Except as otherwise specifically provided in the Committee's Plan, from and after the Effective Date, the Reorganized Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation and Consummation incurred by the Reorganized Debtors and incurred by the Creditors' Committee in connection with those matters for which it remains in existence after the Effective Date pursuant to the Committee's Plan. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors

may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

81.     Notwithstanding the foregoing, the Reorganized Debtors shall pay, on or as soon as reasonably practicable after the Effective Date, all Indenture Trustee Fees and Expenses arising under the Second Lien Notes Indenture and the Subordinated Notes Indenture, in full in Cash, without application to or approval of the Bankruptcy Court

## H.     Exemption from Securities Laws

82.     Pursuant to section 1125(e) of the Bankruptcy Code, the Creditors' Committee's transmittal of the Committee's Plan solicitation materials as set forth herein, their solicitation of acceptances of the Committee's Plan, and the Reorganized Debtors' issuance and distribution of the New Common Units pursuant to the Committee's Plan are not and shall not be governed by or subject to any otherwise applicable law, rule, or regulation governing the solicitation or acceptance of a plan of reorganization or the offer, issuance, sale, or purchase of securities.

83.     Pursuant to section 1145(a) of the Bankruptcy Code, the issuance, and distribution of the New Common Units and any other debt or securities issuable to holders of Allowed Claims (Classes 4A-4F and Classes 6A-6F) pursuant to the Committee's Plan in respect of Claims or Interests shall be exempt from section 5 of the Securities Act and any state or local law requiring registration prior to the offering, issuance, distribution, or sale of securities.  Pursuant to and to the fullest extent permitted under section 1145 of the Bankruptcy Code, the resale of any of the securities referenced herein shall be exempt from section 5 of the Securities Act and any state or local law requiring registration prior to the offering, issuance, distribution, or sale of securities; notwithstanding the foregoing, the New Common Units issued pursuant to the Offering to the Eligible Holders shall be exempt from registration under the Securities Act by virtue of Section 4(2) thereof and Regulation D promulgated thereunder and such New Common

Units issued to the Eligible Holders pursuant to the Offering shall not be exempted under section 1145 of the Bankruptcy Code.

## I. Exemptions from Taxation.

84.     Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, distribution, transfer, or exchange of New Common Units; the creation, modification, consolidation, or recording of any mortgage, deed of trust, or other security interest, the securing of additional indebtedness by such means or by other means or the additional securing of existing indebtedness by such means or by other means; the making, assignment, or recording of any lease or sublease; or the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Committee's Plan, including any merger agreements or agreement of consolidation, deeds, bills of sale, assignments, or other instruments of transfer executed in connection with the transaction contemplated in the Committee's Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment, and the appropriate state or local governmental official or agents shall be, and hereby are, directed to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## J. Binding Effect.

85.     Subject to Article X.A.1 of the Committee's Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(g), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Committee's Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to

have accepted the Committee's Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Committee's Plan or herein, each Entity acquiring property under the Committee's Plan, and any and all non-Debtor parties to executory contracts and unexpired leases with the Debtors.

86. The rights, benefits, and obligations of any Entity named or referred to in the Committee's Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

## K. References to Plan Provisions.

87. The failure specifically to include or to refer to any particular article, section, or provision of the Committee's Plan, Plan Supplement, or any related document in the Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Bankruptcy Court that the Committee's Plan and any related documents be confirmed in their entirety.

## L. Governing Law.

88. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Committee's Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Committee's Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters; provided, however, that corporate governance matters relating to the Debtors or Reorganized Debtors, as

applicable, not incorporated in New York shall be governed by the laws of the state of incorporation of the applicable Debtor or Reorganized Debtor, as applicable.

**M.** **Effectiveness of All Actions.**

89.     Except as set forth in the Committee's Plan, all actions authorized to be taken pursuant to the Committee's Plan shall be effective on, prior to, or after the Effective Date pursuant to the Confirmation Order, without further application to, or order of the Bankruptcy Court, or further action by the respective officers, directors, members, or stockholders of the Reorganized Debtors and with the effect that such actions had been taken by unanimous action of such officers, directors, members, or stockholders.

**N.** **Approval of Consents.**

90.     This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Committee's Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Committee's Plan, the Plan Supplement, the Committee's Disclosure Statement, and any documents, instruments, or agreements, and any amendments or modifications thereto.

**O.** **Changes to Committee's Plan and Plan Supplement.**

91.     Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Committee's Plan, the Creditors' Committee expressly reserves its respective rights to revoke or withdraw, alter, amend, or modify materially the Committee's Plan with respect to each Debtor, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Committee's Plan, or

remedy any defect or omission, or reconcile any inconsistencies in the Committee's Plan, the Committee's Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Committee's Plan. Any such modification or supplement shall be considered a modification of the Committee's Plan and shall be made in accordance with Article XVII of the Committee's Plan. Entry of the Confirmation Order means that all modifications or amendments to the Committee's Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

**P.      Ownership and Control**

92.     The Consummation of the Committee's Plan shall not constitute a change of ownership or change in control, as such terms are used in any statute, regulation, contract, or agreement, including, but not limited to, any employment, severance, or termination, or insurance agreements, in effect on the Effective Date and to which either of the Debtors is a party or under any applicable law of any applicable governmental entity. Notwithstanding the foregoing, the Creditors' Committee reserves the right to selectively waive this provision of the Committee's Plan.

**Q.      Effect of Conflict Between Committee's Plan and Confirmation Order.**

93.     If there is any direct conflict between the terms of the Committee's Plan or the Plan Supplement and the terms of the Confirmation Order, the terms of the Confirmation Order shall control.

**R.      Authorization to Consummate.**

94.     The Creditors' Committee is authorized to consummate the Committee's Plan at any time after the entry of the Confirmation Order subject to satisfaction or waiver (by the

required parties) of the conditions precedent to Consummation set forth in Article XV of the Committee's Plan.

**S.      Final Confirmation Order.**

95.      This Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

**T.      Waiver of Stay.**

96.      The stay of this Confirmation Order provided by any Bankruptcy Rule (including Bankruptcy Rule 3020(e)), whether for ten (10) days or otherwise, is hereby waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by the Court.

IT IS SO ORDERED.

Dated: Wilmington, Delaware
Sept 2 , 2009

THE HONORABLE PETER J. WALSH
UNITED STATES BANKRUPTCY JUDGE